UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

August 14, 2020

VIA CERTIFIED MAIL
Andrew J. Witty
500 White Oak Ridge Road
Short Hills, NJ 07078

VIA ECF
Counsel for Plaintiff

**LETTER ORDER**

Re:   **The Bank of New York Mellon v. Andrew J. Witty, et al.,**
      **Civil Action Nos. 15-500 & 15-8486**_____

Dear Litigants:

Before the Court is Plaintiff The Bank of New York Mellon's, as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2007-7T2 ("BONYM" or the "Bank"), Motion for Summary Judgment. ECF No. 64.[1]  Pro se Defendant Andrew J. Witty ("Witty") opposes the Motion and cross-moves for partial summary judgment. ECF No. 65. For the reasons explained below, BONYM's Motion is **GRANTED** and Witty's Motion is **DENIED**.

**I.   BACKGROUND**[2]

This matter arises out of a default on a note Witty and his wife executed, secured by a mortgage on his property located at 496 White Oak Ridge Road, Short Hills, New Jersey (the "Property"). BONYM SOMF ¶¶ 1-4.

---

[1] This action was informally consolidated for purposes of discovery and dispositive motions with Witty v. Bank of New York Mellon, No. 15-8486 (D.N.J. Dec. 7, 2015). Because identical motions and opposition briefing were filed on both dockets, the Court refers to the filings from Case No. 15-500 unless otherwise noted.

[2] Witty did not file a response to BONYM's Statement of Material Facts ("BONYM SOMF"), ECF No. 64.2, as required by Local Rule 56.1. See, e.g., Glazewski v. Corzine, No. 06-4107, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009) (noting "[party's] pro se status does not absolve him of the requirement of filing" a response under Local Rule 56.1), aff'd 385 F. App'x 83 (3d Cir. 2010). Witty did, however, file a Supplemental Statement of Material Facts. See ECF No. 65.2 at 9-12 ("Witty SOMF"). Because the Court "often relax[es] procedural rules, including Local Civil Rule 56.1(a), for an unrepresented litigant," Shuman v. Sabol, No. 09-2490, 2011 WL 4343780, at *6 (D.N.J. Sept. 14, 2011), it draws the relevant facts from BONYM's Statement of Material Facts, Witty's Statement of Material Facts, and Witty's deposition testimony. See Jordan v. Allgroup Wheaton, 218 F. Supp. 2d 643, 646 n.2 (D.N.J. 2002), aff'd 95 F. App'x 462 (3d Cir. 2004). The Court treats BONYM's Statement of Material Facts as

### A.     The Mortgage & Foreclosure Action

On November 29, 2006, Witty executed a promissory note in favor of Heartland Home Finance, Inc. ("Heartland") in the amount of $1,200,000. Id. ¶¶ 1-2; Trueba Cert., Ex. A (the "Note"), ECF No. 64.4. The Note was secured by a non-purchase money mortgage against the Property. BONYM SOMF ¶ 4; Trueba Cert., Ex. B (the "Mortgage"). Witty executed the Mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Heartland, and the Mortgage was recorded in the Essex County Register's Office on December 15, 2006. BONYM SOMF ¶ 5.

The Note provides that Witty is in default if he fails to pay the full amount of each monthly payment on the date that it is due. See Note § 6(B). In the event of default, the Bank may accelerate the amount due and institute foreclosure proceedings, so long as it provides Witty with sufficient notice. See Mortgage ¶ 22.

On December 1, 2009, Witty failed to make his required monthly payment and defaulted on the Note. BONYM SOMF ¶ 10. Witty has not made any subsequent payments under the Note. Id.; see also Trueba Cert., Ex. E (providing payment history).

On June 3, 2010, MERS assigned the Mortgage to The Bank of New York Mellon, as Trustee for the Benefit of Alternative Loan Trust 2007-7T2 Mortgage Pass-Through Certificates, Series 2007-7T2 (the "Prior Bank of New York Entity"), and this assignment was recorded on June 9, 2010. BONYM SOMF ¶ 6; Trueba Cert., Ex. C (the "First Assignment").

On July 22, 2013, Residential Credit Solutions, Inc. ("RCS"), on behalf of the Prior Bank of New York Entity, sent Witty a Notice of Default and Intention to Foreclose. BONYM SOMF ¶ 11; Trueba Cert., Ex. F (the "NOI"). The NOI indicated that Witty was in default on the Note and Mortgage as of December 1, 2009, and that he had until August 24, 2013 to cure the default by paying $462,119.76. NOI at 2. Witty did not cure the default. BONYM SOMF ¶ 13.

On September 27, 2013, the Prior Bank of New York Entity assigned the Mortgage to BONYM, which was recorded on November 21, 2013. Id. ¶ 7; Trueba Cert., Ex. D (the "Second Assignment"). On June 18, 2014, BONYM initiated foreclosure proceedings by filing a complaint in the Superior Court of New Jersey, Essex County Chancery Division (the "Superior Court"). BONYM SOMF ¶ 13; see also ECF No. 1.2, Ex. A (the "Foreclosure Complaint"). On August 25, 2014, Witty filed an Answer in which he admitted BONYM's allegations but argued that BONYM failed to comply with the New Jersey Fair Foreclosure Act (the "NJFFA"), N.J.S.A. § 2A:50-56 et seq.[3] BONYM SOMF ¶ 14; Brodowski Cert, Ex. 2, ECF No. 64.5 (the "Answer").

---

undisputed unless otherwise noted. See Caraballo v. Hershkowitz, No. 14-1094, 2016 WL 1365994, at *1 (D.N.J. Apr. 6, 2016).

[3] The Superior Court deemed this answer "Contesting." BONYM SOMF ¶ 14.

On January 23, 2015, Witty removed the matter to this Court.  Notice of Removal, ECF No. 1.[4]

### B. Witty's Federal Complaint

On December 7, 2015, Witty filed a separate lawsuit against BONYM in this Court, which was docketed at No. 15-8486.  See Docket No. 15-8486, ECF No. 1 (the "Federal Complaint" or "Fed. Compl.").

The Federal Complaint alleges that the NOI failed to comply with the NJFFA and that the Bank made "fraudulent statements" to institute the Foreclosure Action "unlawfully."  Fed. Compl. at 7-9.  Witty asserts ten claims against BONYM: (1) negligence, for "fabricat[ing] false charges to [Witty's] Loan Account . . . which was at all times current and not in default," id. at 10; (2) declaratory judgment related to a "mortgage insurance policy" that covered BONYM's losses under the Note,[5] id. at 11-12; (3) "specific performance" for a "loan novation [aka modification]," under which Witty's monthly Mortgage payment would be reduced "by $4,000 per month," id. at 12-13 (alteration in original); (4) accounting under the Note, id. at 13; (5) breach of contract related to the alleged "loan novation," id. at 13-14; (6) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., for BONYM's alleged failure to disclose the amount due and owing under the Note, Fed. Compl. at 14; (7) a temporary restraining order and preliminary injunction to enjoin the foreclosure sale, id. at 15; (8) fraud, also related to the Bank's alleged representations in December 2009 that Witty's mortgage payment would be reduced by $4,000, id. at 15-16; (9) quiet title to the Property, id. at 16; and (10) rescission of the Note and Mortgage pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., Fed. Compl. at 17-18.

Following discovery, BONYM filed the instant Motion on September 27, 2019, ECF No. 64,[6] which Witty opposed, ECF No. 65.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

The Court construes all facts and inferences in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).  "[A] party opposing a

---

[4] This removal was not timely, but BONYM waived any objection by failing to file a motion to remand within thirty days.  See ECF No. 15 at 2 (citing Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

[5] It is not clear whether BONYM is implicated in this claim.

[6] In Case No. 15-8486, the instant Motion is docketed at ECF No. 61.

3

properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 US at 248 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted). Although the Court liberally construes a pro se plaintiff's complaint and affords the litigant "leeway" in following the "technical rules," the same summary judgment standard applies. Wells Fargo Equip. Fin., Inc. v. Inchon LLC, No. 05-5559, 2007 WL 2688914, at *2 (D.N.J. Sept. 11, 2007) (internal quotation marks and citations omitted); see also Abdul-Aziz v. Lanigan, No. 17-2806, 2020 WL 3287229, at *6 (D.N.J. June 18, 2020).

### III. ANALYSIS

#### A. BONYM's Prima Facie Right to Foreclose

BONYM argues that it has established its prima facie right to foreclose as a matter of law. BONYM Br. at 8-11, ECF No. 64.3. The Court agrees.

"A mortgagee establishes a prima facie right to foreclosure when there is proof of execution, recording, and non-payment of the mortgage." Wells Fargo Bank, N.A. v. Bertea, No. 13-7232, 2016 WL 1182707, at *3 (D.N.J. Mar. 28, 2016) (citing Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952)). "The only material issues in a foreclosure proceeding are: (1) the validity of the mortgage; (2) how much debt exists; and (3) the mortgagee's right to resort to the mortgaged premises." Id. (citing Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd 273 N.J. Super. 542 (App. Div. 1994); Cent. Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 302 (App. Div. 1982)).

Here, BONYM has satisfied each element of its prima facie case. BONYM presented competent evidence that Witty executed the Note and Mortgage, and that the Mortgage and its subsequent assignments were duly recorded. See BONYM SOMF ¶¶ 1-7; Note; Mortgage; First Assignment; Second Assignment. BONYM has also demonstrated that Witty defaulted by failing to make all payments due and owing since December 2009. BONYM SOMF ¶¶ 8-10; Trueba Cert., Ex. E.

Finally, BONYM has shown that it has standing to foreclose and a right to resort to the Property. "A bank's right to foreclose includes its standing by assignment," Bank of New York Mellon v. Walch, No. 15-724, 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (collecting cases), and it is "well established in New Jersey that either possession of the note or an assignment of the mortgage that predated the original complaint confers standing on a party," Grant-Covert v. Wells Fargo Bank, N.A., No. 15-6018, 2016 WL 901081, at *3 (D.N.J. Mar. 9, 2016) (citing Deutsche Bank Tr. Co. Americas v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012)). Here, the Second Assignment clearly shows that the Mortgage was assigned to BONYM nearly nine months before

4

it filed the Foreclosure Complaint. See BONYM SOMF ¶¶ 7, 13; Second Assignment; Foreclosure Compl.

Accordingly, BONYM has established its prima facie right to foreclose as a matter of law. See, e.g., Bertea, 2016 WL 1182707, at *3. The Court next turns to Witty's defenses and affirmative claims regarding the Note and Mortgage.

### B.   Witty's Defenses & Affirmative Claims

"[A] mortgagor who opposes summary judgment has a duty to present facts to controvert a mortgagee's prima facie case." Id. (citing Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572, 581 (App. Div. 1962), certif. denied 37 N.J. 229 (1962)). Here, Witty asserts several challenges to the Mortgage's validity and BONYM's right to foreclose through both his Answer and the Federal Complaint. As detailed below, they each fail as a matter of law.

#### 1.   Affirmative Defenses in the Answer

First, Witty argues that BONYM failed to comply with the NJFFA. See Answer at 3; Witty Br. at 9-11, ECF No. 65. The Court disagrees.

The NJFFA requires that residential mortgage lenders provide, in writing, "a notice of intention" to foreclose, "which shall include a notice of the right to cure the default . . . [within] at least 30 days." N.J.S.A. § 2A:50-56(a). The "written notice shall clearly and conspicuously state in a manner calculated to make the debtor aware of the situation" fifteen disclosures, including, as relevant here: (1) "the particular obligation or real estate security interest"; (2) "the nature of the default claimed"; (3) "what performance, including what sum of money, if any, and interest, shall be tendered to cure the default as of the date specified"; (4) that if the debtor does not cure default, "the lender may . . . commenc[e] a foreclosure suit"; and (5) that "the debtor is advised to seek counsel from an attorney of the debtor's own choosing concerning the debtor's residential mortgage default situation." See id. § 2A:50-56(c)(1)-(15).

Witty's Answer merely recites these requirements without explaining how the NOI failed to comply with them. See Answer at 3; see also Witty Br. at 9-10. When asked at his deposition, he did not clarify the basis for his NJFFA claim. See Witty Dep. Tr. at 75:17-77:24, Brodowski Cert., Ex. 7.[7] Regardless, the NOI complied with the NJFFA's requirements because it clearly stated the debt owed under the Note and Mortgage, identified BONYM as the lender, provided more than thirty days to cure by paying $462,119.76, explained that BONYM would commence a foreclosure proceeding if the default was not cured, advised Witty to seek counsel (including resources if he was unable to afford an attorney), and provided contact information for both BONYM and RCS so that he could dispute the debt and default. See NOI at 2-6. Given these thorough disclosures, the Court concludes that the NOI complied with the NJFFA as a matter of

---

[7] When asked "how did [BONYM] fail to comply with the New Jersey Fair Foreclosure Act," Witty repeatedly responded "that would require documentation" and "object[ed] to form" because the question "call[ed] for contention." Witty Dep. Tr. at 75:23-25, 76:3-5, 76:11-13. As discussed below, he made similar objections to virtually every question asked by BONYM's counsel.

5

law. See, e.g., Wells Fargo Bank, NA v. Howard, No. A-5253-16T3, 2019 WL 989878, at *2 (N.J. Super. Ct. App. Div. Feb. 28, 2019).

Second, Witty asserts that the Mortgage is invalid because it "secured a stated income loan, but [Heartland] did not ask for proof of income." Answer at 3. Even accepting this argument as true, the Court concludes that it does not undermine the validity of the Note or the Mortgage.

As previously noted, "[t]he only material issues in a foreclosure proceeding are: (1) the validity of the mortgage; (2) how much debt exists; and (3) the mortgagee's right to resort to the mortgaged premises." Bertea, 2016 WL 1182707, at *3. Witty responded to BONYM's interrogatories that Heartland "did not promise anything other than the original Note and Deed of Trust" and that the Note's terms were not "objectionable" to him. See Witty Resp. to Interrogatories ¶¶ 19-20, Brodowski Cert., Ex. 6. Any disagreement about whether the Note was a "stated income" loan, then, does not affect the validity of the Mortgage, because Witty does not object to any of its terms, nor would a "stated income" term change the amount of the debt owed. Moreover, Witty did not offer any evidence to support this claim during discovery or his deposition, see Witty Dep. Tr. at 82:4-83:22, and he did not address it in his briefing, see generally Witty Br. Accordingly, the Court finds that Witty's "stated income" affirmative defense cannot undermine BONYM's prima facie right to foreclose as a matter of law.[8]

### 2. Claims in the Federal Complaint

Witty next asserts ten causes of action that allegedly undermine the validity of the Mortgage and BONYM's right to foreclose. See Fed. Compl. at 10-18. The Court finds that each fails as a matter of law.[9]

### a. Negligence

To establish a claim for negligence, a plaintiff must prove "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008) (internal quotation marks and citation omitted) (alterations in original). Here, Witty merely repeats these elements in a conclusory fashion and alleges that BONYM "fabricated

---

[8] Witty also appears to argue that BONYM lacks standing to foreclose. See Witty Br. at 3-4. As noted above, BONYM has established its standing as a matter of law. See supra Section III.A.

[9] BONYM argues that the Federal Complaint is barred by New Jersey's entire controversy doctrine. See BONYM Br. at 24-27. The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (internal quotation marks and citation omitted). In the foreclosure context, the doctrine bars successive suits where the claims are "germane" to the foreclosure. Monclova v. Goldberg & Wolf, LLC, No. 17-1481, 2017 WL 4790386, at *4 (D.N.J. Oct. 23, 2017). "Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action." Coleman v. Chase Home Fin., LLC, 446 F. App'x 469, 472 (3d Cir. 2011) (citing Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 137 N.J. Super. 353, 357-58 (App. Div. 1975)). The Court agrees with BONYM that the Federal Complaint's claims are all germane to the foreclosure. However, given that Witty is pro se and that the Foreclosure Action and the Federal Complaint were informally consolidated by Judge Hammer, the Court treats the Federal Complaint as though it were properly filed as a counterclaim, rather than a separate action which would be barred by entire controversy doctrine. The Court therefore considers the merits of each claim.

false charges to [his] Loan Account" in order to justify the foreclosure. Fed. Compl. at 9-10. First, "a bank does not owe a duty of care to a borrower, even if the borrower is a consumer." Shinn v. Champion Mortg. Co., Inc. No. 09-13, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (citing United Jersey Bank v. Kensey, 306 N.J. Super. 540, 552-53 (App. Div. 1997)). Second, even assuming BONYM did owe a duty to Witty, he has produced no evidence to support his negligence claim, and he refused to answer questions about this claim during his deposition, see Witty Dep. Tr. at 132:10-133:10 (repeatedly objecting that the question "What do you allege [BONYM] did that was negligent with respect to [the Note and Mortgage]" was improper because it "ask[s] for a legal conclusion"). As such, Witty has not "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 US at 248. The Court therefore grants summary judgment to BONYM on Witty's negligence claim. See, e.g., Friedman v. Bank of America, N.A., No. 09-2214, 2012 WL 1019220, at *8 (D.N.J. Mar. 26, 2012) (granting summary judgment on tort claim related to mortgage where plaintiff "produced no evidence from which a rational jury could find that the Defendant" committed alleged wrongdoing).

### b. Breach of Contract, Specific Performance, and Fraud

Witty alleges that, in December 2009, a Bank representative offered to reduce his monthly payment under the Note and Mortgage by $4,000, which he accepted (the "Loan Modification"). See Fed. Compl. at 13-14. He argues that BONYM breached this agreement by failing to alter the Note's terms and that the Court should order specific performance. Id. at 12-13. BONYM argues that it never offered or agreed to the Loan Modification. BONYM Br. at 31-33. The Court agrees with BONYM.

To prevail on a breach of contract claim under New Jersey law, a plaintiff must show (1) the parties entered into a valid contract, (2) the defendant breached the contract, and (3) the plaintiff sustained damages as a result. Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007). Witty has not demonstrated that the parties entered into a valid agreement to modify the Note, because he has offered only his own "self-serving conclusions, unsupported by specific facts in the record." Herbert v. Newton Mem'l Hosp., 933 F. Supp. 1222, 1229 (D.N.J. 1996). BONYM has no written record of the Loan Modification. See BONYM SOMF ¶ 12; Trueba Cert. ¶ 18. When asked about the Loan Modification at his deposition, Witty did not know the exact date or terms of the conversation with the Bank's agent, nor could he recall the agent's name. See Witty Dep. Tr. at 105:2-106:18 (noting, among other things, that Witty could not remember if the conversation occurred in September 2009 or December 2009). He also admitted that he did not have any written proof of the Loan Modification, and he did not record the phone call. Id. at 107:1-110:11. The Court concludes that BONYM is entitled to summary judgment on this claim because Witty has not provided any evidence of the Loan Modification that would give rise to "a genuine issue of material fact that would permit a reasonable jury to find for [him]." Miller, 843 F.2d at 143.[10]

---

[10] Given that the Court finds there was no agreement between BONYM and Witty to alter the repayment terms of the Note, Witty's request for specific performance of that alleged agreement, see Fed. Compl. at 12-13, also fails as a matter of law.

7

Witty's fraud claim, which rests on the same allegations that the Bank offered the Loan Modification and then did not honor that representation, see Fed. Compl. at 15-16, fails for the same reasons.[11]

### c. FDCPA

Witty argues that BONYM violated the FDCPA by not disclosing "the sums actually due under the Note" and by failing to provide an appropriate debt validation letter. Fed. Compl. at 14-15. BONYM argues that the FDCPA claim is barred by the statute of limitations. BONYM Br. at 35-36. The Court concludes that Witty's FDCPA claim fails as a matter of law such that it need not address the statute of limitations.

The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt collector must send the consumer

> a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). These disclosures are referred to as a debt validation notice. Wilson v. Quadramed Corp., 225 F.3d 350, 353-54 (3d Cir. 2000). The NOI clearly complied with the FDCPA's debt validation requirements: it listed the principal amount due as $1,162,275.52, identified BONYM as the creditor to whom the debt was owed, and contained the required statements regarding disputing the debts. See NOI at 2-4. Witty's FDCPA claim therefore fails as a matter of law, and BONYM is entitled to summary judgment.[12]

### d. Quiet Title and Declaratory Judgment

Witty next asks the Court to quiet title "against all adverse claims" to the Property. Fed. Compl. at 16-17. The Court declines to do so.

---

[11] Witty also asks for an "accounting" of the "sums paid, credited, [and] due" under the Note and Mortgage. See Fed. Compl. at 13. Such an accounting has already been provided by BONYM. See, e.g., Trueba Cert., Ex. E (Witty's payment history). Witty's accounting claim contains no other allegations upon which the Court could question "how much debt exists," and thus cannot defeat BONYM's prima facie right to foreclose. Bertea, 2016 WL 1182707, at *3.

[12] To the extent that Witty argues the NOI was misleading in violation of the FDCPA because it did not reflect the Loan Modification, this argument fails for the same reasons that his breach of contract claim fails. That is, he has not provided any evidence that BONYM offered or agreed to the Loan Modification. See supra Section III.B.2.b.

> New Jersey's quiet title statute provides:
>
> Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when his title thereto, or any part thereof, Is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, or to hold a lien or encumbrance thereon, and when no action is pending to enforce or test the validity of such title, claim or encumbrance, maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same.

N.J.S.A. § 2A:62-1. "The purpose of an action to quiet title is to put within the power of a person, who is in peaceable possession of realty as an owner, a means to compel any other person, who asserts a hostile right or claim, or who is reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination." Schiano v. MBNA, No. 05-171, 2013 WL 2452681, at *26 (D.N.J. Feb. 11, 2013) (citing Brookdale Park Homes, Inc. v. Twp. of Bridgewater, 115 N.J. Super. 489, 496 (Ch. Div. 1971)). In order to prevail in a quiet title action, Witty must show that BONYM's "competing interests" in the Property "are wrongful." English v. Fed. Nat'l Mortg. Ass'n, No. 13-2028, 2013 WL 6188572, at *3 (D.N.J. Nov. 26, 2013). Here, however, the Mortgage gives BONYM a valid interest in the Property and BONYM has established its prima facie right to foreclose. See supra Section III.A. As such, Witty's quiet title claim fails as a matter of law, and BONYM is entitled to summary judgment. See English, 2013 WL 6188572, at *3; Schiano, 2013 WL 2452681, at *25-26 (collecting cases).

e. **Rescission under TILA**

Witty argues that the Note and the Mortgage are invalid because he did not receive the mandatory TILA disclosures after executing the Note and he timely filed a written notification of rescission (the "Notice of Rescission") under the Act. See Fed. Compl. at 17-18. The Court disagrees.

TILA "gives borrowers the right to rescind certain loans for up to three years after the transaction is consummated . . . if the lender failed to satisfy the Act's disclosure requirements." Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259, 260-62 (2015). Here, Witty alleges that he sent the Notice of Rescission on October 20, 2009, within the three-year period after he executed the Note. Fed. Compl. at 17. But BONYM has no record of the Notice of Rescission, see Trueba Cert. ¶ 19, and Witty has never produced it, see Witty Dep. Tr. at 141:16-144:11 (Witty claiming he had a copy of the Notice of Rescission but did not produce it during discovery, despite the Bank's requests for it); see generally Def. Br. (failing to attach the Notice of Rescission or address his TILA claim). The Court therefore concludes Witty's claim that the Notice of Rescission exists is a "self-serving conclusion[], unsupported by specific facts in the record." Herbert, 933 F. Supp. at 1229. Because Witty has failed to offer any evidence in support of his TILA claim, BONYM is entitled to summary judgment.

* * *

For the reasons stated above, the Federal Complaint fails to undermine "(1) the validity of the [M]ortgage; (2) how much debt exists; and (3) the mortgagee's right to resort to the mortgaged premises." Bertea, 2016 WL 1182707, at *3. BONYM is entitled to summary judgment on its foreclosure claims because it established its prima facie right to foreclose and Witty has failed to offer any "defenses . . . [that] controvert" that right. Walch, 2017 WL 1734031, at *5-6.[13]

### C. Remand to the Superior Court

BONYM argues that the Court should strike Witty's Answer and remand this action to the Superior Court to proceed as an uncontested foreclosure. See BONYM Br. at 11, 40. The Court disagrees.

"Because this matter is not uncontested, [the Court] must deny [BONYM's] requested relief." Walch, 2017 WL 1734031, at *7. Here, Witty is "still actively opposing [BONYM's] foreclosure action," even if the Court has rejected his defenses from the Answer and his affirmative claims from the Federal Complaint.[14] Id. Additionally, the Court "does not have the power to remand this case to a New Jersey state court, because there is no basis for concluding that this Court now lacks subject matter jurisdiction over the case," since there is still diversity between the parties. Bertea, 2016 WL 1182707, at *3.

### IV. CONCLUSION

For the reasons stated above, BONYM's Motion for Summary Judgment, ECF No. 64, is **GRANTED**, and Witty's Cross-Motion for Summary Judgment, ECF No. 65, is **DENIED**. Witty's Federal Complaint, Case No. 15-8486, ECF No. 1, is **DISMISSED**, and Case No. 15-8486 is hereby **CLOSED**. Case No. 15-500 remains open to conduct the foreclosure.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[13] Finally, Witty asks that the Court enjoin any foreclosure sale via a preliminary injunction. See Fed. Compl. at 15. Because Witty has failed to rebut BONYM's prima facie right to foreclose, the Court need not address this requested relief.

[14] The Court declines to strike the Answer for the reasons articulated in Walch. See 2017 WL 1734031, at *6 (noting that striking a pleading is a "drastic remedy" which was unnecessary when the Court "already adjudged that none of the affirmative defenses present[ed] a genuine issue of material fact").