**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

**Andrew Witty**
500 White Oak Ridge Road
Short Hills, New Jersey 07078
Tel: 917.270.0103
E-MAIL:WITTY@IMAXDIRECT.COM

Defendant and Cross Complainant, in pro se

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY – NEWARK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON; | Case No.:15-cv-00500 MCA- MAH |
| Plaintiff | DEFENDANT ANDREW WITTY'S MOTION FOR ENFORCEMENT OF MANDATORY STAY OF THESE JUDICIAL PROCEEDINGS UNDER **12 C.F.R. 1024.41, *ET SEQ.*;** MEMORANDUM OF LAW WITH AUTHORITIES; AFFIDAVIT OF DEFENDANT ANDREW WITTY, EXHIBITS IN SUPPORT; [PROPOSED] ORDER STAYING PROCEEDING; REQUEST FOR JUDICIAL NOTICE OF FEDERAL LAW AND THE COURT'S OWN FILE AND REFERENCE TO NEW JERSEY FORECLOSURE LAW |
| ANDREW J. WITTY, | Hearing date: Time: Room: |
| Defendants, pro se | |
| And related cross action of WITTY v. BANK OF NEW YORK MELLON, ET AL. | |

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

## NOTICE OF MOTION AND MOTION FOR STATUTORY STAY

Co- Defendant co-borrower Andrew J Witty, independently, and solely, petitions in this foreclosure matter to this honorable court for issuance of a federally mandatory STAY OF THE PROCEEDINGS consistent with the existing law found in the loss mitigation procedures of **12 C.F.R. 1024.41(g), et seq.** [1]   This motion will be based on this noticed motion, memo of law, exhibits, affidavit of defendant Andrew J. Witty and the proposed Order after Hearing.

This governmental scheme is part of **Regulation X** of the federal consumer protection laws available to borrowers, which allows a borrower to enforce the provisions of this section pursuant to **section 6(f) of *RESPA* (12 U.S.C. 2605(f)).**

The Congressionally stated purpose of this regulation enforced by the *Consumer Finance Protection Bureau*, largely, is to create a system of foreclosure avoidance regulations by providing for loss mitigation options in lieu of foreclosure.

**This provision effectively bars, stays and forbids <u>any</u> judicial or non-judicial activity related to promulgating a foreclosure pending the disposition with a loan servicer of a loan modification**. Id.  Witty seeks the benefit of this regulation as the purpose of this motion. This motion is within the purpose of the statute or regulation and not for purposes of delay. No other motion similar has been filed to date seeking the same relief.  Good cause exists for granting this motion.  The evidence will show Mr. Witty activated the provisions of

---

[1] **12 CODE OF FEDERAL REGULATIONS § 1024.41(g)**

The **prohibition on dual tracking** is contained in 12 C.F.R. § 1024.41(g), which states in relevant part that if a borrow submits a complete loss mitigation application after a servicer has made the first notice or *filing* required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, **a servicer shall not move for foreclosure judgement or order of sale, or conduct a foreclosure sale.**

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

− 2

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

1024 (b)(1),et al by submitting a loss mitigation application in various parts to the loan servicer Shellpoint Mortgage Service on or about August 18, 2022 and in doing so, the servicer, under the federal regulations then "must continue to exercise reasonable diligence to obtain documents and information from the borrower that the servicer requires to evaluate the borrower as to all other loss mitigation options available to the borrower." [2] Once activated, the servicer **shall not act to foreclose**. Fn 1

A stated purpose of this regulation is to prevent the common practice of "dual tracking" i.e., seeking to foreclose at times when a loan modification was being considered, a practice prohibited by the regulation. [3]  This is more thoroughly discussed in CPFB *comments* to section 41(b)(2)(i) "requirements." In short, the servicer must continue to determine if the loss mitigation application is complete and under subsec.(B) then notify the borrower in writing of receipt of the application and its complete or incompleteness along with time periods for compliance under 41(b)(2)(ii). In deference to the vastness of the regulation, the court is asked to take **judicial notice** thereof for its own edification at *<consumerfinance.gov/rules-policy/regulations/1024/41 >et seq.,* and see *Memo* attached for content.

HISTORY OF THE LOSS MITIGATION IN CASE AT BAR

Mr. Witty has alluded to this remedial loan modification process in court filings previously.  However, the core issue at that time was not enforcement of the mandatory stay called out under 12 C.F.R. 1024, et seq.

---

[2] Citing from the official interpretation of 41(b)(1)-Complete loss mitigation application published by the *Consumer Financial Protection Bureau*, from its official website of the U.S. government.
[3] Ibid.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.

Mr. Witty addresses the facts of this transaction more fully in his *Affidavit of Witty*, made a part of this motion's application.  Witty brings this motion without prejudice or waiver of any right he has in this case. He does not speak jointly for any other defendant in doing so.

To summarize, on or about August 18, 2022, Witty solicited and successfully petitioned the loan servicer Shellpoint Mortgage Service of the lender/plaintiff BONYM beginning on or about August 18, 2022, by telephone call to Kenny Land.  The ongoing negotiations lead to the applying of the CFR regulations as it applies to the Witty's joint loan. See discussion in *Affidavit of Andrew Witty*.

Pertinent the date of August 18, 2022, that the servicer Shellpoint Mortgage Service responded to and induced reasonable reliance by Mr. Witty to believe and who did reasonably believe that servicer had committed to engaging in negotiations in line with the statutory purpose of 12 CFR 1024, et al., *infra*, binding the servicer to take steps that caused Mr. Witty to produce and provide documents, facts and information. Avoiding a foreclosure was the purpose of the statute and the actions of Witty.

As a result, Mr. Witty expected to be presented with an initial loss mitigation proposal or offer at some point after the consideration process had commenced.

It is a matter of *judicial notice* that the effects of Covid-19 on the lending industry caused confusion and delays in the servicer's normal process of consideration of retooled loan terms and conditions. This fact was admitted to Witty by Shellpoint's agents. See Affidavit. Witty.Covid-19 clearly caused changes to the servicer's own internal loss mitigation protocol. Because of the operations effect of the Covid -19 pandemic and the court's own imposed emergency local rules staying foreclosures and other civil litigation resulting Witty's servicer Shellpoint Mortgage Service hanged its own loss mitigation protocols. See Aff. Witty.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

–  4

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

These alterations from the norm placed Witty's and arguably thousands of other borrowers in a position of not knowing the status of their loan modification.  Witty believes these two influencers altered the usual course of the servicer's usual protocol to avoid foreclosure losses, i.e., first, internal company policy changes caused by Covid's interference with legal processes within the company, secondly, the stays imposed on the judicial activity nationwide which is a matter judicially noticeable, particularly in this district court and affecting this case. *Aff.. Witty.*

As a direct result of these developments, the "completion of the servicer's consideration" of the loss prevention has now been delayed with no date certain for completion, see *Aff. Witty.*

In summary, the CFR provisions clearly includes a legislative prohibition and stay on **all judicial activity** **intended to further a foreclosure** until the negotiation and potential appeal rights are exhausted. [4]

CURRENT STATUS OF LOSS PREVENTION

The present status of the loss mitigation, per *Aff. Witty* is undetermined. Mr. Witty has done all acts in compliance with the Code at the behest of the servicer.  Notably, it was the servicer itself by statements made by authorized agent Shirly Serda, that Witty relied upon on or about October 18, 2023:

> *"Since the onset of Covid-19, we [the servicer] have had to suspend our usual loan alternatives pending the order of courts nationwide which has affected our timing.  Until we receive interdepartmental directives as to how to proceed and the restrictions on Covid -19 are judicially lifted, we will not be making any final loan*

---

[4] See the exhaustive *Memorandum of Law* cited herein after.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

− 5 −

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

*modification determinations. Rest assured, Mr. Witty, your case will not*

*be proceeding forward to a foreclosure due to the legal requirements we*

*cannot currently meet."* Excerpted from telephonic recital regarding

"complete loan application." See *Aff. Witty.*

CURRENT STATUS OF THIS FORECLOSURE CASE

This matter at bar is a *in rem* equitable *foreclosure* case that the record of this District

Court governed by the substantive laws of the state of New Jersey which the record shows was

recently reopened after an administrative dismissal was set aside on or about May 31, 2022,

See <u>Exhibit A</u> ECF Doc No. 97. It was initially in state court filed in New Jersey, and later

removed to this federal district court on or about January 23, 2015.  Regardless, this action

cannot continue under the cited **Code of Federal Regulations** which govern this loan-based

foreclosure litigation activity.

RECENT PROCEDURAL ACTIVITY

1. On or about May 31, 2022, this court issued an administrative dismissal for lack of

   plaintiff's compliance with prior court orders. ECF Doc No. 97

2. On or about July 14, 2023, the court granted plaintiff's motion to reopen this case

   with conditions calling for plaintiff's further compliance. ECF Doc No. 103

3. As of the date of the reopening, foreclosure case *deficiencies,* apart from the

   requirements of 12 CFR 1024, et al., in the procedural framework exist including:

   a. The court's own file shows that only a *summary* judgment exists against only

      one of two note and mortgage signing signatories. Final judgment cannot be

      perfected as a matter of law given the lack of *in personam* jurisdiction over a

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

–  6

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

co-signee. See Memo; see para. 5 below. See **Wells Fargo Bank, N.A. v. Garner** 416 N.J. Super. 520 (App. Div. 2010)

b. No motion for *final* judgment has been applied for by plaintiff, nor served on the moving party Mr. Witty, who is but one of two borrowers on the Note and Mortgage. Id.

c. Mr. Witty alone has appeared after service of the complaint and summons. Ms. Witty a person with vested rights under the Note and Mortgage has not been served with process nor appeared.

4. The case stands as one which only Summary Judgment exists against one of two indispensable defendants.  The SJ was issued over robust opposition against *only* Andrew Witty.  Presently, there is **no Final Judgment** against any defendant.

5. *Summary judgment is acknowledged in the appellate courts to be a mere interlocutory decree and does not support a final sheriff's sale in New Jersey as a matter of law.* **Wells Fargo Bank, NA. v. Garner** 416 N.J. Super. 520 (App. Div. 2010)— "In Wells Fargo, we dismissed an appeal from a summary judgment order in a foreclosure action because it was interlocutory. Only a final judgment disposes of all issues and is generally appealable as a matter of right." **N.J.R. 2:2-3(a)**. In New Jersey real estate foreclosure actions, "the final judgment . . . fixes the amount due under the mortgage and directs the sale of the real estate to raise funds to satisfy the amount due." **Eisen v. Kostakos**, 116 N.J. Super. 358, 365, 282 A.2d 421 (App.Div. 1971).

6. The only served and appearing defendant is Andrew Witty who was a signatory on the Note and Mortgage along with his spouse, Sheryl Witty who was never

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

– 7

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

lawfully served with process nor appeared in this proceeding. Note: the last Order dated July 14, 2023, ECF Doc No.103 issued by the court is evidence that confirms that Sheryl Witty was not served as a party before the court for want of service of process under FRCP rule 4; see Court Order ECF Doc No.103 <u>Exhibit B</u> **Nowhere is Ms. Witty shown to be served by the court clerk under the court's mandatory administrative duty on any *service certification* list or e-list of the court with any operative court filings, which corroborates the fact of her lack of standing before this court.  The court's own service certifications otherwise shows no evidence of service of documents on this party.** See court's own file.

7. The law in the state of New Jersey requires that **all interested parties** must be named, served or otherwise brought before the court for a full foreclosure disposition. See **Sec. III Memo** citing pertinent law.

   Lastly, as the clear reading of the regulation sets forth, there can be no dispositive acts done judicially or extrajudicially when there is a **pending loss prevention concerning a loan in question under review by the mortgage servicer**. Supra.

The consequence of this law stops all foreclosure activity. To allow further activity, violates the letter of the law and abrogates Mr. Witty's right to a new loan consideration whether by modification or novation.

---

### III.

### MEMORANDUM OF LAW and POINTS AND AUTHORITIES

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

− 8 −

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

References and cites to the **C.F.R.** *supra*, are relevant to this stay of the proceedings. See footnotes and citations.

Summarily, the state law is clear that all interested parties including all signatory borrowers named in the foreclosure action must be brought before the court by service of process lest there be no *in personam* jurisdiction over the debtors/borrowers/obligors.  CITE____.  The evidence is clear only Mr. Witty was served with the summons and complaint.  Sheryl Witty, the co-defendant has **never been served or appeared and not subject to this court's jurisdiction.** FRCP Rule 4, case law cited elsewhere. Nevertheless, Mr. Witty stands as a *real party in interest* with rights to enforce the provisions of the Federal Regulations.

**12 C.F.R. 1024.41, et al.**;

**6(f) of RESPA (12 U.S.C. 2605(f))**

Citing liberally from the Regulation (with emphasis added):

12 CFR § 1024.41 - Loss mitigation procedures.

(a)  Enforcement and limitations. **A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).** Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

 (b)  **Receipt of a loss mitigation application**—(1) Complete loss mitigation application. A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. **A *servicer* shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.**

(2) **Review of loss mitigation application submission—(i) Requirements**. If a servicer receives a loss mitigation application **45 days or more** before a foreclosure sale, a servicer **shall**:

(A) Promptly upon receipt of a loss mitigation application, **review** the loss mitigation application to determine if the loss mitigation application is complete; and

(B) **Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete**. *If a loss mitigation application is incomplete, the **notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date** pursuant to paragraph*

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

–  9

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

*(b)(2)(ii) of this section.* The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

(ii) **Time period disclosure**. The notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete.

(3) **Determining protections**. To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made as of the date a complete loss mitigation application is received.

(c) **Evaluation of loss mitigation applications**—(1) Complete loss mitigation application. Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a **complete** loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer **shall:**

(i) Evaluate the borrower for *all loss mitigation options available to the borrower*; and

(ii) Provide the borrower with a **notice in writing stating the servicer's determination of which loss mitigation options,** if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer **shall** include in this notice the **amount of time the borrower has to accept or reject an offer of a loss mitigation program** as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the **borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal**, as provided for in paragraph (h) of this section.

(2) **Incomplete loss mitigation application evaluation**—

**(i) In general**. Except as set forth in paragraphs (c)(2)(ii), (iii), (v), and (vi) of this section, **a servicer shall not evade the requirement to evaluate a *complete* loss mitigation application** for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an **incomplete** loss mitigation application.

(ii) **Reasonable time**. Notwithstanding paragraph (c)(2)(i) of this section, if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option. Any such evaluation and offer is not subject to the requirements of this section and shall not constitute an evaluation of a single complete loss mitigation application for purposes of paragraph (i) of this section.

(iii) **Short-term loss mitigation options**. Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a short-term payment forbearance program or a short-term repayment plan to a borrower based upon an evaluation of an incomplete loss mitigation application. Promptly after offering a payment forbearance program or a repayment plan under this paragraph (c)(2)(iii), unless the borrower has rejected the offer, the servicer must provide the borrower a written notice stating the specific payment terms and duration of the program or plan, that the servicer offered the program or plan based on an evaluation of an incomplete application, that other loss mitigation options may be available, and that the borrower has the option to submit a complete loss mitigation application to receive an evaluation for all loss mitigation options available to the borrower regardless of whether the borrower accepts the program or plan. **A servicer <u>shall not</u> make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, and shall not move for foreclosure judgment or order of sale or conduct a foreclosure sale, if a**

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

**borrower is performing pursuant to the terms of a payment forbearance program or repayment plan offered pursuant to this paragraph (c)(2)(iii).** A servicer may offer a short-term payment forbearance program in conjunction with a short-term repayment plan pursuant to this paragraph (c)(2)(iii).

(iv) **Facially complete application**. A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section. **If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section <u>until</u> the borrower is given a reasonable opportunity to complete the application.** If the borrower completes the application within this period, the application shall be considered complete as of the date it first became facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of this paragraph (c). A servicer that complies with this paragraph (c)(2)(iv) will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B) of this section.

**(v) Certain COVID–19-related loss mitigation options**.

(A) Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a borrower a loss mitigation option based upon evaluation of an incomplete application, provided that all of the following criteria are met:

(1) The loss mitigation option permits the borrower to delay paying covered amounts until the mortgage loan is refinanced, the mortgaged property is sold, the term of the mortgage loan ends, or, for a mortgage loan insured by the Federal Housing Administration, the mortgage insurance terminates. For purposes of this paragraph (c)(2)(v)(A)(1), "covered amounts" includes, without limitation, all principal and interest payments forborne under a payment forbearance program made available to borrowers experiencing a COVID–19-related hardship, including a payment forbearance program made pursuant to the Coronavirus Economic Stabilization Act, section 4022 (15 U.S.C. 9056); it also includes, without limitation, all other principal and interest payments that are due and unpaid by a borrower experiencing a COVID–19-related hardship. For purposes of this paragraph (c)(2)(v)(A)(1), "the term of the mortgage loan" means the term of the mortgage loan according to the obligation between the parties in effect when the borrower is offered the loss mitigation option.

(2) Any amounts that the borrower may delay paying as described in paragraph (c)(2)(v)(A)(1) of this section do not accrue interest; the servicer does not charge any fee in connection with the loss mitigation option; and the servicer waives all existing late charges, penalties, stop payment fees, or similar charges promptly upon the borrower's acceptance of the loss mitigation option.

(3) The borrower's acceptance of an offer made pursuant to paragraph (c)(2)(v)(A) of this section ends any pre-existing delinquency on the mortgage loan.

(B) Once the borrower accepts an offer made pursuant to paragraph (c)(2)(v)(A) of this section, the servicer is not required to comply with paragraph (b)(1) or (2) of this section with regard to any loss mitigation application the borrower submitted prior to the servicer's offer of the loss mitigation option described in paragraph (c)(2)(v)(A) of this section.

**(vi) Certain COVID–19-related loan modification options.**

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(A) Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a borrower a loan modification based upon evaluation of an incomplete application, provided that all of the following criteria are met:

(1) The loan modification extends the term of the loan by no more than 480 months from the date the loan modification is effective and, for the entire modified term, does not cause the borrower's monthly required principal and interest payment to increase beyond the monthly principal and interest payment required prior to the loan modification.

(2) If the loan modification permits the borrower to delay paying certain amounts until the mortgage loan is refinanced, the mortgaged property is sold, the loan modification matures, or, for a mortgage loan insured by the Federal Housing Administration, the mortgage insurance terminates, those amounts do not accrue interest.

(3) The loan modification is made available to borrowers experiencing a COVID–19-related hardship.

(4) Either the borrower's acceptance of an offer pursuant to this paragraph (c)(2)(vi)(A) ends any preexisting delinquency on the mortgage loan or the loan modification offered pursuant to this paragraph (c)(2)(vi)(A) is designed to end any preexisting delinquency on the mortgage loan upon the borrower satisfying the servicer's requirements for completing a trial loan modification plan and accepting a permanent loan modification.

(5) The servicer does not charge any fee in connection with the loan modification, and the servicer waives all existing late charges, penalties, stop payment fees, or similar charges that were incurred on or after March 1, 2020, promptly upon the borrower's acceptance of the loan modification.

(B) Once the borrower accepts an offer made pursuant to paragraph (c)(2)(vi)(A) of this section, the servicer is not required to comply with paragraph (b)(1) or (2) of this section with regard to any loss mitigation application the borrower submitted prior to the servicer's offer of the loan modification described in paragraph (c)(2)(vi)(A) of this section. However, if the borrower fails to perform under a trial loan modification plan offered pursuant to paragraph (c)(2)(vi)(A) of this section or requests further assistance, the servicer must immediately resume reasonable diligence efforts as required under paragraph (b)(1) of this section with regard to any loss mitigation application the borrower submitted prior to the servicer's offer of the trial loan modification plan and must provide the borrower with the notice required by paragraph (b)(2)(i)(B) of this section with regard to the most recent loss mitigation application the borrower submitted prior to the servicer's offer of the loan modification described in paragraph (c)(2)(vi)(A) of this section, unless the servicer has already provided such notice to the borrower.

_____

(3) **Notice of complete application**.

(i) Except as provided in paragraph (c)(3)(ii) of this section, within 5 days (excluding legal public holi-days, Saturdays, and Sundays) after receiving a borrower's complete loss mitigation application, a servicer shall provide the borrower a *written notice* that **sets forth the following information:**

(A) That the loss mitigation application is complete;

(B) The date the servicer received the complete application;

(C) That the servicer expects to complete its evaluation within 30 days of the date it received the complete application;

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(D) That the borrower is entitled to certain foreclosure protections because the servicer has received the complete application, and, as applicable, either:

(1) If the servicer has not made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application; or

(2) If the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer has begun the foreclosure process, and that the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application;

(E) That the servicer may need additional information at a later date to evaluate the application, in which case the servicer will request that information from the borrower and give the borrower a reasonable opportunity to submit it, the evaluation process may take longer, and the foreclosure protections could end if the servicer does not receive the information as requested; and

(F) That the borrower may be entitled to additional protections under State or Federal law.

(ii) A servicer is not required to provide a notice pursuant to paragraph (c)(3)(i) of this section if:

(A) The servicer has already provided the borrower a notice under paragraph (b)(2)(i)(B) of this section informing the borrower that the application is complete and the servicer has not subsequently requested additional information or a corrected version of a previously submitted document from the borrower pursuant to paragraph (c)(2)(iv) of this section;

(B) The application was not complete or facially complete more than 37 days before a foreclosure sale; or

(C) The servicer has already provided the borrower a notice regarding the application under paragraph (c)(1)(ii) of this section.

(4) **Information not in the borrower's control**—(i) Reasonable diligence. If a servicer requires documents or information not in the borrower's control to determine which loss mitigation options, if any, it will offer to the borrower, the servicer must exercise reasonable diligence in obtaining such documents or information.

(ii) **Effect in case of delay.** (A)(1) Except as provided in paragraph (c)(4)(ii)(A)(2) of this section, a servicer must not deny a complete loss mitigation application solely because the servicer lacks required documents or information not in the borrower's control.

(2) If a servicer has exercised reasonable diligence to obtain required documents or information from a party other than the borrower or the servicer, but the servicer has been unable to obtain such documents or information for a significant period of time following the 30-day period identified in paragraph (c)(1) of this section, and the servicer, in accordance with applicable requirements established by the owner or assignee of the borrower's mortgage loan, is unable to determine *which loss mitigation options*, if any, it will offer the borrower without such documents or information, the servicer may deny the application and provide the borrower with a written notice in accordance with paragraph (c)(1)(ii) of this section. When providing the written notice in accordance with paragraph (c)(1)(ii) of this section, the servicer

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

–  13

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

must also provide the borrower with a copy of the written notice required by paragraph (c)(4)(ii)(B) of this section.

(B) If a servicer is unable to make a determination within the 30-day period identified in paragraph (c)(1) of this section as to which loss mitigation options, if any, it will offer to the borrower because the servicer lacks required documents or information from a party other than the borrower or the servicer, the servicer must, within such 30-day period or promptly thereafter, provide the borrower a written notice, informing the borrower:

(1) That the servicer has not received documents or information not in the borrower's control that the servicer requires to determine which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage;

(2) Of the specific documents or information that the servicer lacks;

(3) That the servicer has requested such documents or information; and

(4) That the servicer will complete its evaluation of the borrower for all available loss mitigation options promptly upon receiving the documents or information.

(C) If a servicer must provide a notice required by paragraph (c)(4)(ii)(B) of this section, the servicer must not provide the borrower a written notice pursuant to paragraph (c)(1)(ii) of this section until the servicer receives the required documents or information referenced in paragraph (c)(4)(ii)(B)(2) of this section, except as provided in paragraph (c)(4)(ii)(A)(2) of this section. Upon receiving such required documents or information, the servicer must promptly provide the borrower with the written notice pursuant to paragraph (c)(1)(ii) of this section.

(d) Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

(e) **Borrower response—(1) In general**. Subject to paragraphs (e)(2)(ii) and (iii) of this section, if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower. If a complete loss mitigation application is received less than 90 days before a foreclosure sale, but more than 37 days before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 7 days after the servicer provides the offer of a loss mitigation option to the borrower.

(2) **Rejection—(i) In general**. Except as set forth in paragraphs (e)(2)(ii) and (iii) of this section, a servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option.

(ii) **Trial Loan Modification Plan**. A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, shall be provided

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.

(iii) **Interaction with appeal process**. If a borrower makes an appeal pursuant to paragraph (h) of this section, the borrower's deadline for accepting a loss mitigation option offered pursuant to paragraph (c)(1)(ii) of this section shall be extended until 14 days after the servicer provides the notice required pursuant to paragraph (h)(4) of this section.

(f) Prohibition on foreclosure referral—(1) Pre-foreclosure review period. A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) A borrower's mortgage loan obligation is more than 120 days delinquent;

(ii) The foreclosure is based on a borrower's violation of a due-on-sale clause; or

(iii) The servicer is joining the foreclosure action of a superior or subordinate lienholder.

(2) Application received before foreclosure referral. If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii) The borrower rejects all loss mitigation options offered by the servicer; or

(iii) The borrower fails to perform under an agreement on a loss mitigation option.

(3) **Temporary Special COVID–19 Loss Mitigation Procedural Safeguards—(i) In general**. To give a borrower a meaningful opportunity to pursue loss mitigation options, a servicer must ensure that one of the procedural safeguards described in paragraph (f)(3)(ii) of this section has been met before making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process because of a delinquency under paragraph (f)(1)(i) if:

(A) The borrower's mortgage loan obligation became more than 120 days delinquent on or after March 1, 2020; and

(B) The statute of limitations applicable to the foreclosure action being taken in the laws of the State where the property securing the mortgage loan is located expires on or after January 1, 2022.

(ii) **Procedural safeguards. A procedural safeguard is met if:**

(A) Complete loss mitigation application evaluated. The borrower submitted a complete loss mitigation application, remained delinquent at all times since submitting the application, and paragraph (f)(2) of this section permitted the servicer to make the first notice or filing required for foreclosure;

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(B) Abandoned property. The property securing the mortgage loan is abandoned according to the laws of the State or municipality where the property is located when the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process; or

(C) Unresponsive borrower. The servicer did not receive any communications from the borrower for at least 90 days before the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process and all of the following conditions are met:

(1) The servicer made good faith efforts to establish live contact with the borrower after each payment due date, as required by § 1024.39(a), during the 90-day period before the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process;

(2) The servicer sent the written notice required by § 1024.39(b) at least 10 days and no more than 45 days before the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process;

(3) The servicer sent all notices required by this section, as applicable, during the 90-day period before the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process; and

(4) The borrower's forbearance program, if applicable, ended at least 30 days before the servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process.

(iii) Sunset date. This paragraph (f)(3) does not apply if a servicer makes the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process on or after January 1, 2022.

_____

**(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:**

**(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;**

**(2) The borrower rejects all loss mitigation options offered by the servicer; or**

**(3) The borrower fails to perform under an agreement on a loss mitigation option.**

(h) **Appeal process**—(1) **Appeal process required for loan modification denials**. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

(2) Deadlines. A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

Motion to Stay a Proceeding by Defendant Andrew J Witty,Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(3) Independent evaluation. An appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application.

(4) Appeal determination. Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option. A servicer may require that a borrower accept or reject an offer of a loss mitigation option after an appeal no earlier than 14 days after the servicer provides the notice to a borrower. A servicer's determination under this paragraph is not subject to any further appeal.

(i) Duplicative requests. A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.

(j) Small servicer requirements. A small servicer shall be subject to the prohibition on foreclosure referral in paragraph (f)(1) of this section. A small servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process and shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, if a borrower is performing pursuant to the terms of an agreement on a loss mitigation option.

(k) Servicing transfers—(1) In general—(i) Timing of compliance. Except as provided in paragraphs (k)(2) through (4) of this section, if a transferee servicer acquires the servicing of a mortgage loan for which a loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the requirements of this section for that loss mitigation application within the timeframes that were applicable to the transferor servicer based on the date the transferor servicer received the loss mitigation application. All rights and protections under paragraphs (c) through (h) of this section to which a borrower was entitled before a transfer continue to apply notwithstanding the transfer.

(ii) Transfer date defined. For purposes of this paragraph (k), the transfer date is the date on which the transferee servicer will begin accepting payments relating to the mortgage loan, as disclosed on the notice of transfer of loan servicing pursuant to § 1024.33(b)(4)(iv).

(2) Acknowledgment notices—(i) Transferee servicer timeframes. If a transferee servicer acquires the servicing of a mortgage loan for which the period to provide the notice required by paragraph (b)(2)(i)(B) of this section has not expired as of the transfer date and the transferor servicer has not provided such notice, the transferee servicer must provide the notice within 10 days (excluding legal public holidays, Saturdays, and Sundays) of the transfer date.

(ii) Prohibitions. A transferee servicer that must provide the notice required by paragraph (b)(2)(i)(B) of this section under this paragraph (k)(2):

(A) Shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process until a date that is after the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section, notwithstanding paragraph (f)(1) of this section. For purposes of paragraph (f)(2) of this section, a borrower who submits a complete loss mitigation application on or before the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section shall be treated as having done so during the pre-foreclosure review period set forth in paragraph (f)(1) of this section.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(B) Shall comply with paragraphs (c), (d), and (g) of this section if the borrower submits a complete loss mitigation application to the transferee or transferor servicer 37 or fewer days before the foreclosure sale but on or before the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section.

(3) Complete loss mitigation applications pending at transfer. If a transferee servicer acquires the servicing of a mortgage loan for which a complete loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the applicable requirements of paragraphs (c)(1) and (4) of this section within 30 days of the transfer date.

(4) Applications subject to appeal process. If a transferee servicer acquires the servicing of a mortgage loan for which an appeal of a transferor servicer's determination pursuant to paragraph (h) of this section has not been resolved by the transferor servicer as of the transfer date or is timely filed after the transfer date, the transferee servicer must make a determination on the appeal if it is able to do so or, if it is unable to do so, must treat the appeal as a pending complete loss mitigation application.

(i) Determining appeal. If a transferee servicer is required under this paragraph (k)(4) to make a determination on an appeal, the transferee servicer must complete the determination and provide the notice required by paragraph (h)(4) of this section within 30 days of the transfer date or 30 days of the date the borrower made the appeal, whichever is later.

(ii) Servicer unable to determine appeal. A transferee servicer that is required to treat a borrower's appeal as a pending complete loss mitigation application under this paragraph (k)(4) must comply with the requirements of this section for such application, including evaluating the borrower for all loss mitigation options available to the borrower from the transferee servicer. For purposes of paragraph (c) or (k)(3) of this section, as applicable, such a pending complete loss mitigation application shall be considered complete as of the date the appeal was received by the transferor servicer or the transferee servicer, whichever occurs first. For purposes of paragraphs (e) through (h) of this section, the transferee servicer must treat such a pending complete loss mitigation application as facially complete under paragraph (c)(2)(iv) as of the date it was first facially complete or complete, as applicable, with respect to the transferor servicer.

(5) Pending loss mitigation offers. A transfer does not affect a borrower's ability to accept or reject a loss mitigation option offered under paragraph (c) or (h) of this section. If a transferee servicer acquires the servicing of a mortgage loan for which the borrower's time period under paragraph (e) or (h) of this section for accepting or rejecting a loss mitigation option offered by the transferor servicer has not expired as of the transfer date, the transferee servicer must allow the borrower to accept or reject the offer during the unexpired balance of the applicable time period.

[78 FR 10876, Feb. 14, 2013, as amended at 78 FR 60437, Oct. 1, 2013; 81 FR 72373, Oct. 19, 2016; 85 FR 39065, June 30, 2020; 86 FR 34899, June 30, 2021]
▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

IV.

AS OF THE RECENT DATE OF REOPENING THIS CASE, THERE IS

**NO FINAL APPEALABLE JUDGMENT** IN THE COURT RECORD,

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

ONLY AN INTERLOCUTORY SUMMARY JUDGMENT WHICH BY LAW IS NOT A

FINAL JUDGMENT AGAINST ALL NAMED BORROWERS [See Note and Mortgage]

<u>Exhibit C;</u> and <u>E</u>xhibit D

V.

THERE IS NO EVIDENCE THAT ANY COURT HAS PERFECTED *IN PERSONIUM*

JURISDICTION OVER A NAMED INDISPENSIBLE PARTY, VIS., SHERYL WITTY,

WHO SIGNED THE NOTE AND MORTGAGE BUT WHO HAS NOT APPEARED

NOR BEEN SERVED WITH ANY DOCUMENTS REQUIRED BY STATE AND

FEDERAL LAW

_____

CONCLUSION

The plain reading of the CFR makes a stay of the proceedings mandatory and not

optional where a foreclosure avoidance with the loan servicer as is occurring here is pending.

<u>This honorable court must rule supporting this Congressional mandate by taking no further</u>

<u>action favoring foreclosure until this LOSS MITIGATION issue is concluded.</u>  Appropriately,

the issuance of a stay or abatement of the proceedings is the proper remedy under C.F.R. cited.

Secondly, as cited supra, BONYM has violated the fundamental NJ and federal civil

rule that all defendants with a vested right and interest in the real property must be served and

appear. Academically, this is "civil procedure 101." To date, the record of this and NJ Superior

Court shows that Sheryl Witty, the co-signee/co-obligor/co-mortgagor under the note and

mortgage deed  has NOT been personally served with the summons and complaint, nor

appeared, been defaulted or defended this lawsuit as an indispensable real party in interest and

co-owners of the subject property of this action. See the court's own file.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

‒ 19

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

In short, neither the N.J. state or this federal court has *in personam* jurisdiction over

this named, but non-appearing party.   The record being clear, the court cannot issue a final

judgment in an *in rem* foreclosure case without all real parties in interest before it.


Date: Augus 24, 2023

Very Respectfully Submitted,

*Andrew J Witty*


_____

Andrew J Witty, Defendant pro se



SUPPLEMENTAL NEW JERSEY STATE AUTHORITIES

The clear import of the NJ statutory scheme at **R 4:64-1(a),(b),(1)** suggests that

jurisdiction over certain indispensable individuals or entities must be effected for

a complete disposition supporting a foreclosure and money judgment. The rule

goes the distance to explain who and how this must occur by implication. The

key statutory words defines those to be identified, sued, served and adjudged,

vis., "…{T}he plaintiff shall receive and review a title search of the public

record for the purpose of identifying any lienholder or other persons and entities

with an interest in the property that is subject to foreclosure… ." So serious is

this unique requirement that plaintiffs attorney shall annex to the complaint a

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

‒  20

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

certification of diligent inquiry…" attesting to such.  Moreover, Subsec. (b)

Contents of Mortgage Foreclosure Complaint.

   "In an action in the Superior Court to foreclose a mortgage, the complaint

shall state:

      (1) the name of the obligor, mortgagor, obligee and mortgagee;

      (2) the amount of the debt secured by the mortgage;…"

 There is little doubt that NJ legislators intended to assure ALL with any legal

interest be found, named, served and bound by a legal final judgment.

   See N.J. Rule, 4:64-1, et al. infra. See cite below.

Rule 4:64-1. Foreclosure Complaint, Uncontested Judgment
Other Than In Rem Tax Foreclosures

(a) Title Search; Certifications.
    (1) Prior to filing an action to foreclose a mortgage, a condominium lien, or a tax lien to which R. 4:64-7 does not apply, the plaintiff shall receive and review a title search of the public record for the purpose of identifying any lienholder or **other persons and entities with an interest in the property that is subject to foreclosure** and shall annex to the complaint a certification of compliance with the title search requirements of this rule.
     (2) In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a certification of diligent inquiry:
        (A) that the attorney has communicated with an employee or employees of the plaintiff who (i) personally reviewed the documents being submitted and (ii) confirmed their accuracy; and
        (B) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) with whom attorney communicated pursuant to paragraph (2)(A) of this rule.
    (3) Plaintiff's attorney shall also annex to the complaint a certification, executed by the attorney, attesting that the complaint and all documents annexed thereto comport with the requirements of R. 1:4-8(a).

(b) Contents of Mortgage Foreclosure Complaint. In an action in the Superior Court to foreclose a mortgage, the complaint shall state:

(1) the name of the **obligor, mortgagor, obligee and mortgagee;**
(2) the amount of the debt secured by the mortgage;
(3) the dates of execution of the debt instrument and the mortgage;
(4) the recording date, county recording office, and book and page recording reference of the mortgage securing the debt;
(5) whether the mortgage is a purchase money mortgage;
(6) a description of the pertinent terms or conditions of the debt instrument or mortgage and the facts establishing the default;
(7) the default date;
(8) if applicable, the acceleration of the debt's maturity date;
(9) if applicable, any prepayment penalty;
(10) if the plaintiff is not the original mortgagee or original nominee mortgagee, the names of the original mortgagee and a recital of all assignments in the chain of title;
(11) the names of all parties in interest whose interest is subordinate or affected by the mortgage foreclosure action and, for each party, a description of the nature of the interest, with sufficient particularity to give the court

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

and parties notice of the transaction or occurrence on which the interest is based including recording date of the lien, encumbrance, or instrument creating the interest;

(12) a description of the subject property by street address, block and lot as shown on the municipal tax map and a metes and bounds description stating whether the recorded mortgage instrument includes that description; and

(13) if applicable, whether the plaintiff has complied with the pre-filing notice requirements of the Fair Foreclosure Act or other notices required by law… .

New Jersey foreclosures must be litigated against <u>all interested parties, especially the mortgagee/debtors for a foreclosure to be properly perfected</u>.  An academic article to this point is offered by Mr. Witty at footnote, next. [5] If Ms. Witty is an indispensable party under NJ real property law, she must be named as a real party in interest and served with a summons and complaint and appear. Id. This has not occurred per the courts' own records.

///

///

[5] Authored by real estate expert attorneys at *Sheppard, Mullin, Richter & Hampton LLP*

A foreclosure action in New Jersey is an "in rem" action which by its definition means an action "against a property" as opposed to an action "against an individual". A foreclosure action by itself in New Jersey does not seek compensation from an individual. Rather, a foreclosure action seeks to recover the property alone. A separate suit on the note could be brought on a residential mortgage once the foreclosure is completed. The borrower, who is obligated under the note, could be held liable for any deficiency between the amount collected from the sale of the property at the conclusion of the foreclosure and the amount owed to the lender. Most importantly, the lender can never seek monetary compensation from lienholders joined in the action. Lienholders are joined solely to sever their interest in the property being foreclosed. Additionally, New Jersey foreclosure actions seek to foreclose the property free and clear of all liens, thereby rendering the

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

A judgment obtained against other than all interested mortgagees is void and unenforceable. See Fn 2. [6]

The record of this court will show as well that there has been no filed application for a <u>final</u> judgment sought, entered or a notice of entry of judgment shown in the court's file. Neither can there be since Ms. Witty has not been served with process and neither NJ nor this federal bench has *in personum* jurisdiction over her at the time the summary judgment was entered.  Nor has Ms. Witty been subject to the <u>NJ foreclosure requirements</u> including but not limited to **N.J.S.A. 4:64-lB. Mediation of Eligible Residential Foreclosure Cases**. It appears too from the record that BONYM and its attorneys <u>knew of this deficiency and have taken no clear steps to remedy the deficits,</u> nor protect <u>Ms. Witty's considerable rights to due process</u> as an unserved litigant.

Summary judgments do not equal a final dispositive judgment. Summary judgments are not final under FRCP Rule 56, but are intermediate and generally *not* appealable. FRCP Rule 56. SJ's do not support a order of foreclosure nor sale by execution. N.J.S.A.4:46 and FRCP 56 See **Wells Fargo Bank, NA. v. Garner** 416 N.J. Super. 520 (App. Div. 2010)

---

property as marketable. For this reason, **all lienholders, who have an interest in the property, must be joined.**
So how are defendants determined? The attorney handling the foreclosure action will run a title search for the property. The title search will report all liens that are filed with the county or docketed with the courts. All liens against the property or mortgagor(s)/title holder(s) that are recorded, filed or docketed subsequent to the mortgage must be joined in the foreclosure action.

[6] Rule 4:64-1. Foreclosure Complaint, Uncontested Judgment Other Than In Rem Tax Foreclosures

(a) Title Search; Certifications.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

**MANDATORY STAY AUTHORIZED  12 C.F.R. §1024., ET SEQ.**

(1) Prior to filing an action to foreclose a mortgage, a condominium lien, or a tax lien to which R. 4:64-7 does not apply, the plaintiff shall receive and review a title search of the public record for the purpose of **identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure and shall annex to the complaint a certification of compliance with the title search requirements of this rule.**
(2) In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a certification of diligent inquiry:
(A) that the attorney has communicated with an employee or employees of the plaintiff who (i) personally reviewed the documents being submitted and (ii) confirmed their accuracy; and
(B) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) with whom the attorney communicated pursuant to paragraph (2)(A) of this rule.
(3) Plaintiff's attorney shall also annex to the complaint a certification, executed by the attorney, attesting that the complaint and all documents annexed thereto comport with the requirements of R. 1:4-8(a).
**(b) Contents of Mortgage Foreclosure Complaint. In an action in the Superior Court to foreclose a mortgage, the complaint shall state:**
**(1) the name of the obligor, mortgagor, obligee and mortgagee;**
(2) the amount of the debt secured by the mortgage;
(3) the dates of execution of the debt instrument and the mortgage;
(4) the recording date, county recording office, and book and page recording reference of the mortgage securing the debt;
(5) whether the mortgage is a purchase money mortgage;
(6) a description of the pertinent terms or conditions of the debt instrument or mortgage and the facts establishing the default;
(7) the default date;
(8) if applicable, the acceleration of the debt's maturity date;
(9) if applicable, any prepayment penalty;
(10) if the plaintiff is not the original mortgagee or original nominee mortgagee, the names of the original mortgagee and a recital of all assignments in the chain of title;
(11) the names of all parties in interest whose interest is subordinate or affected by the mortgage foreclosure action and, for each party, a description of the nature of the interest, with sufficient particularity to give the court and parties notice of the transaction or occurrence on which the interest is based including recording date of the lien, encumbrance, or instrument creating the interest;
(12) a description of the subject property by street address, block and lot as shown on the municipal tax map and a metes and bounds description stating whether the recorded mortgage instrument includes that description; and
(13) if applicable, whether the plaintiff has complied with the pre-filing notice requirements of the Fair Foreclosure Act or other notices required by law.
When a married person who has not executed the mortgage is made a party defendant, the plaintiff shall set out the particular facts relied on to bar the married person's rights and interest in the subject property, including whether the married person's rights and interest in the property were acquired before or after the date of the mortgage.

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only.

AFFIDAVIT OF ANDREW J WITTY IN SUPPORT

I, Andrew J Witty, am a defendant in this action and have personal knowledge of the facts which I now present on my behalf under penalty of law as to known information and on information and belief, otherwise. I make this affidavit on my own behalf and for no one else in support of the instant motion.

1.  Within the past 12 months I have had various oral conversations by phone and written correspondence with the Shellpoint Mortgage Service the loan servicer [in connection with my rights under 12 C.F.R. 1024, et seq. which calls for a servicer's diligent consideration and offer of modified terms and conditions of our present loan] with the intention of avoiding foreclosure. I set forth those activities herein below.

2.  On or about August 18, 2022, I called Bank of New York (BONY), mortgage servicer, Shellpoint Mortgage Service [SMS] and, spoke to a Kenny Land about a loss mitigation package, and obtained directions on how to apply.  I was given some information and document identification the servicer would need to start this process.

3.  On or about September 8, 2022, as instructed by Shellpoint Mortgage Service, I mailed an application for a complete foreclosure alternative.  The documents they sought from myself consisted initially of
      a. Two most recent paystubs
      b. Two most recent bank statements
      c. Income, expense, asset information for person(s) listed on mortgage.
      d. Worksheet of finances of money made and expenses. (income/expenses)
      e. Hardship letter of financial problems that prevented me from making mortgage.
      f.  Loss Mitigation form
      g. 4506 form request for transcripts/IRS
      h. Most recent two years/filed tax returns.

I bundled these documents and mailed to Shellpoint Mortgage Servicing after they verbally offered to consider my loan modification request They were mailed to:
Shellpoint Mortgage Servicing at PO Box 10826, Greensville, South Carolina, 10826

4. On or about October 18, 2022, I spoke to a home retention specialist Shirly Serda in the so called "home retention/loan mitigation" for Shellpoint Mortgage Service. She assured me they had received my loan package.  She stated that during the evaluation period I could "rest assured that no foreclosure activity would occur because of the federal law prohibiting 'dual tracking', and no attempt to foreclose would occur during this time."   She went on to add: "Mr. Witty, Shellpoint has changed its consideration protocol due to the Covid-19 pandemic. As a result, we are unsure how long this consideration would take because the courts have stayed in civil cases including foreclosures. This has affected our loan re-tooling timelines. Until the court removes

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only

the stays, and our loan department reissues guidelines for loan modifications and puts them in place, your loan will not be modified, and no foreclosure activity will occur. We are not sure how long it would take to do a loan workout.  Until we receive department directives as to how to proceed and the restrictions on Covid -19 are judicially lifted, we will not be making any final loan modification determinations."

5.  On or about November 18, 2022, I did receive a phone communication from a woman named Marie Edwards, of Shellpoint Mortgage Service stating that ....my loan was in a "cue" and would be updated as part of a new protocol involving all loans being considered for loss mitigation.

6.  I am still waiting for a response in light of the above uncertainty

I declare under oath the truth of the facts asserted.

Date: August 24, 2023

*Anderew J Witty*

_____
Anderew J Witty, Affiant

Motion to Stay a Proceeding by Defendant Andrew J Witty, Only

Intentionally Left Blank