1

**Andrew Witty**
500 White Oak Ridge Road
2
Short Hills, New Jersey 07078
Tel: 917.270.0103
3
E-Mail:Witty@IMAXDIRECT.Com
Defendant and Cross Complainant, in pro se
4

5

6                    UNITED STATES DISTRICT COURT

7                  DISTRICT OF NEW JERSEY – NEWARK

8   THE BANK OF NEW YORK MELLON;
    as Trustee, et al                    Case No.2:15-cv-00500 MCA- MAH
9
                                         OPPOSITION OF DEFENDANT
10                                       ANDREW WITTY TO PLAINTIFF'S
                                         MOTION TO ENTER FINAL
11                                       JUDGMENT OF FORECLOSURE;
                                         MEMORANDUM OF AUTHORITIES;
12                                       AFFIDAVIT OF DEFENDANT
                                         ANDREW WITTY, EXHIBITS IN
13                                       SUPPORT; and REQUEST TO
                                         CONTINUE INSTANT MOTION;*
14

15                                       * REQUEST FOR LEAVE TO DEPOSE
                                         CRITICAL ADVERSE WITNESSES;
16                                       "PROPOSED" ORDER GRANTING
                                         DEPOSITIONS OF NEW AGENTS OF
17                                       PLAINTIFF WHO HAVE *NEWLY
                                         APPEARED AS MATERIAL WITNESSES*
18                                       TO ITS MOTION FOR ENTRY OF
                                         FINAL JUDGMENT; FRCP RULE 30;
19                                       Exhibit: NOTICE OF TAKING
                                         DEPOSITIONS AND REQUEST TO
20                                       PRODUCE DOCUMENTS, ET AL;
                                         SANCTIONS
21
22
23  ANDREW J. WITTY,
                                          Hearing date:_____,2023
24                                        Time:
                                          Room:
25        Defendants                      Original filing date: _____, 2023
26  _____
    And related cross action of
27  WITTY v. BANK OF NEW YORK MELLON, ET AL.
    _____
28

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

− 1

Co-Defendant co-borrower Andrew Witty, litigating in pro se, independently and solely, **OPPOSES plaintiff's Motion for Entry of Final Judgment of Foreclosure**, on grounds stated, i.e.,

       1. The motion is premature and cannot be heard as such a dispositive motion by plaintiff constitutes a violation of "dual tracking" prohibitions under 12 C.F.R. §1024., see ECF #104, Witty; Motion to Stay. If granted and not opposed would make BONYM Motion for final judgment moot. Denial of this Stay motion filed by Witty gives rise for an immediate appeal.

       2. A indispensable party to the lawsuit and co-signee to the note and mortgage, Sheryl Witty has never been served with the summons and complaint; even in absence of a stay her rights cannot be ignored as a co-mortgagor obligor. See authorities cited.

       3. This Motion is premature in light of additional discovery depositions of 4 new adverse witnesses recently revealed who will testify for Plaintiff re this motion.

## II. ANCILLARY DISCOVERY MOTION:
Andrew Witty's Additional Petition for Leave to Depose
3 New Witnesses [FRCP Rule 30, et al.]

Mr. Witty discovered on October 2, 2023, that he had been misled in that the plaintiff's "certifications" included those affidavits of 4 unknown adverse witnesses never disclosed as required under Rule 26. Sanctions are in order for plaintiff's use of unauthorized sources to support a legal requirement. Rule 26, et al. Also out of an abundance of caution and consistent with FRCP Rules 30, et seq., Mr. Witty petitions as may be appropriate, this Honorable Court for *Leave to Take Further Discovery*, namely, by Notice of Taking **Depositions , See Exhibit A,** of 3 *new witnesses* who have newly appeared in Plaintiff

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 2

As to the Discovery- Deposition petition, good cause exists. Due to time constraints this petition for leave is brought contemporaneous with the plaintiff's Opposition herein and leave is sought to allow said depositions. [if not necessary, this petition is moot]

Each new witness has uttered material facts in various writings made a part of ECF filed in and about 10/02/2023 see ECF #110 and elsewhere, pertaining to the prima facia case of foreclosure mandatorily required to be filed by "certification"  using those same  documents as a condition to pleading the complaint and entry of judgment of foreclosure as  required under *N.J. Statutes Ann. 2A:50-53*, et al, entitled the "Fair Foreclosure Act."

Good cause exists for allowing said critical discovery:

➢   Each witness has to date *not been known of* as providers of material evidence on Plaintiff behalf.  Discovery cannot be denied where a party crafts out new discovery with 4 new witnesses.  Failure to allow discovery constitutes a ground for reversal on appeal and prejudices defendants due process rights. Rule 26, et al.

➢   Each witness named has never been deposed, in this proceeding.

➢    Depositions with demand for production of writings and things will show material facts supporting defendant's defenses.

➢    The evidence in question, mostly the NJ statute requiring  "certification" without which no court may enter a final judgment, Id, being newly proffered by Plaintiff, *has not been tested by due process* due to a lack of ability to discover the admissibility and credibility of these new sources of facts.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

➤　These three new witnesses were **not disclosed by Plaintiff under FRCP Rule 26** and still not disclosed in violation of the letter and spirit of the rule. See Rule 26 *Disclosures of Plaintiff* at on or about 12/07/2015, see ECF #9. Witness "hiding" is a sanctionable offense and sanctions are moved for, *infra.*

➤　Witness "hiding" is a ground for sanctions. Rule 26.

➤　**A proposed Notice Taking Depositions is attached SEE Exhibit A.**

➤　Defendant Witty does not intend to waive any rights or defenses herein by designating certain "defense witnesses" who were recently discovered by name within the text of the documents which were part of Plaintiff's Motion Entry Final Judgment with the attached document dump, ECF filed in and about 10/02/2023 see ECF #110.

PENDING DISCOVERY:   Plaintiff seeks leave as may be proper to serve a Notice of Taking Deposition upon certain individuals acting as <u>material witness agents</u>, attorneys or employees of the plaintiff who, it is undisputed, have appeared as witnesses for plaintiff and attorneys and apparently at their behest under New Jersey Court Rule 4:64 challenges, et al.

Sought to be deposed on a reasonable date, time and place certain with Notices forthcoming are: (These witnesses have provided statements and writings in this action)

1.　**Attorney J. Eric Kishbaugh *or* Attorney Kristina Murtha** of KLM Law representing plaintiff, first known to defendant on October 2, 2023.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 4 –

2.   **Tracey Jackson** who claims to be a "document verification specialist" employed by or agent of plaintiff and/loan servicer Shellpoint whose alleged role is to review and execute documents, first known to defendant on October 2, 2023; and

3.   **Lernise Ortiz**, an alleged "legal assistant" with KLM attorneys in Philadelphia, Pennsylvania whose telephone number is 201-549-2383 in NJ who communicated questionable material facts to another witness in writing and by telephone.

4.   None of these witnesses are designated as custodians of Business Records of plaintiff or its agent corporations. It is believed that some or all of the above individuals lack the requisite personal knowledge required of affiants and certifiers under NJ law.  Each of these witnesses have sworn to or assisted and aided in the plaintiff and its attorneys by swearing to the "certification" of facts used to support the operative complaint and the critical "certification" of facts and information used to secure a Judgment.

BAD FAITH TACTICS BY Plaintiff and its Counsel:  None of these four individuals were disclosed to plaintiff under Rule 26, or in prior discovery responses.  This is sanctionable conduct. The listed witnesses have been the core group directly responsible for the delivery of documents allegedly showing compliance with the NJSA rules and all *should have personal knowledge of the matters about which they testify* including knowledge of the truthfulness or falsity of the testimony of PMK, James D'Orlando.  None of the current or prior

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

─ 5

attorneys for Plaintiff have offered in their Rule 26 disclosures due back in 2015-2016 the identities of these new witnesses nor offered an "amendment" revealing said witnesses nor sworn why they *willfully omitted this required information* under Rule 26. Mr. Witty has been under the fair impression that no one, but the deposed PMK was offering "certified" facts in this action. Such willful deception is sanctionable.

Witty now finds himself egregiously prejudiced by the hiding of these individuals, some who are licensed attorneys representing Plaintiff and collecting attorneys fees in doing so and seeking over $111,000 in attorneys fees as part of the "foreclosure damages" sought in the Judgment, ECF #110 filed in and about 10/02/2023, page 5/103. The entire litany of ECF documents are in-issue from ECF #110, filed in and about 10/02/2023, and others. Examination of the witnesses' knowledge and their roles is critical to the admissibility of each of dozens of pages of documents (which include an attorneys' fee bill for over $111,000, "cancelled" notations and blank spaces where signatures should be, blacked out entries, and other suspicious unexplained marks, and the complete absence of any entries showing facts relating to Mr. Witty's loan modification and mandatory Stay under 12 C.F.R. §1024, et seq., and other issues).  Worse for plaintiff there is not clear evidence showing who has possession of the Note or its actual existence or current whereabouts.  Moreover, the mortgage copy shows that it is NOT A CERTIFIED COPY.

Critical to this further discovery petition is the complete inconstancy between the plaintiff's new documents and new witnesses under ECF #110 filed in and about 10/02/2023 and the older and reliable prior deposition of the **person most knowledgeable** James D'Orlando taken under oath on June 27, 2019.  It will be shown that either Mr. D'Orlando's testimony was

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 6 –

willfully false and suborned by Plaintiff and its counsel or one or more of the three witnesses and other lawyers has offered perjured testimony, a crime and **fraud on this court**. Moreover, this bears on the seminal requirement for all litigation, the questionable **standing** of plaintiff to commence the action under NJ statutes. Cited. In short, someone has lied in this proceeding to help the plaintiff's case.

---

### Opposition to Motion for Entry of Final Judgment

Entry of a civil Final Judgment is not a formulaic recital and requires a review of all facts and evidence adduced in a grant of motion for summary judgment [S.J.] if any, and a <u>full consideration of all unlitigated facts and evidence occurring subsequent to the entry of S.J. to the extent material to the decree</u>. Moreover, <u>facts and information</u> not tested by adversary examination during discovery has been unearthed and does not comport with the former past testimony of the Bank of New York Mellon's PMK. BONYM as plaintiff cannot have TWO sets of facts on which to rely. And the court will recall that in the MSJ and the motion of plaintiff to reconsider the MSJ, there were no "later subsequent facts" at issue. Now, the plaintiff has offered a different set of facts which are wholly inconsistent with the first proffered from the mouth of its best corporate "knowledge" witness, the PMK, over 4 years ago. On or about 5/24/2019 see ECF #60 Court Order Deposition, and on or about 11/18/2019 see ECF #69 Opposition to MSJ, and on or about 10/06/2020 see ECF #78 Motion. To Reconsider entry of MSJ, and on about 11/02/2022 see ECF #80 Motion Opposition/Reply to Reconsider entry MSJ

### WITTY's Reservation of Rights to Amend Motion After Completion of Discovery

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 7 –

Defendant Witty, reserves the right to amend and modify all present and future defenses and motions based on the discovery obtained from this point on as it affects the issues.

1. THE PLAINTIFF IS NOT ENTITED TO FINAL JUDGMENT FOR FAILURE TO FOLLOW THE REQUIREMENTS OF THE N.J. S.A. 2A:50-53.

    A. The evidence adduced thus far and the gross inconsistencies between the testimony of the PMK's deposition and later obtained affidavits of the certifying witnesses tells the court that someone is prevaricating and simply making up plaintiff's testimony to fill in the certifications with perjured statements and not true facts.  Moreover the evidence yet to be unearthed will show that BONYM lacks the evidence necessary to prove the existence of:

        1. Standing to sue on the debt.  The promissory note that lacks enforceability and its location cannot be positively determined, as well, a witness has alleged that *they do not know*.

        **2.** Moreover, N.J. law is clear.  "A plaintiff requesting the equitable remedy of foreclosure, to force the sale of a defendant's property to obtain payment of a debt, is required to **establish that it had possession of the note as of the date the complaint was filed** and is *not presumed to have had possession at that time based on its ability to produce the original note at the time of argument and trial*; where that cannot be established, the complaint may be subject to dismissal,

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 8 –

without prejudice to the filing of a new action." **N.J.S.A. 12A:3–301**.

And see **Deutsche Bank v. Mitchell** 433 N.J. Super. 214 (2011);

**NJSA 12A:3-201(a,b), 12A:3-301**;  **Bank of N.Y. v. Raftogianis**

(2010) 418 NJ Super. 323   Here, the history of the possession of the

Note is undeterminable.

3. The untested "certification" of Tracey Jackson does not state the Note's

location under oath. see ECF Doc.#110   pp. 9 - 11. And see "allonge."

below.

    a. The Note's <u>allonge</u> is uncertain and unintelligible on its face see

ECF Doc #110, p.63.  The original assignment of the Mortgage is

conflated showing originator *Heartland Home Finance, Inc*.,

assigning the Note, on a *date unknown* to a *3d party unknown*.  To

add to the confusion, the certifiers so-called, don't know where the

Note is located or in whose possession it rests. Nor is the "note" or

"allonge" in the ECF Doc #110 certified as true and correct by

anyone with personal knowledge of its content. At ECF Doc #110

p. 11, the plaintiff's witness Tracey Jackson tries to split the facts

into an "either/or" by asserting NO personal knowledge of where

the Note resides or to whom it is made payable to. She states, "The

Note is *either* made payable to the Noteholder *or* has been properly

endorsed."   <u>No information about the sources of this statement is</u>

offered. She will have her opportunity to bring the original Note to her deposition and make it a part of the record. **See Exhibit A**

b. To add to the allonge's confusion, there are 3 rubberstamped entries, one to Countrywide Home Loans, Inc., without recourse-Countrywide Bank, N.A. by Laurie Meder, SVP [ECF doc #110 p.63] a second stamped entry to Countrywide Bank, N.A. marked "VOID" and without a designee/assignee stated after "Pay to the Order of" and a third stamped entry "Pay to the order of blank_____ without recourse, Countrywide Home Loans, Inc. by Michele Sjolander, EVP.

c. The far-left stamp is inconsistent with the far-right stamp which was affected by a VOID stamp. If so, since Meder signed both, it is not determinable who Heartland Home Finance, Inc. intended as the true assignee of the Note from the document's face. Neither does the certification of Tracy Jackson satisfy this inquiry.

d. There appears in the document dump see ECF (Doc #110) to be no correcting of this error affecting assignment of the Note and who possesses the Note.  Plaintiff offers in its entire "certification" dump, no evidence directly to correct this uncertainty. Mr. Witty presented this issue to this court in his defensive case in chief and it still stands as in issue. The foreclosure case must then be dismissed. **Well Fargo v. Ford,** *supra*; citing, *Assignee of mortgage was not a person entitled to enforce mortgage by means of being a holder of the mortgage note, where the note was not indorsed by the party*

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  10

*identified on the mortgage. N.J.S.A. 12A:3–301.*  It appears the assignment went from Heartland to Countrywide, but after that, the possession is indeterminable. Countrywide never is mentioned in the *assignment* docs in ECF Doc #110 relating to the mortgage.

e.  Attorney certificants lacking personal knowledge who opine without verifiable sources lack personal knowledge, citing from the text, "Allegations in certification by attorney in fact for purported assignee of mortgage that assignee was the holder and owner of note and mortgage were not based on personal knowledge, and thus, the certification was insufficient to establish that assignee had standing to pursue foreclosure action, precluding summary judgment in favor of assignee in foreclosure action." N.J.S.A. 12A:3–301; R. 1:6–6.

f.  The corporate PMK deposition superior to the testimony of all others under federal law failed to support that the lender knew any material facts about the note as it related to this loan and lawsuit. Filed on or about 11/18/2019 see ECF #69 (#4 Exhibit C). [1] the summary of PMK's depos. Problematic is that this testimony did

---

[1] Parties can subpoena corporate entities to produce a witness for deposition who can testify "about information known or reasonably available to the organization" pursuant to Fed. R. Civ. P. 30(b)(6). This witness is commonly known as the "Person Most Knowledgeable," PMK, or "30(b)(6) deponent." The propounding party must describe with reasonable particularity the topics to be covered in the deposition. **It is the corporate entity's responsibility to produce a witness who can give complete, knowledgeable and binding answers on behalf of the corporation under the Rules.** The implicit requirement for PMKs is they must review what is reasonably available to the corporate to prepare for the deposition. Parties get very upset if a PMK does not know what was listed in the deposition notice, because it is tantamount to failing to appear for deposition.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

NOT establish the factual basis for Plaintiff's case of foreclosure. Id. Now, plaintiff has used formerly unknown adverse witnesses to rehabilitate the former PMK's ignorance of the facts. This amounts to abuse of the process. Mr. Witty took the PMK's deposition and relied on the content in opposition to the MSJ only to have the court disregard the facts the PMK should have known in supporting the elements of plaintiffs case.  Now, a new set of deponents have arisen **who have not been disclosed under Rule 26**.  Because they assert facts and conclusions in their joint "certification" that are improperly presented as *undisclosed witnesses*, the entirely of their proffers should and must be excluded and stricken.  It is clear reversable error to allow a witness to testify when they were never disclosed in the Rule 26 requirements and then act as "pop up witnesses" who offer yet unchallenged assertions of facts never tested by depositions.  In short, Mr. Witty was *gaslighted* in the first deposition and then again by using <u>unauthorized witness statements and documents in the certification process for NJ foreclosures.</u>  In **Ortiz-Lopez v. Sociedad Espanol**…248 F. 3d 29, (2001), the court found that failing to disclose information required under Rule 26 (a) and (e) was not harmless and frustrates the purpose of candid and cost-efficient discovery… . The failure to disclose was not substantially justified and was not harmless.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  12

g.  In light of this smoke and mirrors trickery, the court must either disallow the "certifications" adduced from the 4 "recent contrivance" witnesses by striking their certifications en masse, or accept the PMKs testimony taken under oath and re-visit the consequence of the PMK's lack of personal knowledge about the elements of the foreclosure, and deny both summary and final entry of judgment and set the matter for trial.   In **Radiologix, Inc. v. Radiology & Nuclear Med., LLC,** 2018 U.S. Dist. LEXIS 86964, at *4-5 (D. Kan. May 24, 2018) the court granted defendant's motion to reopen the Rule 30 deposition on unanswered topics. Here the answer of the PMK failed the test of personal knowledge of critical elements and if it stands there is sufficient "disputed" facts to overrule the former SJ and set the matter for trial as an alternative. Alternatively, Mr. Witty must be afforded the right to complete his deposition of material adverse witnesses who bank now seeks to use as a substitute source of certification facts, since the PMK failed woefully to carry the day on those issues. The court must remember that <u>a PMK corporate source of testimony is binding on the corporation at trial and for all other purposes.</u> Rule 30, et seq.

4.  Lack of standing to sue on the Mortgage for foreclosure. The documents provided in ECF Doc #110 lacks proof on their face of the

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 13 –

identity of the creditor at the time of filing of this action. **Wells Fargo Bank N.A. as Trustee v. Ford** (2010) 418 N.J. Super. 592, a plaintiff requesting the equitable remedy of foreclosure, to force the sale of a defendant's property to obtain payment of a debt, is required to establish that it had possession of the note as of the date the complaint was filed and is not presumed to have had possession at that time based on its ability to produce the original note at the time of argument and trial; where that cannot be established, the complaint may be subject to dismissal, without prejudice to the filing of a new action. **N.J.S.A. 12A:3–301**.

a. All documents [ECF Doc #110 (pp. 64 - 83)] constituting the Mortgage are watermarked as "Not Certified" copies. They were not presented under subpoena, contain first and secondary layers of gross hearsay and are not adjudged as "business records" relating to this plaintiff since they were not introduced by a custodian of records nor proffered with the requisite personal knowledge as cross examination will show.

b. The assignment of the Mortgage are uncertain and unintelligible not being authenticated in the first instance by certification and listed in {ECF Doc #110} as "not certified." Presenting such paltry evidence does not meet any standards set forth in the Federal Evidence Code. 901, 902 (4)(A) and must be disregarded as stricken.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

The NJSA requirements pertaining to the <u>Notice of Default or Notice of Intent to Foreclose</u> were raised in the affirmative defenses and not materially countered by the testimony of the PMK at his deposition. James D' Orlando's testimony stated that the plaintiff did not have personal knowledge about many critical items:.

    **A.** Plaintiff has failed to show its entitlement, ergo, lacks standing to sue for foreclosure because BONYM by its own evidence is not the real party in interest not withstanding to sue from review of the records BONYM's counsel attached to the.(See PMK DEPO  **EXHIBIT B**)

                p.26 L 17-19; L21 -L22

                p.27 L 1-3; L7-8

                p.29 L 10 – L23

                p.32 L13 – L 14; L16 -24, p. 3 L 1 - 2

                p.38 L23-25; p,39 L 2 – 4

                p.39 L 23 – 25

                p.40 L 3-5; L 13

                p.50 L 1-2; L 6

                p.82 L 12-14; L17

This suggests that the chain of ownership of the note and mortgage are without admissible evidence proving the right to own the note and enforce the mortgage. New Jersey's federal and state courts have rendered several recent decisions making it clear that a lender seeking to foreclose on a property **must show by admissible evidence** when challenged by a borrower/defendant that it has credible evidence of ownership or is in

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  15

possession of the promissory note at the time the foreclosure complaint is filed.

    a.   Under N.J.S.A. 12A:3-301, the ability to enforce a negotiable instrument depends on one's status and how that status was acquired. The PMK swore he did not know when or how the note or mortgage were obtained by BONYM or exactly who "holds" the note currently.

**B.** The **Note** assignment is not pled with factual details other than bald conclusions nor otherwise proved See PMK DEPO  **EXHIBIT B)**

p.26 L 17- 21

p.27 L 1-3/L7-8

p.29 L 10 – L23

p.30 L 10 – 21

p.32 L 20 – 25/ p33 L 1 - 2

    a.   p. 50 L 1-2; L 6 Where do the Note and Mortgage begin?  The originator/creditor of this loan is alleged to have been held by **Heartland Home Finance, Inc**., an Illinois corporation, per the Complaint.  The complaint lacks any documentary or testimonial proof from their PMK's deposition that shows Heartland ever assigned or legally transferred the Note rights to the current plaintiff BONYM. If they did, where is it?  The recording of hearsay documents with a county recorder proves nothing about the

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  16

underlying intent of Heartland to assign its beneficial rights to the

NOTE another entity under the law. The only reference of any

assignment is the allusion to MERS [a non-entity called a

"nominee"] assigning  the *Mortgage*, but without any specific proof

other than conclusory lawyer vouching.  Moreover, BONYM's

**designated** PMK swore that he did not know if BONYM ever

obtained. The **legal rights to the note or mortgage in his**

**testimony.** See PMK DEPO  ( **EXHIBIT B**)


p. 26 L 17 – 21

p. 29 16 -23

p. 32 20 -24

Nor could the PMK explain if **Heartland Home Finance** had

authorized such an assignment to another entity. See PMK DEPO

( **EXHIBIT B**)

p.29 L 10 – 21 (note: errata line 11: local corrected to legal)

p.76 L 24 – 25

p.77 L 1 – 6

Such an allegation supporting transfers of legal rights must not be

presumptive but must be supported by admissible evidence of

the assignment which is grossly missing [in the Complaint, *and*]

the deposition testimony of the PMK for BONYM.

These are critical undisputed facts supporting MSJ. [Moreover, at

law there is a fundamental requirement that the holder of a

negotiable instrument or contract must authorize such divestment of

a corporate asset, a fact not proven. See PMK DEPO(**EXHIBIT B**)

p. 30 L 10 - 21

p. 32 L 13 – 25/ p. 33 L 1 – 2

    b.  In summary, the sworn deposition of BONYM's PMK confirms

the plaintiffs lack of knowledge of these assignments necessary

to show a transfer of rights in the note and mortgage from

**Heartland Home Finance** to any successor in interest. Without

such a showing in the PMK's deposition, there is no evidence and

no dispute defeating MSJ. No *standing* means <u>no foreclosure</u>

in New Jersey jurisprudence.

    c.  As well, BONYM cannot prove it properly determined the Wittys

were <u>in default</u>, either in the complaint or by reference to the

PMK's deposition. See PMK DEPO  ( **EXHIBIT B**)

    d.  BONYM cannot prove that the Notice of Intent was properly

served upon the Wittys largely by the lack of proof from the

PMK. See "SS." (**EXHIBIT B**)

**C.**  The Mortgage [lien] assignment is not pled with factual details other

than conclusions nor proved by PMK testimony See PMK DEPO

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

( **EXHIBITB**)We see the same <u>pattern of failed evidence</u> relating to the NOTE again in assessing the assignment of the mortgage.

a. The Complaint asserts an authorization to hold as a mere "nominee," the <u>mortgage</u> was vested in MERS [called in the mortgage a "nominee," which bears no legal status] save for being essentially a *document bailee* of the of the Mortgagee/originator.

b. New York courts have weighed in on MERS' role in the real estate context.  A New York court, stating that "nominee" language in a mortgage instrument and MERS' Rules of Membership were <u>insufficient to demonstrate MERS' ability to</u> <u>assign a mortgage as the agent for the holder of the promissory</u> <u>note</u>.

c. In *In re: Agard*, No. 810-77338, 2011WL 499959 (Bankr. E.D.N.Y. Feb. 10, 2011), Judge Robert E. Grossman stated that "MERS did not have authority, as 'nominee' or agent, to assign the Mortgage absent a showing that it was given <u>specific written</u> <u>directions by its principal</u>." In short, courts require even more proof of an agency relationship between MERS and the noteholder for assignments to be valid.

d. A bailee has no legal authority, i.e. power to independently assign mortgages without approval of the holder of the mortgage rights.[6],

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  19

[7] Id.  Where is the proof, one may query?

**D.**   MERS as an independent entity who is merely a "holder of paper" for Heartland Home Finance, the loan originator, was given no powers to act independently under either the Mortgage or Note. Id.  Legally MERS as a "bailee" cannot act on its own, but only upon a directive by the Note and Mortgage holder, Heartland. In the text of the foreclosure Complaint, <u>no such assignment</u> was proven to have been authorized by Heartland. Nor did the PMK, testify to the authority given MERS for the assignment.

**E.**   Paragraph. 10, (BONYM Complaint SEE ECF #110) fails to show the <u>exact date or any witness to</u>, nor states who sent the *Notice of Intent* required by the NJ Rules governing pleadings including NJ Rev Stat § 2A:50-56 (2013). See *Fn 1*, infra. No foreclosure can be based on such uncertain, unsubstantiated pleadings. The PMK did not assist in remedying this defect As an element of the foreclosure case, failure of certification warrants a dismissal. NJSA 2A:50 -53 to 68.  SEE PMK Depo **(EXHIBIT B)**

Depo PMK p. 43 L 17 – 24e

As an element of the foreclosure case, failure of certification warrants a dismissal. NJSA 2A:50 -53 to 68.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 20

5.  The ¶2  arguments of the verified complaint for foreclosure from the
    NJ Superior court are without factual and legal merit and do not
    constitute a "certification," for final judgment purposes.

    a.  The debtors Wittys signed a Note and Mortgage "to" Heartland
        Home finance Inc., an Illinois corp., and not to MERS, Inc, who
        has admitted in multiple legal cases that it has no authority to act,
        hold, or dispose of any item of real property and was hired solely as
        a conduit to avoid recording fees, as a tracker of servicing rights
        and interests in loans.  MERS had no independent face or powers to
        act apart from the nominor's [usually the lender] appointment.

6.  Of the documents comprising ECF Doc #110, the costs and charges
    i.e., damages assessment have not been seen by Witty until October 2,
    2023, have not been subject to defense expert audit or examination nor
    has the deposition of the plaintiff's accountants been taken to assure the
    sums have proper foundation, including but not limited to being based
    on acceptable bookkeeping formulas, are accurate, and ultimately are
    admissible. None of the (See **ECF Doc #110)** with 100 pages of
    documents have been subjected to discovery having only been
    submitted to the court for filing on October 2, 2023.  As the court
    understands ALL statements and documents used to support the
    plaintiff's case in chief are subject to fair examination and discovery.
    This motion cannot be ruled upon at this time without due process

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

– 21

being accorded to defendant. To deny such rights opens the door to
defendant seeking a motion to compel due to inadequate discovery.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION FOR ENTRY OF FINAL JUDGMENT IS PREMATURE
## IF WITTY'S STAY IS PROPERLY GRANTED AS IT MUST BE

The Stay would have rendered the plaintiff's motion for final judgment to be
untenable and moot as a form of "dual tracking" or attempting to litigate to a judgment a
foreclosure matter.

Witty asserts correctly that such a delay by our court has allowed the very "dual
tracking" prohibited by the C.F.R., cited in original Motion.   This is untenable under the law.
Under the CFR's cited well in Witty's Stay Motion, ANY **litigation activity in furtherance of
a foreclosure in violation of 12 C.F.R. §1024 is a violation** of the statute as it constitutes
"dual tracking," so prohibited. [Bold for emphasis, disrespect not intended.] See *Motion-
Authorities*

Witty further advises the court that in its motion for entry of final judgment that
Plaintiff BONYM, in the 100 pages of support being considered for Entry of Final Judgment
[see ECF Doc #110, filed on or about 10/02/2023] there is no reference to nor objection
concerning the gist of 12 C.F.R. 1024 and being so, no legal opposition to the STAY motion
from Plaintiff's side. [bold for emphasis].

The issues on appeal if the stay is not granted, inter alia, will include whether the
trial court failed to follow compelling and clear statutory mandates and condoned prohibited

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant
Andrew Witty, Only.

conduct by Bank of New York Mellon in doing so, prejudicing defendant's rights by endorsing "dual tracking." See CFR ref.

The court's inadvertence to set any motion for hearing and ruling on the matter has given your movant grave concerns that his clear protections in this matter may be ignored. Substantial prejudice would attach to any such outcome including the potential for loss of his home and potential judgment against his financial interest are certainly justifications for his angst.

### TIMELY REFUSAL TO GRANT WITTY STAY IS EQUAL TO A DENIAL

This courts reluctance to hear and rule on a *filed* motion for which there exists NO OPPOSITION amounts to a *de facto* denial, it is argued. Thus, under **Ritzen Group, Inc. v. Jackson Masonry, LLC**, 589 U.S._____No. 18938 (Jan 14, 2020) The Supreme Court unanimously held that an order unreservedly granting or denying a motion for relief from …(a) stay is a final, appealable order.  Witty is within his rights to file for immediate relief from the Court of Appeals for this district.

### ADDITIONAL GROUNDS FOR DENIAL OF FINAL JUDGMENT

I.    A real party in interest Sheryl Witty who bank admits is a co-signee on the note and mortgage admittedly was not served with the summons and complaint and has been denied the entire litany of due process rights she holds.   Plaintiff offers no justification for this grave procedural violation of Ms. Witty's due process rights. Cites in support are filed on and about 8/24/2023, See ECF#104.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

–  23

1

2

_____

**III.**

3

**MEMORANDUM OF LAW and POINTS AND AUTHORITIES**

4

Defendant repeats and incorporates the Authorities from his original stay. See ECF#104

5

References and cites to the **C.F.R.** *supra*, are relevant to this stay of the proceedings as it

6

affects the motion for entry of final judgment.  See footnotes and citations.

7

Summarily, the state law is clear that all interested parties including all signatory borrowers

8

9

named in the foreclosure action must be brought before the court by service of process lest there be no

*in personam* jurisdiction over the debtors/borrowers/obligors.  The evidence is clear only Mr. Witty was

10

11

served with the summons and complaint.  Sheryl Witty, the co-defendant has **never been served or**

12

**appeared and not subject to this court's jurisdiction.** FRCP Rule 4(c) (1); Rule 5, case law cited

13

elsewhere. Nevertheless, Mr. Witty stands as a *real party in interest* with rights to enforce the

14

provisions of the Federal Regulations.

15

**12 C.F.R. 1024.41, et al**.;

16

**6(f) of RESPA (12 U.S.C. 2605(f))**

17

Citing liberally from the Regulation (with emphasis added):

18

19

12 CFR § 1024.41 - Loss mitigation procedures.
(a)  Enforcement and limitations. **A borrower may enforce the provisions of this section**
**pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).**

20

_____

21

22

**(g) Prohibition on foreclosure sale**. **If a borrower submits a complete loss mitigation**
**application after a servicer has made the first notice or filing required by applicable law for any**
**judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a**
**servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale,**
**unless:**

23

24

25

**(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that**
**the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h)**
**of this section is not applicable, the borrower has not requested an appeal within the applicable**
**time period for requesting an appeal, or the borrower's appeal has been denied;**

26

27

**(2) The borrower rejects all loss mitigation options offered by the servicer; or**

28

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

**(3) The borrower fails to perform under an agreement on a loss mitigation option.**

(h) **Appeal process**—(1) **Appeal process required for loan modification denials**. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

(2) Deadlines. A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

(3) Independent evaluation. An appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application…. .

THERE IS NO EVIDENCE THAT ANY COURT HAS PERFECTED *IN PERSONIUM*

JURISDICTION OVER A NAMED INDISPENSIBLE PARTY, *VIS.*, SHERYL WITTY,

WHO SIGNED THE NOTE AND MORTGAGE BUT WHO HAS NOT APPEARED

NOR BEEN SERVED WITH ANY DOCUMENTS REQUIRED BY STATE AND

FEDERAL LAW cited infra.

U.S. Bank N.A. v. Williams 415 N.J. Super. 358 (App. Div. 2010)

The N.J. FFA at NJSA2A:50-53 to -68" establishes the basis for foreclosure of mortgages"

**JP Morgan Chase Bank v. Genid**   DOCKET NO. A-1230-14T2 (App. Div. Dec. 22, 2015)   A motion to vacate a default judgment for **lack of service** is governed by Rule 4:50-1(d), which authorizes a court to relieve a party from a final judgment if "the judgment or order is void." "A default judgment will be considered void when a substantial deviation from service of process rules has occurred, casting reasonable doubt on proper notice." **Jameson**, supra, 363 N.J. Super. at 425. Even where a defendant has actual notice of an action, the default judgment must be set aside if there is a substantial deviation from the service of process rules. **Sobel v. Long Island Entm't Prods., Inc.,** 329 N.J. Super. 285, 292-94 (App. Div. 2000).

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 25

**Pennymac Corp. v. Lewis**   DOCKET NO. A-5266-14T3 (App. Div. Oct. 20, 2016)

"Good cause can be met by showing that service was not properly effectuated. It is well established that "[t]he requirements of the rules with respect to service of process go to the jurisdiction of the court and must be strictly complied with." **Berger v. Paterson Veterans Taxi Serv**., 244 N.J. Super. 200, 204 (App. Div. 1990) (quoting **Driscoll v. Burlington-Bristol Bridge Co**., 8 N.J. 433, 493, cert. denied, 344 U.S. 838, 73 S. Ct. 25, 97 L. Ed. 652 (1952)). "'[S]ubstantial deviation from service of process rules' typically makes a judgment void." **M & D Assocs. v. Mandara**, 366 N.J. Super. 341, 352-53 (App. Div.) (quoting **Jameson v. Great Atl. and Pac. Tea Co**., 363 N.J. Super. 419, 425 (App. Div. 2003)), certif. denied, 180 N.J. 151 (2004) which says,

"In a foreclosure case, service can be obtained by satisfying Rule 4:4-3 or Rule 4:4-5. Rule 4:4-3 applies where "personal service cannot be effected after a reasonable and good faith attempt, which **shall be described with specificity** in the proof of service required by R. 4:4-7". See R. 4:4-3(a). In that case, "service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant or a person authorized by rule of law to accept service for the defendant." Ibid. However, service by mail is effective only "[i]f it appears by affidavit satisfying the requirements of [Rule] 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made." R. 4:4-4(b)(1). Service made by mail without satisfying the affidavit requirement under Rule 4:4-4(b)(1) is ineffective and will not support the entry of default, unless the defendant "answers the complaint or otherwise appears in response thereto." R. 4:4-4(c). Thus, there must be "a reasonable and good faith attempt" to serve defendant personally…before serving defendant by mail under Rule 4:4-3.

In accord with the above is **Tower DBW VI REO, LLC v. Sunshine Homes, LLC** No. A-1604-19 (App. Div. Jul. 1, 2021)

"[d]efective service that results in a 'substantial deviation from service of process rules' typically makes a judgment void." **M & D Assocs. v. Mandara**, 366 N.J.Super. 341, 352-53

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 26

1  (App. Div. 2004) (quoting **Jameson v. Great Atl. & Pac. Tea Co**., 363 N.J.Super. 419, 425

2  (App. Div. 2003)). "If a judgment is void in this fashion, a meritorious defense is not required

3  to vacate under the rule." Id. at 353 (citing **Jameson**, 363 N.J.Super. at 425).

4           Plaintiff was not diligent in effectuating service of process upon the proper party—

5  SHMI. The lack of service of the foreclosure complaint upon SHMI made the judgment void

6  under Rule 4:50-1(d).

7                              _____

8           At day's end, one conclusion can be drawn from examining the old and new filings;

9  Sheryl Witty was not served with the summons and complaint in any fashion. Neither the NJ

10  nor this federal court has jurisdiction over her [in personum]. This deficiency renders any

11  judgment finality "void," under case law. Because she is too a cosigner on the Note and

12  Mortgage, failure of service renders any final judgment "void." Id.

13

14                         _____

15                                  CONCLUSION

16           The plain reading of the published CFR makes a stay of the proceedings

17  mandatory and not optional where a foreclosure avoidance with the loan servicer as is

18  occurring here is pending, supra.  <u>This honorable court must rule supporting this Congressional</u>

19  <u>mandate by taking no further action favoring foreclosure until this LOSS MITIGATION issue</u>

20  <u>is concluded to maintain the legislative consistency intended</u>.  Appropriately, the issuance of a

21  stay or abatement of the proceedings is the only proper remedy under C.F.R. cited.

22           Secondly, as cited supra, BONYM has violated the fundamental NJ and federal civil

23  rule that all defendants with a vested right and interest in the real property must be served and

24  appear. Academically, this is "civil procedure 101." To date, the record of this and NJ Superior

25

26

27

28

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

Court shows that Sheryl Witty, the co-signee/co-obligor/co-mortgagor under the note and deed of trust has NOT been personally served with the summons and complaint, nor appeared, been defaulted or defended this lawsuit as an indispensable real party in interest and co-owners of the subject property of this action.

In short, neither the N.J. state or this federal court has *in personam* jurisdiction over this named, but non-appearing party.  The record being clear, the court cannot issue a final judgment in an *in rem* foreclosure case without all real parties in interest before it.  A void judgment would be appealable. [supra].

Finally, the final judgment hearing is premature without the completion of discovery by defendant who was blindsided by the production of adverse witnesses not disclosed in Rule 26 disclosures and the use of a PMK by plaintiff who lacked scienter about the prima facia elements of N.J. foreclosures which is evident from his own deposition.

Let the motion be stayed or denied. Let the defendant's motion be granted or the case dismissed. Let plaintiff and its counsel be sanctioned in the sum of $25,000 for multiple discovery abuses under Rule 26, and Rule 30, and for suborning perjury by its witnesses in this proceeding and referral to the United States Department of Justice for criminal referral for said crimes by plaintiff, and plaintiff's witnesses James D'Orlando…and 3 witnesses, for subornation of perjury and perjury and uttering false claims about which they have no personal background or personal knowledge.                   Date 10/16/2023

Respectfully Submitted,

*Andrew J Witty*

_____

Andrew Witty, Defendant

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

SUPPLEMENTAL NEW JERSEY STATE AUTHORITIES

The clear import of the NJ statutory scheme at **R 4:64-1(a),(b),(1)** suggests that jurisdiction over certain indispensable individuals or entities must be effected for a complete disposition supporting a foreclosure and money judgment. The rule goes the distance to explain who and how this must occur. The key statutory words defines those to be identified, sued, served and adjudged, vis., "…{T}he plaintiff shall receive and review a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure… ." So serious is this unique requirement that "plaintiff's attorney shall annex to the complaint a certification of diligent inquiry…" attesting to such.  Moreover, Subsec. (b) Contents of Mortgage Foreclosure Complaint.

The certification penned and signed under oath can only be to fortify the evidence that counsel is assuring the court that they did their job personally reviewing the records.  Problematic is that the constitutionally of the statute is in question because the reading calls out "certifying" clearly hearsay thus inadmissible materials in support of the certification. This problem is found in this case at bar.  The certification falls short of assuring that the facts certified are admissible or otherwise trustworthy as such would be subject to due process constraints including the right to cross examine the person proffering said documents. Moreover, the deposition of the PMK essentially gaslights

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 29

[deceived] the defendant into believing one set of facts exists when the certification of a new witnesses with BONYM almost verbatim contradicts the PMK's testimony, when both should be identical to one another.  The attorneys involved here are not without strong suspicion of misconduct and subornation of fraud as well. Mr. Witty has NEVER seen the ECF# 110 document dump until after 10/2/2023. The PMK stated tersely he had no knowledge of the facts about most all of the documents included in ECG #110, when asked.  Witty should have the right to depose after the STAY is lifted, TRACEY JACKSON and determine why Jackson's testimony is diametrically opposed to that of the attorney designated PMK. Moreover, the Jackson certification is directed to the Superior Court of New Jersey under a state case No. F-024738-14, *not this case*. The document was designed for a state court filing, and likely authored in total by KML Law Group, P.C., under the egis of Ms. Kristina Murtha, Managing attorney Bar no. omitted. See Doc #110 p.8.  The blank line locations are apparently "stamped" for convenience by counsel. Jackson avers a limited authority to act: Id.

Within the context of discovery, which is being reserved for a separate motion attacking the sufficiency of the summary judgment,  a further review of the previously taken deposition of BONYM's "person most knowledgeable" compared to the "certified" information proffered in its motion for Final Judgment, will show that the certification of documents is at best, **fraudulent due to the PMK's admission repeatedly that he lacked any level of**

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

**knowledge about the facts critical to establishing the prima facia case of foreclosure and most seriously,  to which their counsel now swears is true**. We ask the court to reserve on this proposed Motion in light of the rather short time given to both sides to move, oppose and reply to these motions for 1. A Stay and 2. For entry of final judgment.  This credibility issue was raised previously but glossed over by the court, however its serious nature goes to the core merits of this entire foreclosure case and examination with the new documents makes this determination a matter of critical mass for Mr. Witty's defense.

---

Added N.J. cites bearing on Sheryl Witty's absence from the proceedings:

"In an action in the Superior Court to foreclose a mortgage, the complaint shall state:

(1) the name of the obligor, mortgagor, obligee and mortgagee;

(2) the amount of the debt secured by the mortgage;…"

There is little doubt that NJ legislators intended to assure ALL with any legal interest be found, named, served and bound by a legal final judgment.

See **N.J. Rule, 4:64-1,** et al. infra. See cite below.

Rule 4:64-1. Foreclosure Complaint, Uncontested Judgment
Other Than In Rem Tax Foreclosures

(a) Title Search; Certifications.
    (1) Prior to filing an action to foreclose a mortgage, a condominium lien, or a tax lien to which R. 4:64-7 does not apply, the plaintiff shall receive and review a title search of the public record for the purpose of identifying any lienholder or **other persons and entities with an interest in the property that is subject to foreclosure** and shall annex to the complaint a certification of compliance with the title search requirements of this rule.
    (2) In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a certification of diligent inquiry:
        (A) that the attorney has communicated with an employee or employees of the plaintiff who (i) personally reviewed the documents being submitted and (ii) confirmed their accuracy; and

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

    (B) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) with whom the attorney communicated pursuant to paragraph (2)(A) of this rule.
    (3) Plaintiff's attorney shall also annex to the complaint a certification, executed by the attorney, attesting that the complaint and all documents annexed thereto comport with the requirements of R. 1:4-8(a).

(b) Contents of Mortgage Foreclosure Complaint. In an action in the Superior Court to foreclose a mortgage, the complaint shall state:

(1) the name of the **obligor, mortgagor, obligee and mortgagee;**
(2) the amount of the debt secured by the mortgage;
(3) the dates of execution of the debt instrument and the mortgage;
(4) the recording date, county recording office, and book and page recording reference of the mortgage securing the debt;
(5) whether the mortgage is a purchase money mortgage;
(6) a description of the pertinent terms or conditions of the debt instrument or mortgage and the facts establishing the default;
(7) the default date;
(8) if applicable, the acceleration of the debt's maturity date;
(9) if applicable, any prepayment penalty;
(10) if the plaintiff is not the original mortgagee or original nominee mortgagee, the names of the original mortgagee and a recital of all assignments in the chain of title;
(11) the names of all parties in interest whose interest is subordinate or affected by the mortgage foreclosure action and, for each party, a description of the nature of the interest, with sufficient particularity to give the court and parties notice of the transaction or occurrence on which the interest is based including recording date of the lien, encumbrance, or instrument creating the interest;
(12) a description of the subject property by street address, block and lot as shown on the municipal tax map and a metes and bounds description stating whether the recorded mortgage instrument includes that description; and
(13) if applicable, whether the plaintiff has complied with the pre-filing notice requirements of the Fair Foreclosure Act or other notices required by law… .

----

    New Jersey foreclosures must be litigated against <u>all interested parties, especially the mortgagee/debtors for a foreclosure to be properly perfected</u>.  An academic article to this point is offered by Mr. Witty at footnote, next. [2] If Ms. Witty is an indispensable party under NJ real

----

[2] Authored by real estate expert attorneys at *Sheppard, Mullin, Richter & Hampton LLP*
    A foreclosure action in New Jersey is an "in rem" action which by its definition means an action "against a property" as opposed to an action "against an individual". A foreclosure action by itself in New Jersey does

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

not seek compensation from an individual. Rather, a foreclosure action seeks
to recover the property alone. A separate suit on the note could be brought
on a residential mortgage once the foreclosure is completed. The borrower,
who is obligated under the note, could be held liable for any deficiency
between the amount collected from the sale of the property at the conclusion
of the foreclosure and the amount owed to the lender. Most importantly, the
lender can never seek monetary compensation from lienholders joined in the
action. Lienholders are joined solely to sever their interest in the property
being foreclosed. Additionally, New Jersey foreclosure actions seek to
foreclose the property free and clear of all liens, thereby rendering the
property as marketable. For this reason, **all lienholders, who have an
interest in the property, must be joined.**

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

property law, she must be named as a real party in interest and served with a summons and complaint and appear. Id. This has not occurred per the courts' own records.

///

///

A judgment obtained against other than all interested mortgagees is void and unenforceable. See Fn 2. [3]

The record of this court will show as well, that there has been no filed application for a final judgment sought, entered or a notice of entry of judgment shown in the court's file. Neither can there be since Ms. Witty has not been served with process and neither NJ nor this federal bench has *in personum* jurisdiction over her at the time the summary judgment was entered.  Nor has Ms. Witty been subject to the NJ foreclosure requirements including but not limited to **N.J.S.A. 4:64-lB. Mediation of Eligible Residential Foreclosure Cases**. It appears too from the record that BONYM and its attorneys knew of this deficiency and have taken no clear steps to remedy the deficits, nor protect Ms. Witty's considerable rights to due process as an unserved litigant.

---

[3] New Jersey Rule 4:64-1. Foreclosure Complaint, Uncontested Judgment Other Than In Rem Tax Foreclosures

(a)Title Search; **Certifications.**
       (1) Prior to filing an action to foreclose a mortgage, a condominium lien, or a tax lien to which R. 4:64-7 does not apply, the plaintiff shall receive and review a title search of the public record for the purpose of **identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure and shall annex to the complaint a certification of compliance with the title search requirements of this rule.**

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 34

1

2

3

4

5

6

      (2) In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a **certification of diligent inquiry:**

7

      (**A) that the attorney has communicated with an employee or employees of the plaintiff who (i) personally reviewed the documents being submitted and (ii) confirmed their accuracy; and**

8

      (**B) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) with whom the attorney communicated pursuant to paragraph (2)(A) of this rule.**

9

(3) Plaintiff's attorney shall also annex to the complaint a certification, executed by the attorney, attesting that the complaint and all documents annexed thereto comport with the requirements of R. 1:4-8(a).

10

11

12

**(b) Contents of Mortgage Foreclosure Complaint. In an action in the Superior Court to foreclose a mortgage, the complaint shall state:**

13

**(1) the name of the obligor, mortgagor, obligee and mortgagee;**
(2) the amount of the debt secured by the mortgage;
(3) the dates of execution of the debt instrument and the mortgage;

14

(4) the recording date, county recording office, and book and page recording reference of the mortgage securing the debt;

15

(5) whether the mortgage is a purchase money mortgage;

16

(6) a description of the pertinent terms or conditions of the debt instrument or mortgage and the facts establishing the default;

17

(7) the default date;
(8) if applicable, the acceleration of the debt's maturity date;

18

(9) if applicable, any prepayment penalty;

19

(10) if the plaintiff is not the original mortgagee or original nominee mortgagee, the names of the original mortgagee and a recital of all assignments in the chain of title;

20

(11) the names of all parties in interest whose interest is subordinate or affected by the mortgage foreclosure action and, for each party, a

21

description of the nature of the interest, with sufficient particularity to give the court and parties notice of the transaction or occurrence on which

22

the interest is based including recording date of the lien, encumbrance, or instrument creating the interest;

23

(12) a description of the subject property by street address, block and lot as shown on the municipal tax map and a metes and bounds description stating

24

whether the recorded mortgage instrument includes that description; and

25

(13) if applicable, whether the plaintiff has complied with the pre-filing notice requirements of the Fair Foreclosure Act or other notices required by law.

26

When a married person who has not executed the mortgage is made a party defendant, the plaintiff shall set out the particular facts relied on to bar

27

the married person's rights and interest in the subject property, including whether the married person's rights and interest in the property were acquired before or after the date of the mortgage.

28

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

Summary judgments do not equal a final dispositive judgment. Summary judgments are not final under FRCP Rule 54(b) and 28 U.S.C. §1291 [Ct. of Appeals has jurisdiction over all 'final' decisions of district courts of the U.S) **Wells Fargo Bank, NA. v. Garner** 416 N.J. Super. 520 (App. Div. 2010)

Dated: 10/16/2023

Respectfully submitted,

*Andrew J Witty*

_____

Andrew Witty, in pro se

_____

## AFFIDAVIT OF ANDREW WITTY

I, am a defendant in this action and add my statement under oath as though testifying in court.

1. Since the filing of my Stay Motion on 8/24/2023 ECF #104, I have not received any response from loan servicer Shellpoint Mortgage Service to my foreclosure avoidance application as called for under 12 C.F.R.1024, et seq.

2. At all times since delivering the application to Shellpoint Mortgage Service, I have been ready to read and respond to any response from the servicer Shellpoint Mortgage Service.

3. At no time since the commencement of this foreclosure action was filed have, I learned personally or from any third party or entity that Sheryl

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 36

Witty has been served with a summons and complaint. Sheryl Witty is a cosigner on the note and mortgage in this action. I understand that no equitable foreclosure action can be maintained without all interested parties to the contracts being served and before the court.

4. In reading all documents served on me by plaintiff since my Stay motion was filed, I found no evidence in Opposition to my motion to Stay exists in any filings of the plaintiff, nor do they deny that Sheryl Witty has never been served with the summons and complaint. I believe this amounts to active <u>admissions of material facts</u> sufficient to grant my motion to Stay and to establish the fact of no service on Ms. Witty.

5. I am seeking and continue to seek relief under the provisions of the referenced C.F.R. protecting my interest. I understand that "dual tracking" is disallowed under the regulations. It is prohibited under the regulations for plaintiff to dual track me by seeking application for final judgment in this court with a loss mitigation application pending and yet undecided.

6. I assert that at no time did plaintiff or its attorneys serve upon me a new or amended Rule 26 declaration. They designated their PMK corporate witness as James D 'Orlando who was to testify to a list of issues revealed to him from my Notice of Taking Deposition served on counsel. I was led to believe he was their 'certification' witness who had "most knowledge" about the loan and loan file documents. He knew his role in this deposition and was either unprepared to testify or lied under oath as a form of gaslighting and deceiving me about the facts. I am appalled that the court let plaintiff get away with this destruction of my case in chief and defense of this foreclosure case.

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

7.  I assert that the court by allowing plaintiff to continue to litigate after my Stay motion was filed that, in the face of the CFR requirements, there should have been a stay on this case. As a result, this inactivity by the court has prejudiced my defenses and filings. This has further encouraged the plaintiff to willfully file a motion to enter final judgment knowing of the effect of the CFR. Such I allege violates ethics requirement of neutrality in all proceedings.

8.  I declare under penalty of law that the foregoing is true and correct as to facts asserted but not matters of opinion, argument or on information and belief.

Dated:10/16/2023

*Andrew J Witty*

_____

Andrew Witty, affiant

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant Andrew Witty, Only.

– 38

1
2
3
4
5

# Intentionally Left Blank

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION to Motion for Entry of Final Judgment and Supplemental Motions and for Sanctions by Defendant

Andrew Witty, Only.

# EXHIBIT A

V110-1-17*10/13/23 witty

1  Andrew J. Witty
2  500 White Oak Ridge Road
   Short Hills, New Jersey 07078
3  Tel: 917.270.0103
   E-mail:  Witty@imaxdirect.com
4
   Defendant *in pro se*                         .
5

6

7

8              **UNITED STATES DISTRICT COURT**

9                  **DISTRICT OF NEW JERSEY**

10

11  ANDREW WITTY, an individual,        Case No.: 2:15-cv-00500-MCA-MAH and
                                        No.:15-08486-MCA-MAH
12           Plaintiff
                                        DEFENDANT ANDREW WITTY'S
13                                      **NOTICES OF TAKING DEPOSITIONS** OF
    vs.                                 WITNESSES RECENTLY DISCLOSED TO
14                                      TESTIFY ABOUT SPECIFIED MATTERS
                                        AND **DEMAND FOR PRODUCTION OF**
15  BANK OF NEW YORK MELLON, as         **DOCUMENTS, CERTIFIED DOCUMENTS**
16  Trustee, et al.,                    **AND THINGS** AT DEPOSITION, Rule
                                        30(a)(1),(b)(6) of the Federal Rules of Civil
17           Defendants                 Procedure;

18  _____ IDENTITY OF DEPONENTS
19  and Consolidated with:              Served by personal delivery/fax on
    _____ _____, 2023
20  **THE BANK OF NEW YORK FKA**
    **THE BANK OF NEW YORK MELLON**
21  **AS TRUSTEE FOR THE**              Depositions set for November 1, 2, 3
    **CERTIFICATEHOLDERS OF CWALT**     or_____2023.
22  **INC., ALTERNATIVE LOAN TRUST**    At 11 a.m. or _____ a.m. EST
23  **2007-7T2, MORTGAGE PASS-THROUGH**  {Veritext} Court Reporter
    **CERTIFICATES, SERIES 2007-7T2,**  Address:290 West Mt. Pleasant Ave,
24                                      Suite 3200, Livingston, NJ 07039
25           **Plaintiff,**

26  **vs.**

27  **ANDREW J. WITTY, et al.,**

28           **Defendant**

                              1

**PLEASE TAKE NOTICE** that pursuant to Rule 30(a)(1),(b)(6) of the Federal Rules of Civil Procedure, Defendant Andrew Witty will take the **deposition** at the place and time described unless changed in writing by agreement of the parties,   of the following newly discovered defense witnesses, *Tracey Jackson, Kristina G. Murtha, Esq.,* and *Lernise Ortiz* under oath taken by a certified stenographic reporter [CSR].  The deposition shall be used as allowed by the Fed. R. Ev., FRCP and Local Rules.

**Document production** for this proceeding is demanded, as set forth below. *

LOCATION, DATES AND TIMES:  These depositions will take place at {Veritext} Court Reporters located at address: 290 West Mt. Pleasant Ave, Suite 3200, Livingston, NJ 07039 commencing at 11:00 a.m., on November 1, 2023, and November 2, 2023 and November 3, 2023, and continuing under the FRCP as permitted to a conclusion from day to day, unless the parties mutually agree by written stipulation signed by all parties to be bound to hold the deposition on a different date or time and/or at a different location.

**Identities of Deponents** to be deposed are:

1. **Tracey Jackson**, undisclosed witness first discovered by Defendant on of about October 2,  2023 in her alleged capacity as a "loan document specialist" so-called, who has at plaintiff's behest, has already offered fact and law testimony not subjected to cross-examination,  solely benefiting plaintiff,  by apparently preparing and signing documents used under oath allegedly at the direction of KLM lawyers representing Plaintiff Bank acting as a trust, as an *agent of  plaintiff and its loan servicer for NewRez, LLC d/b/a  Shellpoint Mortgage Servicing*, in exact capacities and roles yet to be discovered.  Her deposition should take 7-8 hours including questioning about documents she has alleged personal knowledge of.

2

2. This deponent was named in documents filed in this action as a "certifying agent" for plaintiff and named at KLM's direction to comply with the NJ Fair Foreclosure act rules 2A:50-56 requiring certain documents and papers proffered at the time of discovery and used in all phases of the proceedings be "certified" by persons with "personal knowledge" of each fact and issue offered into, including  Motions including for Final Judgments.

3. Jackson was apparently solicited to read and sign documents about which she allegedly has personal knowledge. Plaintiff can obtain no final judgment or award without the use of "**certified**" documents listed in the statute. Jackson was selected out of a need to comply with the statute.  Defendant contends, inter alia, that as an undisclosed witness for Plaintiff she should have been disclosed in Rule 26 affidavits due back in about 2015-2016 and was not wasting the court and defendants resources by naming a PMK in lieu of a percipient witness.

4. Plaintiff's non-disclosure of <u>all intended witnesses</u> for trial, was not followed under Rule 26.  Plaintiff opted to name a single "Person Most Knowledgeable" to testify about the loan and loan file contents and procedures unique to the mortgagor plaintiff and did so, See ECF #9 filed on or about 12/7/2015 Disclosure of Plaintiff under Rule 26.

   Plaintiff designated a PMK whose testimony lacked personal knowledge and percipience concerning the subject matter of the action so much so he denied the plaintiff had any knowledge of essential facts supporting the prima facia case of foreclosure.  He cannot now change his testimony when summarized shows ignorance of fundamental facts associated with real estate loans and foreclosure actions. See ECF #66 filed on or about 10/21/2019 Opposition. Motion for Summary

Judgment, PMK: James D' Orlando. Pp 7 -19. Parties are legally bound by the

testimony of their PMKs. See_____cite ___.

5.   At no time did Plaintiff disclose any of the three new witnesses who are fact and law

witnesses.  This tactic is sanctionable and obviously prejudices defendant.

6.   Thus, until Plaintiff discovered some 4 years later that plaintiff or its lawyers

intended use these fact and law witnesses to establish material facts NOT obtained

from the PMK did defendant know of their existence.  Plaintiff has violated the letter

and spirit of Rule 26 and should be sanctioned for this willful bad faith tactic in the

reasonable sum of $25,000 jointly and severally with its counsel who fully knew of

the court's own file status and suborned this behavior without excuse, reason, right

or justification recognized at law as to each new deponent.

7.    The second new witness to be deposed is:

Kristina G. Murtha, Esq.
KML Law Group, PC
701 Market Street, Suite 5000
Philadelphia, PA 19106
609-250-0700 (NJ)
215-627-1322 (PA)
Email: KMurtha@kmllawgroup.com

8.  The second deponent is the "managing attorney" for KML Law Group, P.C. who

was responsible for finding and enlisting the witnesses' cooperation and review and

preparation of proffered documents used to "certify" the accuracy of the information

within. As supervisory counsel the "buck stops here" and she knew the fact of the

Disclosure Rule 26 violations and authorized the use of documents and certifying

procedures on plaintiff's behalf as well as the firm's repeated violations of court

orders issued by Judge Hammer and our District Court Judge Arleo. Judge Hammer

throughout the litigation roundly excoriated plaintiffs' firms for their malpractice-

4

like handling of the matter. It was the threat of sanctions that resulted in the plaintiff

even applying for this motion. See Court Order ECF #106 filed on or about

9/19/2023.  Her deposition should take one day to complete including document

production demanded from plaintiff by defendant Witty.

9.   The third new deponent is identified as:

Lernise Ortiz (Legal Assistant)
Email: lortiz@KMLLawGroup.com
Direct Phone: 201-549-2383

10.   Ms. Ortiz is a legal assistant at KML Law Group with knowledge of the

practices and protocols attendant to the handling of litigation. She

authored the instructional letter dated Sept. 11, 2023, and all content is

known to her.   The letter contains information that is alleged to be untrue

bearing on the credibility of the plaintiff's knowledge of this transaction

and whether the plaintiff has *standing* to foreclose on the mortgage or sue

on the Note. Ortiz is held out as the "contact" for information re the

content of the 9/11/2023 letter and all documents that make up the overall

"certification." She instructed an unknown person in her 9/11/2023 letter

in a way suggesting she and not the addressee was responsible for the

content of the certified documents on which this court could rely. If false

information was used to prepare any entry, a likely crime of fraud has

occurred. Her deposition is critical and should not take over 7 hours.


MEANS AND METHODS OF DEPOSITIONS

This deposition may be taken by stenographic, and video means before an officer

authorized to administer oaths and operate video recording equipment and will continue from day

5

to day until completed. The deposition will be taken for the purposes of discovery, for use at trial in this matter, and for any other purpose permitted under the Federal Rules of Civil Procedure.

## *DESIGNATION OF SUBJECT MATTER

The designated officer[s] or agent[s] of the plaintiff corporation shall be asked and expected to answer fully under oath all questions about the following **subjects and categories of information:**

1.      The meaning of the content of each of the documents which were given to Mr. Witty at and after the Rule 26 Disclosure hearing and responsive thereto.

2.      The practices and protocols of this plaintiff BONYM concerning the entry of information relating to any act, or communications affecting the borrower's loan.

3.      All information concerning the past 10 year history of state or federally based  monetary fines or sanctions  imposed by the judiciary, the Department of Justice or any agency including but not limited to, incarceration orders or monetary civil penalties imposed upon this defendant by any United States District Court or State Court for violation of laws with the date of the conviction or imposition of the fine or penalty whether criminal or otherwise by the corporate entity or any officer, director or managing agent.  You will be asked about the fine ordered to be paid by you in the sum of approximately <u>714 million dollars</u> in 2015 arising from misconduct in the banking industry. [1] Unsuspecting customers were defrauded by Mellon's conduct. Id.

---

[1]  From the **U.S. Attorney's Office – Manhattan, New York, New York**.  March 11, 2015

Bank of New York Mellon Corp has agreed to pay  $714 million to settle allegations that the bank overcharged pension funds and other clients for foreign exchange services, U.S. federal and state authorities said on Thursday.

Federal and New York state authorities, among others, had accused BNY Mellon of telling clients it would provide the best possible execution for their currency transactions, but instead giving them prices at or near the worst interbank rates during the trading day. Meantime, authorities said, BNY Mellon obtained better spot prices for itself and profited on the spread.

As part of the agreements settling lawsuits filed by New York and the United States, **the bank accepted responsibility for the conduct, authorities said. The world's No. 1 custody bank also agreed to terminate David Nichols, its head of products management, and other executives**, Manhattan U.S. Attorney Preet Bharara said. The other executives were not identified. "The bank repeatedly deceived its customers and is paying a heavy penalty

4.      The specific loan development process for **this loan** involving the parties, including the formation of the loan, all debt assessed, all liens, novations or modifications associated with the loan during its duration.

4a.      All facts showing in this matter, YOU complied with the Code of Federal Regulations 12 C.F.R. §1024, et seq., requirements from initial contact though final disposition concerning stay's on litigation regarding "dual tracking."

4b.      Describe your contractual relationship with the loan servicer Shellpoint Mortgage Service.

5.      All information concerning any modification or novation of the promissory note between the parties.

6.      The physical location of all loan file writings kept by defendant including the identity and location of the custodian of records of such writings. "Writings" shall include: any promissory note, addendum, alonges, attachments, assignments, mortgage, substitution of trustees, notices to or from plaintiffs to this defendant, notice of defaults, notices of trustee's sale, calculation of credits and debits including dates of entry and any other related writing, authorization by this defendant to act on behalf of the original lender or any subsequent assignee to the present date, letters, correspondence to or from the parties, documents evidencing loan modifications, novation agreements and the like, names of all personnel at defendant Bank of New York Mellon or any predecessor in interest or assignee or other person or entity with a financial interest in this loan having material  personal knowledge of the plaintiff Andrew Witty's loan file from its <u>formation to the present date</u> who handled any phase of the loan whether verbally or by reducing discussion to a writing.

7.      The exact identity of each document or writing on which you read or relied upon in

---

for it," Bharara said in a statement.

testifying in this deposition supporting any fact or opinion you express.

8.      The identity of all persons who spoke to you or anyone acting on your behalf concerning this deposition and the content of those discussions concerning any aspect of the loan.

9.      Any written corporate resolutions or powers of attorney created for or by this defendant relating to this loan or this litigation.

10.      The identity of all writings and documents read in preparation for this deposition.

11.      The true legal identities of all signatories of any document[s] contained within the loan file, Rule 26 Disclosures, Responses to production of documents propounded by this defendant.

12.      The net worth [assets and liabilities] of the defendant Bank of New York Mellon., defendant in this action as of the date of this deposition.

13.      The exact physical process explaining all assignments of the original note from the original loan originator/beneficiary to any and all subsequent note holders including methods of assignment, dates of each, acceptance of the assignment by the successor in interest.

14.      All information about any and all assignments to and deposit of the Note in question into a securitized trust, the pooling and servicing agreement terms and conditions and meaning thereof, the original Trust agreement establishing the Trust and its operations declaration of trust or similar writing showing the trust is a viable, legal holder of Notes for its beneficiaries.

15.      All information showing that the subject Note was owned by the defendant Bank of New York Mellon on the date the lawsuit of foreclosure was filed in state court, now removed.

16.      All information and identity of the exact person who reviewed the loan file and after doing so made a determination that the Note was factually in default including the calculations relied upon in making that determination.

17.      All information in the loan file on which this defendant will rely in making any dispositive motions or that you plan to use at trial in the foreclosure case under Rule 26 of the FRCP.

8

18.    All information in the loan file including all names and employee identification information including job descriptions, showing a modification or a novation of the original note did not occur between Andrew Witty or you or your loan servicer or agent in charge of the loan transaction.

19. Your legal relationship with James D'Orlando and whether he was approved by you to be designated as your "person most knowledgeable," for purposes of this litigation and who representing plaintiff approved of his role as a Person Most Knowledgeable.

19a.  On examination of James D'Orlando's deposition, did you find any answer given by the deponent to be incorrect and if so, what should his response have been to be correct?

20. What factors give YOU standing to sue under the Note, who is in current possession of the Note in question.

21. In whose possession was the subject Note on the date this lawsuit was filed?

22. In whose possession was the subject mortgage on the date the lawsuit was filed?

23.  Explain the meaning of the "allonge" affixed to the Note and produce a certified copy along with its entries.

24. Evidence which shows who prepared each document used in this litigation relating to the complaint, all motions, Rule 26 compliance, all written discovery to and from all parties, all letters, drafts, memoranda, certifications, documents produced by any witness or attorney excluding work product.

25. Evidence showing who, when and how any document used as an exhibit in this litigation was prepared.

_____

## REQUEST FOR PRODUCTION AT DEPOSITION

The following items are hereby requested to be produced in original form only from this deponent or their person most knowledgeable or agent or counsel of record. Failing to produce

each item at the commencement of the deposition may be cause for the imposition of sanctions.

DOCUMENTARY AND WRITTEN THINGS TO BE PRODUCED

Regarding the real property and the Note and Mortgage which are the subject of this action, please produce the following:

l. Please produce all documents and records in your loan file for this transaction and loan.

2. Please produce all documents and records in the plaintiff's loan servicing file.

3. Please produce all original assignments of the mortgage.

4. Please produce all original endorsements and transfers of the mortgage note including allonges.

5. Please produce the original mortgage note.

6. Please produce all documents and records and transaction books maintained by the document custodian for this mortgage loan.

7. Please produce all records for any custodial accounts used for any purpose in connection with this mortgage loan including the date, amount and source of all deposits in such accounts and the date, amount and purpose for all disbursements including the name and address of any party who received any such disbursement.

8. Please produce the custodial agreement and all amendments thereto.

9. Please produce the Pooling and Servicing Agreement and all addendums and amendments thereto.

10. Please produce a list of officers, agents or managers of your company or any predecessor in interest who was authorized to execute any of the documents identified herein including but not limited to, the note, mortgage, assignments, substitutions of trustees, notices of default, any act triggering a default and the like. .

10a. Produce all documents showing the person and entity authorizing any assignments of the Note or Mortgage or any interest therein related to this loan transaction.

10b. Produce all documents including Notices of Default showing the identity of any person given authority to declare the loan Note to be in default and authorizing the issuance of such signatures on the above referenced documents.

11. Please produce copies of the last three (3) Fitch rating reports for the current Servicer.

12. Please produce the FNFA, FHLMC or HUD Single Family Servicing Guidelines or any other servicing guidelines used for the servicing of this mortgage loan.

13. Please produce the information diskette or other conveyance writings however stored on electronic media, as delivered to the Trust in connection with the acquisition of this mortgage loan.

14. Produce all MERS documents related to this loan, including the MIN number and MIN History Report and Audit Trail.

15. Produce all documents and records related to all non-recoverable advances made by any servicer of this mortgage loan.

16. Produce any and all documents bearing any Officers' Certificate.

17. Produce all documents and records related to all servicer advances made by any servicer of this mortgage loan.

18. Produce the list of all servicing officers provided at any time to the Trust.

19. Produce all documents and records related to the index, the margin, the annual rate cap, the lifetime rate cap, and any and all adjustments related to any of these benchmarks.

20. Please provide a complete and itemized statement of the loan transactional history from the date of the origination of the loan to the date of this discovery request including, but not limited to, all receipts by way of payment or tender otherwise, and all charges to the loan in whatever form. This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose

11

of each such debit and credit, and the name and address of the payee of any type of

disbursement related to this account.

21. The XLS bankruptcy worksheet for this mortgage loan.

22. Please provide a statement of the past due scheduled principal payments, together with

interest thereon at the contract rate, past due taxes, hazard insurance, mortgage insurance

premiums, late fees or charges, homeowners association dues, and any other assessments.

23. Please provide an itemized statement of all of the filing fees, service fees, postage,

advertising and publication expenses and reasonable attorney fees actually incurred with

respect to any pre-petition foreclosure proceeding. Such attorney time records should be

itemized by the date and nature of the service and the time devoted to each service. You

should also produce the front and back of each and every canceled check in payment of each

invoice for the charges described herein along with a copy of each respective bill, statement

and invoice.

24. Please provide a complete and accurate statement of the actual amount, duly itemized,

necessary to reinstate this loan.

25. Please attach copies of all checks and/or wire transfers to any party issued from funds

received from any party in connection with this mortgage loan.

26. Please attach a list of all digital and numerical codes associated with the loan

transaction history along with all definitions associated with each such code so as to make

the history legible and understandable. Also, state the name of the software system you use,

the version, and the name and address of the software provider.

27. Please produce all material evidence you know of which indicates the total amount owed by

the debtor including itemization the amount and basis for the following fees, if applicable:

a. Any homeowners' association dues or assessments.

b. All court filing fees.

c. All service of process fees.

d. All postage, UPS or Federal Express fees.

e. All advertising of any public sale.

f. All publication expenses.

g. All courier fees.

h. All fax fees.

i. All property inspection fees.

j. All property preservation fees.

k. All broker price opinion fees.

l. All legal fees.

m. All corporate advance fees.

n. All recoverable corporate advance fees.

o. All non-recoverable corporate advance fees.

p. All document release fees.

q. All fees paid to any provider of any type of outsource services,

whether or not the service is related to performing or non-performing mortgage loans.

x. All fees paid for the transfer of any documents, data, information, images, or

information to any national, regional or local attorneys.

y. All bills, statements or invoices received from any attorneys, including all detailed time and

expense records.

z. All ratings of any attorneys involved in this case along with the rating schedule, the

benchmarks used for such ratings, and the method of computation of the attorney performance

rating scale.

13

28. Please provide an itemized statement of all attorneys' fees incurred at any time since the origination of the loan and describe the date and nature of all such services, attaching copies of all bills and invoices, and all canceled checks in payment thereof. Also, please attach all emails or electronic messages using New-Trak or any similar communication system regarding such fees and charges.

29. Pease provide copies of all written property inspection report and property preservation reports related to the mortgage property, including all digital photographs or other images of the real property.

30. Please provide copies of all bills and invoices for property inspections and copies of the front and back of all checks in payment thereof or all confirmed wire transfers in payments thereof.

31. Please provide a complete list of all related or affiliated providers of any and all third party servicers that may or could have provided services in connection with this loan.

32. Please provide copies of all written Broker Price Opinions or fair market value opinions related to the mortgaged property, including any type of photographs.

33. Please provide copies of all bills and invoices from or related to such Broker Price Opinions or valuations and attach copies of the front and back of all checks in payment thereof or all confirmed wire transfers.

34. Please provide a complete and itemized statement of all advances or charges against this loan for any purpose that are not reflected on the loan history transaction statement provided in the answer to number 20 above. This request includes but is not limited to "restricted corporate advances."

35. Please provide a complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of these interrogatories and request to produce,

including, but not limited to, any receipts or disbursements with respect to real estate

property taxes, fire or hazard insurance, forced placed insurance, single vendor protection

insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance

products, along with copies of the front and back of all checks issued in payment of such

escrow obligations. Also, please provide a statement fully disclosing the relationship of any

insurance provider to the servicer or any entity related to the servicer.

36. Produce all documents which confirm whether or not any "suspense accounts" have been

used in connection with this mortgage.

37. If the answer to number 36 is in the affirmative, then produce all documents which state   how

the interest earned on such suspense accounts is used or applied.

38. With respect to the suspense accounts identified, please produce all documents which state the

date and source of each deposit of money into any type of suspense account and the date and

purpose for the removal of any funds from suspense including the name of any related account to

which such money was applied or the name and address of any party to whom such funds were

paid.

39. Please provide a complete and itemized statement from the date of the loan to the date

of this request for production, any and all debits and credits to any suspense accounts or any

other suspense account entries related in any way to this loan.

40. Please provide a complete and itemized statement from the date of the loan to the date

of this request for production, any property inspection fees, property preservation fees,

broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or

expenses related in any way to this loan.

41. Identify the provision under the Mortgage and/or Note that authorizes charging each

and every such fee against the subject loan. Also, please state whether or not.

15

any such corporate advances become part of the underlying mortgage debt subject to interest.

due under the mortgage instrument(s). Also, state whether or not you have added or charged

interest to the mortgage loan on such corporate advances and if so the amount thereof.

42. Please attach copies of all communications related to the subject loan produced by any

third-party outsource provider such as T.D. Service Company, Fidelity National Default

Services, First American National Default Operations, Promise Solutions, MR Default

Services, Lender Processing Services, or National Title Clearing or any other similar

company providing third party default services.

43. Please attach any reports indicating any charges for any "add on products" sold to the

debtors in connection with this loan from the date of the loan to the date of this letter and

specifically identify all such products.

44. Please provide a complete and itemized statement of any and all alleged arrears

including each month in which the default occurred, and the amount of each alleged monthly

default.

45. Please provide a complete and itemized statement of any late charges applied to this

loan from the date of this loan to the date of this request for production.

46. Please identify the name, title and current address of each and every person who has

had access to any of the electronic records related to this mortgage loan and specifically state

the name, title and address of the primary individual responsible for servicing this loan after

the alleged default.

47. Please provide a complete and itemized statement from the date of the loan to the date

of these requests to produce of any fees incurred or charged to modify, extend, or amend the loan

or to defer any payment due under the terms of the loan.

48. State the full name, title and address of any person who was responsible for any loss

16

mitigation initiatives related to this mortgage loan.

49. Please attach a complete copy of the Investor Loss Mitigation and Loan Modification Guidelines related to this mortgage loan.

50. State the full name, title and address of any person involved with the management of the escrow account for this mortgage loan.

51. Please provide a full and complete copy of all collection notes, reports, memos, statements, entries, data records, computer records, daily records, calendar reports, default reports, collection contacts, collection reports or other documents generated in connection with the servicing of this mortgage loan.

52. Please provide any documentation that would indicate proof that the Defendant owns the subject Mortgage and Note or any other documentation that would represent the Defendant has standing in this case.

53. List by documents each entity who now has or has ever had any interest in the underlying Mortgage NOTE, including but not limited to, any broker, table-funder, co-defendant lender, originator, lender, warehouse lender, trustee, investor, trustee under a pooling and servicing agreement, master servicer, primary servicer, sub-servicer, default servicer, specialty servicer, or any other similar party with all documents which Identify that party's name, address and telephone number, describe that party's interest in the transaction, state the date it obtained that interest, the date it relinquished that interest, and the identity of the entity to which it relinquished that interest, and state the nature and amount of all consideration it received or disbursed in connection with obtaining or relinquishing that interest.

54. Provide documents showing the full name, address and phone number of the current holder of the NOTE and MORTGAGE in this case including the name, address and phone number of any trustee or other fiduciary.

17

55. Provide documents showing the name, address and phone number of any master servicers, servicers, subservicers, contingency servicers, back-up servicers or special servicers for the underlying mortgage debt.

56. Please produce copies of all civil actions, adversary proceedings, or administrative proceedings that have been filed against you and/or the Servicer of this loan at any time in the past 60 months for any alleged misconduct related to mortgage servicing.

57. Please identify and produce each and every witness that you intend to call at the trial of this matter and summarize the anticipated testimony of each such witness.

58. Please attach copies of each and every document that you intend to use or to seek to introduce into evidence at the trial of this matter.

59. Produce all insurance policies of any other Credit Default Swaps, Credit Default obligations or other similar instruments obtained to insure against any loss regarding the instant mortgage note or pool of securitized mortgage notes to which this mortgage note belongs.

60. Produce all applications for coverage under any insurance policies obtained to insure against any loss regarding the instant Note.

61. Produce all writings showing any claims made against insurance policies insuring against any loss regarding the instant Note.

62. Produce all writings from any insurer in payment of any claim for any loss regarding the instant Note including payments to any claimant, beneficiary, trustee, agent or other third-party recipient.

Dated: 10/16/2023

*Andrew J Witty*

_____
                Andrew Witty, Plaintiff and
                Defendant in the Consolidated matters

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19

EXHIBIT B

Page 1

1              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
2
                Civil Action No.15-8486-ES-MAH and
3               Civil Action No. 15-00500-ES-MAH
4
     ANDREW J. WITTY, an individual,   )
5                                      )
                         Plaintiff,    )
6                                      )
        -vs-                           ) DEPOSITION OF:
7                                      )
     BANK OF NEW YORK MELLON, as       ) JAMES D'ORLANDO
8    Trustee, et al.,                  )
                                       )
9                        Defendant.    )
                                       )
10                                     )
        _____

11
12
13              TRANSCRIPT of the stenographic notes of
14    the proceedings in the above-entitled matter, as
15    taken by and before PATRICIA SMITH, a Certified
16    Shorthand Reporter and Notary Public of the State of
17    New Jersey, held at the office of Veritext, 290 W.
18    Mt. Pleasant Avenue, Livingston, New Jersey, on
19    Thursday, June 27, 2019, commencing at 10:50 a.m.
20
21
22
23
24
25

Page 2

1  A P P E A R A N C E S :
2
3   ANDREW WITTY
    I-Max Direct
4   51 JFK Parkway
    1st Floor West
5   Short Hills, New Jersey 07078
    witty@imaxdirect.com
6   pro se plaintiff
7
    BLANK ROME, LLP
8   BY: THOMAS M. BRODOWSKI, ESQ.
    One Logan Square
9   130 North 18th Street
    Philadelphia, Pennsylvania 19103
10  tbrodowski@blankrome.com
    Attorneys for Defendant
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1         I N D E X
2  JAMES D'ORLANDO:                    PAGE
3
     Examination By Mr. Witty          4
4
5
6
7         E X H I B I T S
8  No.       Description              Page
9  Exhibit-A, Notice of Deposition      9
10 Exhibit-B, Revising Date of Notice   9
     of Deposition
11
     Exhibit-C, Promissory Note         26
12
     Exhibit D, Mortgage                27
13
     Exhibit-E, Allonge                 48
14
     Exhibit-F, First Collateral Bailee Letter  53
15
     Exhibit-G, Complaint Witty versus Bank   62
16     of New York Mellon
17 Exhibit-H, RCS Notice of Default and      78
     Intention to Foreclosure
18
19
20
21
22
23
24
25

Page 4

1  JAMES D'ORLANDO, having been duly sworn, testifies as
2  follows:
3  DIRECT EXAMINATION BY MR. WITTY:
4      Q.    Good morning.  My name is Andrew Witty.
5  I am the plaintiff in this action, I'm not an
6  attorney.  I will be questioning you about the role
7  as person most qualified to testify for defendant
8  bank, New York Mellon as trustee.  I will read
9  some -- an admission.  It maybe a duplicate of what
10 counsel has said to you, but you need to know the
11 general ground rules.  So just after each one
12 knowledge with an "okay" or "understood."
13        So number one, listen carefully to each
14 question.  Allow me to finish the question before
15 responding so the court reporter can get everything
16 said on record.
17     A.    Okay.
18     Q.    If you don't understand a question,
19 request the question be asked again or for definition
20 of words that was not understood.
21     A.    Okay.
22     Q.    You're required to give your best
23 testimony today under penalty of perjury, meaning you
24 must respond fully, not lie or refuse to answer a
25 proper question.

Page 5

1      A.    Okay.
2      Q.    Do you understand your duty to be
3  truthful and honest?
4      A.    Yes.
5      Q.    If you are caught lying willfully, you
6  could be prosecuted for perjury.
7      A.    Yes.
8      Q.    If you need a restroom break, simply say
9  so, we can take a break for lunch as well, if needed.
10     A.    Okay.
11     Q.    We are on the record during your
12 testimony, so be aware that all you say will be
13 recorded.
14     A.    Okay.
15     Q.    If I ask for information that you don't
16 know, just say so.  If you know, you must fully
17 answer and withhold nothing.
18     A.    Okay.
19     Q.    I may ask for information according to
20 your best estimate.  You can respond with an estimate
21 if you have so knowledge of the facts; for example,
22 if you know the length of your car from hood to
23 taillights, you can estimate.  But if asked to tell
24 me the length of my car, having not seen it you could
25 not.

2 (Pages 2 - 5)

Page 6

1    Does that make sense?
2    A.   Yes.
3    Q.   So if you have some information about a
4 matter, you may give an estimate.
5    A.   Okay.
6    Q.   Are you under the influence of any
7 medication or affects of alcohol or have a condition
8 that would prevent you from giving your best
9 testimony today?
10   A.   No.
11   Q.   If I ask a question and you respond, I'm
12 entitled to believe that you understood the question
13 and that the answer you provide is truthful and
14 complete.
15   A.   Okay.
16   Q.   If you want to modify a prior answer,
17 just identify on record and amend your testimony now.
18 Doing it after the deposition may impeach your
19 credibility at trial or hearing.
20   A.   Okay.
21   Q.   At the end of this deposition, we should
22 go over the code on handling your reading and review
23 of the deposition booklet.  There will be no attorney
24 stipulations or usual stipulations altering this
25 process, unless specifically stated on the record by

Page 7

1 me or opposing -- and opposing counsel.
2    A.   Yes.
3    Q.   Please speak slowly and articulate your
4 words clearly so the reporter can hear and understand
5 you at all times.
6    A.   Okay.
7    Q.   All right.  We can begin.  I will be
8 questioning you about your role as the person
9 testifying on behalf of defendant Bank of New York
10 Mellon trustee.  At times, I may refer to the
11 defendant bank as Bank or Bank of New York Mellon
12 just to use less words and be a little quicker.  So
13 bank, Bank of New York Mellon and Bank of New York
14 Mellon as trustee is the same entity during this
15 proceeding.
16   A.   Okay.
17   Q.   Have you been deposed previously?
18   A.   Yes, I have.
19   Q.   Can you recall approximately how many
20 cases?
21   A.   I would say maybe 35 over the last six
22 years.
23   Q.   And what were the nature of these cases?
24   A.   They are all foreclosure.
25   Q.   Okay.  Did you testify as an agent for

Page 8

1 Bank of New York Mellon as trustee?
2    A.   I have before in the past, yes.
3    Q.   In what capacity did you testify?
4    A.   Again, for foreclosure proceedings.
5    Q.   Okay.  You were an employee of whom at
6 the time?
7    A.   Bayview Loan Servicing.
8    Q.   Your job title at the time?
9    A.   Litigation manager.
10   Q.   Thank you.  Do you understand that you
11 were designated by Bank of New York Mellon and their
12 attorney to testify here today on behalf of Bank of
13 New York Mellon as trustee?
14       MR. BRODOWSKI:  Objection, form.
15       MR. WITTY:  What about the form?
16       MR. BRODOWSKI:  I don't need to disclose
17 that.  New Jersey doesn't recognize speaking
18 objections.
19       MR. WITTY:  Okay.
20   Q.   Is it your understanding that you were
21 designated by Bank of New York Mellon to testify here
22 today?
23   A.   My understanding that I was designated
24 by my company, Bayview Loan Servicing, on behalf of
25 the plaintiff to testify today.

Page 9

1    Q.   So you understand you are here today on
2 behalf of Bank of New York Mellon as trustee to
3 testify?
4    A.   Yes.
5    Q.   You understand you are here to testify
6 about certain subject matters stated in the
7 deposition notice?
8    A.   Yes.
9    Q.   Bank of New York --
10       MR. WITTY:  This is a cover letter from
11 Blank Rome revising the date of the notice of
12 deposition.
13       (Exhibit-A, Notice of Deposition;
14 Exhibit-B, Revising Date of Notice of Deposition,
15 marked for identification.)
16   Q.   I will show you two documents.  I
17 referenced you testifying on behalf of Bank of New
18 York as trustee about certain subject matters stated
19 in the deposition notice.  I'm showing you now the
20 deposition notice.
21       Are you familiar with that document?
22   A.   Yes, I have seen this document before.
23   Q.   And have you reviewed it previously --
24   A.   Yes, I have.
25   Q.   -- to attending this deposition today?

3 (Pages 6 - 9)

Page 10

1     A.    Yes, I have.
2     Q.    And I'm also showing you a letter from
3  Thomas Brodowski of Blank Rome, which is Exhibit-B,
4  revising the date until June 27th, which is today.
5     A.    Yes.
6     Q.    Is that correct?
7     A.    Yes.
8     Q.    So you were testifying -- are you
9  testifying and acting as an agent for defendant bank
10 here today?
11          MR. BRODOWSKI:  Objection to form.
12    Q.    Are you an agent of Bank of New York
13 Mellon?
14          MR. BRODOWSKI:  Object to the form.  You
15 can answer if you know the answer.
16    A.    We are the servicer for Bank of New York
17 Mellon.
18    Q.    Do you understand your obligation to
19 answer truthfully on behalf of Bank of New York
20 Mellon?
21    A.    Yes, I do.
22    Q.    And have you prepared for today's
23 deposition?
24    A.    Yes, I have.
25    Q.    Tell me why you possess information that

Page 11

1  qualifies you as the correct person to testify in
2  this deposition today?
3          MR. BRODOWSKI:  Objection to form.
4     A.    That's my role at Bayview.  I attend
5  depositions, trials, meetings, on behalf of the
6  company for different loans that we service.
7     Q.    Okay.  So you have the experience in
8  loan servicing and you are the right person today to
9  testify for Bank of New York Mellon?
10    A.    Yes.
11    Q.    So, please, look over the notice of
12 deposition, which is Exhibit-A, as you mentioned you
13 reviewed it.
14          And you're familiar with the document,
15 is that correct?
16    A.    Yes.
17    Q.    Okay.  You can give that back to the
18 reporter unless you want to keep the copy, I can give
19 you another one.
20    A.    I will just stack them up, right here.
21    Q.    Have you read Bank's interrogatory
22 responses?
23    A.    Yes, I have reviewed them.
24    Q.    And you were asked to do this by whom?
25    A.    Our counsel advised us that it would be

Page 12

1  a good place for me to get caught up on the case.
2     Q.    Who is your counsel?
3          MR. BRODOWSKI:  Thomas Brodowski.
4     A.    Sorry.
5     Q.    That's okay.
6          Can you, please, state your full name,
7  current address where I can reach you and your
8  current phone number?  You can give a business phone
9  number.
10    A.    James D'Orlando and my current address
11 is 6 Central Drive, Yardley, Pennsylvania 19067.
12 215-317-0605.
13    Q.    Please identify high school you
14 attended.
15    A.    I attended Notre Dame High School.
16    Q.    When did you graduate from that high
17 school?
18    A.    1999.
19    Q.    And as to any college or university you
20 attended, what dates did you attend college or
21 university?
22    A.    I attended West Chester University from
23 1999 to 2003.
24    Q.    And what was your declared major of
25 study at that college?

Page 13

1     A.    Business marketing.
2     Q.    Did you graduate?
3     A.    Yes.
4     Q.    What date did you graduate?
5     A.    I don't know offhand.
6     Q.    What was the highest degree you received
7  at that college?
8     A.    Bachelor's degree.
9     Q.    What was the highest degrees you
10 received from any institution?
11    A.    Bachelor's degree.
12    Q.    Do you have any vocational degrees?
13    A.    I do have a kitchen and bath design
14 degree as well.
15    Q.    Where?
16    A.    Lehigh.
17    Q.    What date?
18    A.    I would say that's probably somewhere
19 2008, 2009.
20    Q.    Please identify any special training
21 school you attended, other than already stated?
22    A.    None.
23    Q.    Did you attend any trade school?
24    A.    No.
25    Q.    Please identify any course seminar or

4 (Pages 10 - 13)

Page 14

1 professional programs you attended?
2     MR. BRODOWSKI: Object to the form.
3     Q.  Have you -- well, you can answer that if
4 you like.
5     A.  None outside of the normal training that
6 I receive from the company.
7     Q.  And what was entailed in that training?
8     Is your company Bayview you're referring
9 to?
10    A.  Yes.
11    Q.  How long was that training for?
12    A.  We have training modules every year that
13 we have to take.
14    Q.  Do you have the exact or approximate
15 dates of those courses?
16    A.  No.
17    Q.  Or the content of those courses?
18    A.  Wide variety of training, from anything
19 from laws and regulations to interior procedures.
20    Q.  Do you recall, can you identify the
21 person that conducted those courses?
22    A.  Not offhand.  Some of them are online
23 via courses, some are in person training courses.
24    Q.  Did they offer certificate of completion
25 or some acknowledgement?

Page 15

1     A.  Yes.
2     Q.  Can you give me a little more on that?
3     A.  You take the course online and then you
4 have to take an assessment at the end that you have
5 to pass.
6     Q.  They gave you an e-mail confirmation
7 that you passed?
8     A.  Yeah, it's all done through the
9 computer.
10    Q.  Okay.  Thank you.
11    And please tell us what training you
12 have that makes you qualified to testify about this
13 lawsuit?
14    MR. BRODOWSKI: Objection to form.
15    A.  I have been with the company 16 years,
16 so I'm very familiar with the business records and
17 how the company operates.
18    Q.  Okay.  What is the legal name of your
19 current employer?
20    A.  Bayview Loan Servicing, LLC.
21    Q.  What is your job title with your current
22 employer?
23    A.  Litigation manager.
24    Q.  Please describe your job duties.
25    A.  I work as a liaison between local

Page 16

1 counsel and Bayview, so I attended depositions,
2 mediations, trials, kind of work with -- help local
3 counsel obtain the documentation they need to proceed
4 with litigation.
5     Q.  So you're experienced in litigation for
6 these types of matters?
7     A.  Yes.
8     Q.  And please identify your immediate
9 supervisor and their contact information if you have
10 it today?
11    A.  My immediate supervisor is Jennifer
12 Craft.  I don't know any of her contact information
13 offhand.
14    Q.  Are you a corporate officer director or
15 managing agent of Bank of New York Mellon?
16    MR. BRODOWSKI: Object to the form.
17    A.  No, I'm not.
18    Q.  Please identify each employer you have
19 worked for during the past five years.
20    A.  I have been with Bayview since college.
21    Q.  Have you ever been disciplined,
22 terminated, reprimanded, from any employer, including
23 your current employer, or Bank of New York Mellon in
24 the past?
25    MR. BRODOWSKI: Object to the form.

Page 17

1     A.  No, I have not.
2     Q.  Who asked you to verify any discovery
3 that Andrew Witty, myself, sent to Bank of New York
4 Mellon to answer?
5     MR. BRODOWSKI: Object to the form.
6     A.  I'm sorry, who asked me?
7     Q.  Are you familiar with the discovery that
8 I sent to Bank of New York Mellon?  I can be specific
9 if you need me to.
10    A.  Yes.
11    Q.  Did anybody ask you to verify and sign
12 off on that discovery?
13    A.  No.
14    Q.  Did you sign off on any interrogatory?
15    A.  No.
16    Q.  Did you sign off on any request for
17 admission?
18    A.  No.
19    Q.  Did you sign off on any production of
20 documents?
21    A.  No.
22    Q.  Do you understand the content of the
23 interrogatories that I sent to Bank of New York
24 Mellon?
25    MR. BRODOWSKI: Object to the form.

5 (Pages 14 - 17)

Page 18

1    A.    Yes, I have reviewed them.
2    Q.    And the request for admissions, did you
3 review and understand those as well?
4    A.    Yes.
5    Q.    And the production of documents,
6 documents produced, did you understand and review
7 that as well?
8    A.    Yes.
9    Q.    Is there anything you would like to
10 change or retract any of the discovery answers from
11 Bayview and Bank of New York Mellon?
12         MR. BRODOWSKI:  Objection to form.
13   A.    That's not my role, so I wouldn't --
14 that wouldn't be something I would be involved in.
15   Q.    Do you know whose role it is?
16   A.    That's the foreclosure coordinator.
17   Q.    Do you know a name?
18   A.    No, I do not.
19   Q.    You said the title was foreclosure
20 coordinator?
21   A.    Correct.
22   Q.    Is that the official title?
23   A.    Yes.
24   Q.    Have you met the foreclosure coordinator
25 on this case?

Page 19

1    A.    I don't know offhand who it was.
2    Q.    So you never had conversation with this
3 foreclosure coordinator?
4    A.    Correct.
5    Q.    Please state Bank of New York Mellon's
6 legal address, including state of incorporation?
7    A.    I do not know.
8    Q.    Have you ever been convicted of a
9 felony?
10   A.    No, I have not.
11   Q.    Have you ever been convicted of any
12 crime involving moral turpitude?
13   A.    No, I have not.
14   Q.    Are you aware of any criminal
15 convictions or civil penalties against Bank of New
16 York Mellon?
17         MR. BRODOWSKI:  Object to the form.
18   A.    No, not offhand.
19   Q.    And remind me, I know you answered this,
20 your title is?
21   A.    Litigation manager.
22   Q.    So in the context of you being a
23 litigation manager for Bayview, do you understand
24 every step in the banking loan business that is
25 required to fund a loan?

Page 20

1         MR. BRODOWSKI:  Objection. Form. And
2 objection, it's beyond the scope of permitted
3 deposition testimony.
4         MR. WITTY:  He can answer.
5         MR. BRODOWSKI:  I'm instructing him not
6 to answer.
7         MR. WITTY:  Okay.  I can rephrase.
8    Q.    Do you understand the banking loan
9 business and what is required to fund a loan?
10        MR. BRODOWSKI:  Objection.  Again, it's
11 beyond the scope of permitted deposition testimony.
12 I will refer you to Judge Hammer's order for the list
13 of permissible topics if you would like to review it,
14 go ahead and do that.  But I'm not going to allow my
15 client here to answer any questions regarding topics
16 that are not permitted.
17        MR. WITTY:  I can pull out the order if
18 you would like.
19        MR. BRODOWSKI:  I would suggest you do
20 that.
21        MR. WITTY:  You're objecting because --
22 it's speaking to knowledge of the case at hand and
23 expertise.
24        MR. BRODOWSKI:  This isn't a dialogue
25 with me, but if you refer to the order it

Page 21

1 specifically details the topics you are allowed to
2 ask about and that's not one of them.
3         MR. WITTY:  Okay.  I can go back and
4 refer to the order.  I have no problem.  I'm going to
5 go back to that.  We will come back to that.
6    Q.    From what source of the funds originate
7 that were used to fund the loan in question in this
8 lawsuit?
9         MR. BRODOWSKI:  Objection.  Same.
10        MR. WITTY:  You're referring to the
11 court order?
12        MR. BRODOWSKI:  Yes.
13        MR. WITTY:  You can answer, if you know.
14   A.    I do not know.
15   Q.    Under this loan, which person is
16 required to account for the funds received and credit
17 under the note terms?
18        MR. BRODOWSKI:  Object to the form.  You
19 can answer, if you know.
20   A.    I don't know.
21   Q.    How is default on the note determined by
22 Bank of New York Mellon?
23        MR. BRODOWSKI:  Object to the form.
24   Q.    You can answer.  Do you know?
25   A.    I don't know how Bank of New York Mellon

6 (Pages 18 - 21)

Page 22

1 would, no.
2     Q.   Can you identify all documents and
3 writings that you read in preparation for this
4 deposition today?
5     A.   Let's see, I've -- again, the documents
6 that you have asked earlier, about the deposition,
7 notice of intent.  I reviewed the mortgage, payment
8 history, as well as our imaging system, which holds
9 all the documents that we have about this file.  I
10 reviewed the customer service notes from Bayview, as
11 well as, I guess, all the litigation, foreclosure
12 documents associated with this loan.
13    Q.   Is there anything else?
14    A.   I think that's pretty much all.
15    Q.   Were you employed on the date of the
16 notice of default on the subject property?
17    A.   Yes, I was.
18    Q.   And you were employed on the date it was
19 recorded as well?
20        MR. BRODOWSKI:  Object to the form.
21    A.   What was recorded?
22    Q.   I will rephrase.
23        Were you employed on the date of the
24 notice of default, on the subject property that was
25 allegedly recorded?

Page 23

1        MR. BRODOWSKI:  Object to the form.
2     A.   I was employed at Bayview, yes.
3     Q.   Okay.  So Bayview was your employer.
4        What was your position at that time?
5     A.   Let's see, I think I was either
6 transitioning from our commercial division to our
7 loan servicing division.  I don't know exactly which
8 division I was at that point, but it was either the
9 commercial division or Bayview's loan servicing
10 division as an asset manager.
11    Q.   Okay.  Do you remember your immediate
12 supervisor at the time?
13    A.   That would have been Stacy Buchall
14 (sic).
15    Q.   Were you acting as an agent for any
16 person at the time the notice of default was
17 recorded?
18        MR. BRODOWSKI:  Objection to form.  And
19 objection, assuming facts that are not in evidence.
20    Q.   When the notice of default was recorded
21 with the subject property owned by Mr. Witty,
22 defendant in this case, please state if you were
23 acting as an agent of any person at the time of this
24 --
25        MR. BRODOWSKI:  Object to the form.

Page 24

1 Objection asked and answered.  Objection assuming
2 facts not in evidence.
3        MR. WITTY:  Well, I don't think it was
4 asked and answered because I never asked about the
5 notice of default yet.  But you're objecting to form
6 on top of that?
7        MR. BRODOWSKI:  Yes.
8     Q.   Does the question make sense to you?
9 You don't have to answer, but does it make sense to
10 you?
11    A.   You're asking me, was I employed at
12 Bayview when the notice of default was recorded?
13    Q.   Yes, that's the first part.  Yes, you
14 can answer that one.
15    A.   Do you know the date offhand?  I don't
16 know what the exact date was.
17    Q.   If you need the date, I will come back
18 to that with the date.  Let's move on.
19        Can you identify all persons, except
20 your attorney, with whom you discussed any aspect of
21 your expected testimony today?
22        MR. BRODOWSKI:  Objection to form.
23    A.   I didn't speak to anyone particularly
24 about this case.
25    Q.   Were you told by anyone on how to

Page 25

1 testify or what to say in this deposition?
2        MR. BRODOWSKI:  Objection.  Form.
3 Privilege.
4     Q.   I can rephrase if you want or you can
5 answer.
6     A.   No, I was not.
7     Q.   Were you under the impression that you
8 are to intentionally omit any information in your
9 answers?
10        MR. BRODOWSKI:  Objection to form.
11    A.   I'm sorry, I don't understand your
12 question.
13    Q.   Okay.  Did anyone give you the
14 impression that you discussed the case with, that you
15 were intentionally to omit information in any of your
16 answers regarding this case?
17    A.   No.
18    Q.   Okay.  How does Bank of New York Mellon
19 ordinarily verify, under oath, litigation discovery
20 responses, specifically the interrogatories, how do
21 they verify the interrogatory answers, Bank of New
22 York?
23    A.   I don't believe that they do.
24    Q.   So you're saying, to your knowledge,
25 Bank of New York does not verify litigation discovery

Page 26

1 responses that are under oath?
2     A.   No.  That's the servicer's job.
3     Q.   Did you verify the interrogatories in
4 this case?
5     A.   No, I did not.
6     Q.   Why not?
7          MR. BRODOWSKI:  Objection.  Asked and
8 answered.
9     A.   It's not my job.
10    Q.   That would be the litigation
11 coordinator, just to review?
12    A.   It could be someone else in the
13 litigation department that handles, that's their job
14 to handle interrogatories.
15    Q.   Do you know who?
16    A.   Not offhand.
17    Q.   How did Bank of New York obtain the
18 asset represented by the promissory note and mortgage
19 in this matter?
20         MR. BRODOWSKI:  Objection to form.
21    A.   That, I do not know.
22         (Exhibit-C, Promissory Note, marked for
23 identification.)
24    Q.   Do you recognize that document?
25    A.   Yes, it's a copy of the note.

Page 27

1     Q.   You're saying you don't know how Bank of
2 New York obtained the asset represented by that
3 promissory note?
4          MR. BRODOWSKI:  Objection to form.
5     Q.   I'm just verifying it with a document in
6 your hand.
7     A.   I do not.  I do not work for Bank of New
8 York.
9     Q.   Okay.  What procedure was followed to
10 convey, assign or transfer the ownership rights to
11 the subject note, to the loan originator, to assignee
12 of the note, if there is one?
13         MR. BRODOWSKI:  Objection to form.
14    A.   There would be an assignment that
15 transfers the rights.
16    Q.   How do you know that?
17    A.   That's just legal course of how loans
18 are assigned to different entities.
19    Q.   Okay.  Who was the loan originator of
20 the note?
21    A.   The originator was Heartland Home
22 Finance.
23         (Exhibit D, Mortgage, marked for
24 identification.)
25    Q.   Do you recognize that document?

Page 28

1     A.   Yes, it's a copy of the mortgage.
2     Q.   Who is the loan originator or the
3 original beneficiary of that mortgage?
4     A.   The lender then, again, was Heartland
5 Home Finance.
6     Q.   Okay.  Thank you.
7          Was the mortgage associated with this
8 note?
9          Was the mortgage associated with this
10 note?
11         MR. BRODOWSKI:  Objection to form.
12    Q.   Please -- what documents are you looking
13 at right now?
14    A.   A copy of the note and the mortgage.
15    Q.   Was the mortgage you were reviewing
16 right now and the note ever signed and recorded?
17    A.   The note -- excuse me, the mortgage was,
18 yes, it was signed and recorded.
19    Q.   Who authorized this recordation?
20    A.   I'm sorry, I don't know what you mean by
21 that.
22    Q.   How did this -- in reference to
23 recording the mortgage associated with this note, who
24 actually authorized -- who gave the order to put this
25 into action?

Page 29

1          Who handled this?
2          MR. BRODOWSKI:  Objection to form.
3     A.   I would say that Heartland Home Finance.
4     Q.   Okay.  Was the mortgage that you are
5 reviewing, that is associated with the note, ever
6 signed and recorded?
7     A.   Yes, the mortgage has been assigned.
8     Q.   Okay.  And when?
9     A.   I don't know offhand.
10    Q.   What documents does bank Bank of New
11 York Mellon have to prove it owns the local rights
12 under the note?
13         MR. BRODOWSKI:  Objection to form.
14    A.   I would say that they are in position of
15 a blank endorsed notes, so the owner is the holder.
16    Q.   And who is the owner, for the record?
17    A.   BONY, Bank of New York Mellon.
18    Q.   How did Bank of New York Mellon obtain
19 those rights?
20         From whom were the rights obtained?
21    A.   That, I do not know.
22    Q.   Do you know when?
23    A.   Not offhand.
24    Q.   So you're saying you don't know if Bank
25 of New York Mellon obtained the rights to the

8 (Pages 26 - 29)

Page 30

1  plaintiff's promissory note?
2             MR. BRODOWSKI:  Objection to form.
3        A.   Yes, they obviously did.  They are the
4  current holder of the note, so they are the owner of
5  it.  When it happened, I do not know.
6        Q.   What mechanism conveyed the note to Bank
7  of New York Mellon?
8             MR. BRODOWSKI:  Objection to form.
9        A.   What do you mean by "mechanism"?
10       Q.   What vehicle?
11            How did they come to obtain the rights
12 to that promissory note?
13            MR. BRODOWSKI:  Objection to form.
14       A.   They purchased the rights to it.
15       Q.   Do you have evidence of that?
16       A.   No, I do not.
17       Q.   Documents?
18       A.   I'm sure there are documents, but I have
19 not seen those.
20       Q.   So you have no knowledge of that?
21       A.   Correct.
22       Q.   Who presently has the Witty promissory
23 note and where is it kept for inspection?
24       A.   Our local counsel is in possession of
25 it.

Page 31

1        Q.   Do you have the name of the address,
2  just for the record?
3        A.   No, I do not.
4        Q.   Who, at Bank of New York Mellon,
5  supervises the acquisition of real estate assets?
6             MR. BRODOWSKI:  Objection to form.
7  Objection.  Beyond the scope of permitted testimony.
8             MR. WITTY:  I can rephrase unless you
9  want him to answer.
10            MR. BRODOWSKI:  Beyond the scope of
11 permitted testimony.  You're not allowed to ask those
12 questions.
13            MR. WITTY:  Well, I'm trying to discover
14 evidence from a case.  I'm just asking about real
15 estate asset.
16            Would you agree that the note and
17 mortgage would be considered, or disagree, a real
18 estate asset?
19            MR. BRODOWSKI:  Objection to form.
20       A.   I don't know the answer to that.  Sounds
21 like a legal question.
22       Q.   Okay.  Who at Bank of New York Mellon
23 authorized the assignment of the note to any third
24 party assignee, if any?
25            MR. BRODOWSKI:  Objection to form.

Page 32

1        A.   That, I do not know.
2        Q.   Do you know when it was done, the dates?
3        A.   I do not.
4        Q.   Do you know the person specified as the
5  trustee with the right to enforce foreclosure?
6             MR. BRODOWSKI:  Objection.  Form.
7        A.   No, I do not.
8        Q.   Okay.  So the origination of the note
9  and mortgage, which you stated, traveled to the Bank
10 of New York Mellon as trustee at some point and
11 arrived in their possession, is that correct?
12       A.   Yes.
13       Q.   Explain to me, as a professional, how
14 that happened, the process.
15            MR. BRODOWSKI:  Objection to form.
16       A.   I don't know how Bank of New York Mellon
17 purchases notes and mortgages, how it arrives to
18 them.  I don't work for them, so I can't speak to
19 their behalf on how their system works.
20       Q.   So you don't know how they arrived at
21 and allegedly possessing the note in the mortgage?
22            MR. BRODOWSKI:  Objection to form.
23       Q.   As trustee?
24       A.   No, I do not.
25       Q.   You don't know who authorized the

Page 33

1  conveyance, if there was one?
2        A.   No, I do not.
3        Q.   Was an insurance claim made by Bank of
4  New York Mellon or anyone acting on its behalf,
5  asking for the payment of proceeds arising from the
6  default on the note alleged by Bank of New York
7  Mellon?
8             MR. BRODOWSKI:  Objection to form.
9  Objection.  I believe it's also beyond the scope of
10 permitted testimony.
11       Q.   Can you answer that?  I can counter
12 that.
13       A.   No, I do not.
14       Q.   So you don't know if an insurance claim
15 was made?
16       A.   No, I do not.
17       Q.   Do you know who would know, if it did
18 happen?
19       A.   Not offhand, no.
20       Q.   If you had to take an estimate, would it
21 be Bayview, would it be Bank of New York Mellon, what
22 entity would be involved in that?
23            MR. BRODOWSKI:  Objection to form.
24 Objection.  Asked and answered.
25       A.   Well, if Bank of New York Mellon did

9 (Pages 30 - 33)

Page 34

1  such a claim, then they would know.
2      Q.   Do you know what department that would
3  be?
4      A.   That, I do not know.
5      Q.   When did Bank of New York Mellon first
6  decide the loan was in default?
7          MR. BRODOWSKI:  Objection to form.
8      A.   That, offhand, I do not know.  In my
9  experience it would be one of their servicers that
10 would determine that for them.
11     Q.   When you say "one of the servicers," how
12 is this typically done?
13     A.   Sure.  If a servicer is servicing a
14 loan, they have a check and balance system that would
15 determine that the loan is in default.  Then they
16 have a different procedures to move forward.
17     Q.   Can you give me an example of a
18 procedure in your experience or two?
19     A.   You could review the payment history and
20 see that payments have not be made.  We would
21 consider that a default.  You could look in their
22 systems, what we call mortgage servicing platform,
23 which would show that the loan is in default.
24     Q.   Okay.  So there's a -- that platform is
25 a computer program?

Page 35

1      A.   Correct.
2      Q.   A log entry?  I'm not trying to put
3  words in your mouth, just trying to understand.
4      A.   Yes.
5      Q.   In this case you don't know who
6  authorized the declaration of default or do you?
7      A.   Offhand, I do not.
8      Q.   Do you know if Bank of New York Mellon
9  understood the requirements in New Jersey law at the
10 time the note was declared in default?
11         MR. BRODOWSKI:  Objection to form.
12     A.   That, I do not know.
13     Q.   Do you know how the payment deficiency
14 was arrived at or calculated by Bank of New York
15 Mellon?
16         MR. BRODOWSKI:  Objection to form.
17     Q.   I'm sorry, how the payment deficiency
18 was calculated?
19     Q.   Yeah.  If there was -- so if Bank of New
20 York Mellon is saying there's a payment deficiency,
21 do you know how they arrived at that deficiency?
22         Do you know their procedure or their
23 exact procedure?
24     A.   Again, it would be the servicer.  It
25 wouldn't be Bank of New York Mellon that would handle

Page 36

1  that aspect.
2      Q.   Do you know how the servicer arrived at
3  the payment deficiency claimed?
4          MR. BRODOWSKI:  Objection to form.
5      A.   Like I said before, they would review
6  their business records to see that there's been --
7  there hasn't been payments made.
8      Q.   Okay.  Do you know when this was
9  determined by Bank of New York Mellon?
10     A.   Offhand, I do not.
11     Q.   Do you know by whom?
12     A.   Offhand, I do not.
13     Q.   Do you know what specific documents
14 relied upon to determine the loan was apparently in
15 default?
16     A.   I don't know what the prior servicer
17 would use to determine that.
18     Q.   Okay.  If I hand you the Rule 26
19 document, can you identify each document that shows
20 that default occurred?
21         MR. BRODOWSKI:  Objection to form.
22     A.   No.
23     Q.   Do you know who could?
24     A.   The prior servicer who handled that
25 aspect of it.

Page 37

1      Q.   Do you know who that is?
2      A.   Without knowing the date, I don't know
3  offhand.
4      Q.   Do you know who the prior servicer was,
5  in general?
6      A.   Yes.  There were three other prior
7  servicers.
8      Q.   Can you name them?
9      A.   Yes.  There was originally Country Wide
10 and Bank of America; then it went to RCS; then it
11 went to Ditec; then it went to Bayview.
12     Q.   Thank you.  Was there an assignment of
13 the promissory note?
14     A.   Yes.  There was, I believe, a few
15 assignments.
16     Q.   Okay.  How many?
17     A.   Offhand, I don't know.
18     Q.   Do you know how that was accomplished?
19         MR. BRODOWSKI:  Objection to form.
20     A.   No, I do not.
21     Q.   Do you know from whom the assignment was
22 received, any of the assignments?
23         MR. BRODOWSKI:  Objection to form.
24     A.   Offhand, no I do not.
25     Q.   Or when?

10 (Pages 34 - 37)

Page 38

1    A.    Again, if there's a document that you
2 would like me to review I would be happy to, but not
3 from memory.
4    Q.    Okay.  Could you know who at Bank of New
5 York Mellon authorized the acceptance?
6         MR. BRODOWSKI:  Objection to form.
7    A.    No, I do not.
8    Q.    And when any of the assignments were
9 perfected?
10        MR. BRODOWSKI:  Objection to form.
11   A.    No, I do not.
12   Q.    Was there an assignment of the mortgage,
13 Exhibit-B?
14   A.    I'm sorry, is there an assignment of the
15 mortgage?
16   Q.    Was there an assignment of the mortgage,
17 which is Exhibit-B -- I'm sorry, Exhibit-D?
18   A.    Yes.
19   Q.    Yes, you said?
20   A.    Exhibit-D, I don't have Exhibit-D.
21   Q.    The mortgage, I'm sorry.  It's right
22 here.
23   A.    Yes, there has been assignments of the
24 mortgage.
25   Q.    Okay.  How is that accomplished?

Page 39

1         MR. BRODOWSKI:  Objection.  Form.
2    A.    Again, that was done prior to when we
3 started servicing this loan, so I don't have any
4 knowledge about how that was performed.
5    Q.    So you don't know from whom the
6 assignment was received when --
7    A.    Not without having the assignment in
8 front of me.
9    Q.    Who is the authorized agent acting for
10 Bank of New York Mellon trust or as trustee over the
11 asset pool of notes within the corpus of trust?
12        MR. BRODOWSKI:  Objection to form,
13 objection.  I believe that's beyond the scope of
14 permitted testimony.
15        MR. WITTY:  Do you want me to rephrase
16 or can you answer?
17   A.    I don't know.
18   Q.    Do you understand the question?
19   A.    Honestly, no.
20   Q.    Okay.  So do you agree that Bank of New
21 York Mellon in this case is listed as trustee?
22   A.    Yes.
23   Q.    And there was, typically, a pool of
24 assets, pool of notes within this trust, that they
25 were assigned as trustee?

Page 40

1         MR. BRODOWSKI:  Objection to form.
2    A.    Yes.
3    Q.    Okay.  Did you know who was the
4 authorized agent acting for the Bank of New York
5 Mellon trust over this asset pool?
6         MR. BRODOWSKI:  Objection to form.
7 Again, it's beyond the scope of permitted testimony.
8         MR. WITTY:  Well, are you instructing
9 your client not to answer?
10        MR. BRODOWSKI:  He can answer if he
11 knows.
12        MR. WITTY:  Okay.
13   A.    No, I do not.
14   Q.    Prior to the alleged transfer of the
15 note to Bank of New York Mellon as trustee for the
16 trust, what was the value of the trust assets?
17        MR. BRODOWSKI:  Objection to form.
18 Objection beyond the scope of permitted testimony.
19   A.    That, I don't know.
20   Q.    Did the trust, under the pooling and
21 servicing agreement have a deadline or cutoff, which
22 no more assets could be deposited or transferred into
23 the trust corpus?
24        MR. BRODOWSKI:  Objection to form.
25   A.    That, I do not know.

Page 41

1    Q.    Do you know the deadline?
2    A.    No, I do not.
3    Q.    What happens if asset was received after
4 the cutoff deadline?
5    A.    I do not know.
6    Q.    What would happen to the note or
7 mortgage received as an asset, but the deposited of
8 corpus trust after the deadline?
9         MR. BRODOWSKI:  Objection to form.
10   A.    That, I do not know.
11   Q.    What is the provision in the pooling
12 servicing agreement that governs the consequence of
13 late acquired assets?
14        MR. BRODOWSKI:  Objection to form.
15 Objection.  It's beyond the scope of permitted
16 testimony.  He can answer, if he knows.
17   A.    That, I do not know.
18   Q.    Do you know who may know the answer is
19 to these questions?
20   A.    Someone at Bank of New York Mellon.
21   Q.    Okay.  Do you know specifically who?
22   A.    No, I do not.
23   Q.    So at Bayview, please describe how a
24 payment on a mortgage note gets processed and
25 credited?

11 (Pages 38 - 41)

Page 42

```
1      A.   Sure.  So payment would come in.  If it
2  comes in over the phone, there's a representative on
3  the phone who would take the information, process the
4  payment and make a note that a payment was received.
5           Same goes for if it came in the mail,
6  goes to the payment center.  They would go ahead and
7  look to see the check, send it to cashier and make a
8  note in the system that the payment was received.
9      Q.   When they make a note, where is that
10 entered?
11     A.   That's in the mortgage and servicing
12 platform that controls all the different payments
13 whether it was escrow, insurance, taxes or just
14 regular payments.
15     Q.   Okay.  Is that standard, Bank of New
16 York Mellon use that same methodology?
17          MR. BRODOWSKI:  Objection to form.
18     A.   My understanding is, I don't believe
19 Bank of America ever served -- or Bank of New York
20 Mellon ever serviced their loans, so I don't think
21 they would ever take payments.
22     Q.   Was this process that you just described
23 followed regarding the defendant's note payments?
24          MR. BRODOWSKI:  Objection to form.
25     A.   Are you asking if your payments that you
```

Page 43

```
1  made were following that procedure?
2      Q.   Yes, the procedure that you just
3  described?
4      A.   Well, as far as I know there were no
5  payments made to Bayview.  The other servicers, I
6  would assume that Bank of America, since they were
7  the first servicer, that that's how they would
8  process your payments.
9      Q.   How do you know that?
10     A.   I have been trained on Bank of America
11 systems they have the same type of procedure as we
12 do, that payments are logged and dated at the time
13 they are received.
14     Q.   It's not an assumption, you do know
15 this?
16     A.   Yes.
17     Q.   Did you permanently witness a notice of
18 default being mailed in an envelope addressed to the
19 plaintiff, Witty, at any time?
20     A.   No, I did not.
21     Q.   Do you know who would have seen this,
22 any idea?
23     A.   Offhand, I don't know.  Do you know when
24 the notice of default was sent?
25     Q.   I do, but I will come back to that.
```

Page 44

```
1           Who examined the defendant's note at
2  Bank of New York Mellon to determine that it was in
3  default?
4           MR. BRODOWSKI:  Objection to form.
5      Q.   I can rephrase that, unless you want to
6  answer?
7      A.   That, I do not know.
8      Q.   Can you define the notice of default as
9  you understand the term?
10     A.   Also referred to as a demand letter.
11 Letter stating that there's back due payments that
12 are owed.  Gives them a time period to cure those, as
13 well as the amount that is owed.  And it also
14 provides information for legal help moving forward,
15 default letters are also always sent certified and
16 regular mail.
17     Q.   You mentioned the time period.
18          Do you know the exact time period in New
19 Jersey?
20     A.   I don't know offhand.  It's generally
21 anywhere from 30 to 45 days.
22     Q.   Okay.  What guidelines are used to
23 determine if a loan is in default?
24          MR. BRODOWSKI:  Objection to form.
25     A.   I can speak to Bayview's.  Again, we
```

Page 45

```
1  have a system of checks and balances to review if
2  payments aren't made then the loan would be in
3  default.  It would be moved into the foreclosure
4  department where they would take the steps that they
5  would need to move forward with that.
6      Q.   And who at Bank of New York Mellon
7  assures that this procedure is in compliance?
8      A.   That, I do not know.
9      Q.   Who at Bank of New York assures
10 compliance with the notice of default?
11     A.   That, I do not know.
12     Q.   Do you know if it was done in this case,
13 if there was a compliance officer at Bank of New York
14 Mellon?
15     A.   That, I do not know.
16     Q.   What steps does Bank of New York Mellon
17 take to determine sufficient facts to establish a
18 loan is in default?
19          MR. BRODOWSKI:  Objection to form.
20     A.   That, I do not know.
21     Q.   Do you know who authorized or gave
22 permission for the notice of default in this case?
23     A.   Offhand, no, I do not.
24     Q.   Do you know what procedures are in place
25 at Bank of New York Mellon to assure that notice of
```

12 (Pages 42 - 45)

Page 46

1 default is recorded compliantly with the terms and
2 condition imposed by New Jersey law?
3        MR. BRODOWSKI:  Objection to form.
4    A.    No, I do not.
5    Q.    What training is required to assure that
6 employee of Bank of New York Mellon follows the
7 statutory requirements?
8        MR. BRODOWSKI:  Objection to form.
9    A.    That, I do not know.
10   Q.    What documents relied upon for Bank of
11 New York Mellon -- strike that.
12       Do you know if Bank of New York Mellon
13 has a training program for bank compliance with state
14 laws regarding foreclosure in New Jersey?
15       MR. BRODOWSKI:  Objection to form.
16 Objection, beyond the scope of permitted testimony.
17   A.    That, I do not know.
18   Q.    Who at Bank of New York Mellon would
19 certify that the discovery that was answered was
20 truthful and fully answered?
21       MR. BRODOWSKI:  Objection to form.
22 Objection.  Asked and answered.
23       MR. WITTY:  I don't think it was asked
24 and answered.  I mean, we can look back.  I didn't
25 ask this question for Bank of New York Mellon.

Page 47

1    A.    That, I do not know.  But, again, it's
2 the servicer's job to perform those duties, not Bank
3 of New York Mellon.
4    Q.    Do you know who did it in this case?
5    A.    Again, without knowing the date I don't
6 know offhand.
7    Q.    Would it be in the loan file or the
8 computer at Bayview records?
9    A.    As far as to the default letter?
10   Q.    Uh-huh.
11   A.    Yes.
12   Q.    And would it be on record on who
13 certified that discovery was truthful?
14   A.    Yeah, whoever provided discovery would
15 certify that these are true and accurate copies.
16   Q.    And that wasn't you, it was somebody
17 else; correct?
18   A.    Correct.
19   Q.    Do you understand what a discovery
20 verification is?
21   A.    Yes, generally.
22       MR. WITTY:  Do you mind taking a short
23 break?  five minutes?  ten?  We can go off record.
24       (Discussion held off the record.)
25   Q.    Back on the record.

Page 48

1        What is an endorsement affixed to a
2 promissory note?
3    A.    Sometimes there's a blank endorsement
4 for an endorsement that gives the rights to the
5 promissory note to that endorsed party.
6    Q.    Can you refer to the note, which is
7 Exhibit-C, and show me that?
8    A.    This is the allonge.
9    Q.    I'm sorry.  Here it is.
10       (Exhibit-E, Allonge, marked for
11 identification.)
12   Q.    So, Exhibit-E, can you read the top for
13 me?
14   A.    Yeah.  It's the allonge to the note.
15   Q.    So I will ask again, what's the
16 endorsement fixed to a promissory note?
17   A.    This dormant is endorsed in blank.
18   Q.    What is it used for?
19   A.    Shows ownership of the note.
20   Q.    In this case does it show ownership?
21   A.    Since it's blank endorsed, it's like a
22 bearer bond, whoever is holding note has the
23 ownership rights.
24   Q.    Okay.  What does "paid to the order of"
25 on a promissory note represent?

Page 49

1        MR. BRODOWSKI:  Objection to form.
2    A.    The person that has the legal rights to
3 the note.
4    Q.    Do you see stamps on the allonge with
5 the quotes "paid to the order of"?
6    A.    Yes.
7    Q.    Can you read the signature, the stamp to
8 me for the record?
9    A.    Sure.  There's "paid to the order of
10 Country Wide Bank, NA."  There's "paid to the order
11 of Country Wide Home Loans without recourse," from
12 Country Wide blank, NA.  Then there's a "paid to the
13 order of, blank," from Country Wide Home Loans,
14 signed by Michelle Sollinger (sic).
15   Q.    Who is the other signature please?
16   A.    Laurie Meete (sic).
17   Q.    And also there's a third stamp.  Can you
18 describe that?
19   A.    Sure.  It looks like it's "paid to the
20 order of, blank" that has been voided out.
21   Q.    Why would that be voided?
22   A.    That, I do not know.
23   Q.    Is that out of the ordinary?
24   A.    Not really.  I have seen this before on
25 certain files.

13 (Pages 46 - 49)

Page 50

1    Q.   Okay.  What evidence is there that Bank
2  of New York Mellon actually funded my alleged loan?
3         MR. BRODOWSKI:  Objection to form.
4  Objection.  Beyond the scope of permitted testimony.
5  And objection, assumes facts not in evidence.
6    A.   That, I don't know offhand.
7    Q.   So if it was funded, if you don't know
8  you wouldn't know where the funds come from or do you
9  know where the funds come from?
10        MR. BRODOWSKI:  Same objections.
11   A.   I do not know where the funds come from.
12   Q.   You don't know to whom the funds were
13  paid?
14        MR. BRODOWSKI:  Same objections.
15   A.   No, I do not.
16   Q.   How did Bank of New York Mellon become
17  involved in my note?
18   A.   My understanding is that they purchased
19  the note and then securitized the loan with a bunch
20  of other mortgages.  Then they hire servicers to
21  service the loan.
22   Q.   From whom do they purchase it from?
23   A.   That, offhand, I do not know.
24   Q.   What role did the Bank of New York
25  Mellon play in acquiring the note?

Page 51

1    A.   Well, they are the owner of the note.
2    Q.   Okay.  What role do they play as trustee
3  in acquiring that note?
4         MR. BRODOWSKI:  Objection to form.  You
5  can answer, if you know.
6    A.   They are the trustee for the
7  securitization of the trust, so...
8    Q.   So what evidence is there that Bank of
9  New York Mellon as trustee owns the note?
10        MR. BRODOWSKI:  Objection to form.
11   A.   They are the holder of the note.
12   Q.   Do you have documents to show that?
13   A.   Well, there wouldn't be any documents
14  that show that they are a holder of a blank endorsed
15  note.  They just have a blank note.  It's like a
16  bearer bond, whoever has it owns the right to the
17  note.
18   Q.   Who is the original beneficiary?
19        MR. BRODOWSKI:  Objection to form.
20   Q.   Of the note?
21   A.   Well, the original lender was -- again,
22  was Heartland Home Finance.
23   Q.   And who is the original trustee?
24        MR. BRODOWSKI:  Objection to form.
25   A.   One of the Bank of New York trust

Page 52

1  entities.
2    Q.   Do you know which one?
3    A.   Not offhand.
4    Q.   What is a trustee?
5    A.   They are -- I guess, they are the owner
6  of the note and the pool of loans as trustee for the
7  trust or the securitization of the loans.
8    Q.   Was MERS, M-E-R-S, involved in my note
9  or mortgage?
10        MR. BRODOWSKI:  Objection to form.
11   A.   Yes.  It looks like MERS was elected as
12  a nominee.
13   Q.   So as nominee, what role did they play?
14   A.   My understanding of MERS is that they
15  are just a third party that becomes the nominee and
16  then allows for easy transfer to other parties once
17  the note is purchased or transferred.
18   Q.   And you read the endorsements on the
19  bottom, the stamps, are they the entities or
20  employees that endorsed the note, on the allonge?
21        You read it previously.  I can ask, who
22  at Country Wide authorized the dormant of the note?
23   A.   At Country Wide -- which Country Wide,
24  Country Wide Home Loans or Country Wide Bank?
25   Q.   Whatever it says.

Page 53

1    A.   Again, Lauren Meete assigned it from
2  Country Wide bank to Country Wide Home Loans.  Then
3  Country Wide Home Loans endorsed it in blank.
4    Q.   Okay.
5         MR. WITTY:  First Collateral Services
6  bailee letter as Exhibit-F.
7         (Exhibit-F, First Collateral Bailee
8  Letter, marked for identification.)
9    Q.   This is Exhibit-F, bailee letter.
10        Can you read me the header on top?
11   A.   "First Collateral Services, Inc.
12  Mortgage Company; Heartland Mortgage Company
13  Investor; Country Wide Home Loans, Inc.
14   Q.   Next word?
15   A.   Bailee letter.
16   Q.   What is a bailee letter?
17   A.   It's usually a letter that's provided
18  when the transfer of a loan takes place, when
19  transfer of the note and mortgage.
20   Q.   What was -- did First Collateral
21  Services, Inc. ever; they ever assigned the note and
22  mortgage in question?
23   A.   Offhand, I do not know.
24   Q.   Was Citibank ever -- did anyone in this
25  letter, either Heartland or Country Wide Loans,

14 (Pages 50 - 53)

1 purchase a mortgage loan from Citibank and send funds
2 to Citibank?
3          MR. BRODOWSKI:  Objection to form.
4     A.   That, I do not know.
5     Q.   Did Bank of New York Mellon deal with
6 first collateral services in reference to the
7 mortgage in question?
8     A.   That, I do not know.
9     Q.   How was MERS involved with both Country
10 Wide and First Collateral Services in the context of
11 the bailee letter?
12          MR. BRODOWSKI:  Objection.  Form.
13     Q.   I can rephrase or you can answer.
14     A.   I don't know MERS's involvement.
15     Q.   So is it safe to say, you're not
16 familiar with any transactions in reference to the
17 bailee letter?
18          MR. BRODOWSKI:  Objection to form.
19     A.   That's correct.
20     Q.   Okay.  Thank you.
21          MR. BRODOWSKI:  I would like to clarify
22 something about the bailee letter proffered as
23 Exhibit-F.
24          Mr. Witty, if you wouldn't mind, would
25 you please read the Bates number at the bottom of

1 that document just so that it's part of the record?
2          MR. WITTY:  Absolutely.  Bates No.
3 BNYMELLON-003640.  It's also printed on it.
4          MR. BRODOWSKI:  Thank you.
5     Q.   If a borrower wanted to modify the terms
6 of the loan or -- if a borrower wanted to modify the
7 terms of a loan, what protocol does Bank of New York
8 Mellon have in place to accomplish that modification?
9          MR. BRODOWSKI:  Objection to form.
10     A.   I would say that Bank of New York Mellon
11 has nothing to do with the modifications.  They would
12 rely on their servicer to do so.
13     Q.   Define "modification."
14     A.   So modification is taking back due
15 payments, adding them onto the loan, allowing the
16 borrower to get current and move forward, usually
17 with a lower payment.
18     Q.   And define "novation," please.
19     A.   Define what?
20     Q.   "Novation."  The term "novation."
21     A.   Novation?  I don't know what that means.
22     Q.   So I define it as a loan modification,
23 just for this question.
24          So if a borrower was given an approval
25 for a loan modification, or novation, what would

1 happen next?
2          What is the next step, based on your
3 knowledge, of the process?
4          MR. BRODOWSKI:  Objection to form.
5     A.   Sure.  So if a borrower is approved for
6 loan modification, they would receive the copy of the
7 loan modification, which they would have to sign and
8 send back.  Then there's usually a trial period of
9 anywhere from three to six months where they would
10 make trial payments.  Those payments would be applied
11 against the principal.
12          Then there would be the conversion
13 process where, you know, title would be run and
14 everything would be confirmed that this can actually
15 be completely modified.  It would be a final
16 agreement sent to the borrower where you would have
17 to have it signed and notified.
18     Q.   Thank you.  So let's assume for a moment
19 that happened in this case, would Bank of New York
20 send any papers, letters, correspondence, confirming
21 the modification offer?
22          MR. BRODOWSKI:  Objection to form.
23     A.   Bank of New York Mellon would not.  It's
24 the servicer's role to do that.  They would provide
25 copies of all the documents associated with the loan

1 modification and it would be uploaded into imaging.
2 Then the records, and what we call MSB, would be
3 updated to reflect new terms and so forth.
4     Q.   So the servicing, if it was BAC or
5 Country Wide was the servicing bank, they would
6 follow the same procedure you just described?
7     A.   Yes.
8     Q.   Okay.  How does the acceptance of the
9 borrower's approval of the offer to modify work, in
10 the same manner or different?
11          MR. BRODOWSKI:  Objection to form.
12     A.   Usually, it's in my experience the
13 acceptance of that is the first payment of the trial
14 modification.
15     Q.   First payment.  Okay.
16          So the first payment would be --
17 constitute acceptance of the modification or novation
18 offer?
19          MR. BRODOWSKI:  Objection to form.
20     A.   Yes, in my experience.
21     Q.   In your experience.  Okay.
22          And for the servicing bank, what's the
23 usual paper trail?  Would it be kept in a loan file?
24 in the computer?
25          Tell me a little bit about that.

Page 58

1    A.    Yeah.  It would be -- you would have the
2  information at MSP, which would be updated as far as
3  the terms, rate, things of that sort.  Then you would
4  have imaged copies of the signed notarized final
5  conversion documents.
6    Q.    So if there was a letter, there would be
7  an image copy that's typical protocol or typical
8  procedure, is that what I'm understanding?
9    A.    Yes.
10    Q.    That would be placed in the loan file as
11  well or would it be kept on a computer in paper file?
12    A.    Yeah.  Usually, the original documents
13  would go into the collateral then imaged copies would
14  be part of the image system.  So the system would be
15  noted, MSP would be noted there was modification done
16  on this date.  There would also be copies of the
17  signed documents from the borrower, as well as in the
18  payment history, you would see, you know, the lower
19  payment made for the period of time that it was
20  scheduled for.
21    Q.    That would be the same with any
22  correspondence if there was a verbal conversation and
23  follow-up correspondence, a letter or e-mail that
24  would be the same procedure, image copy would be made
25  and placed in the computer?

Page 59

1    A.    If there was a -- like for instance, if
2  you were to order verbally a modification there would
3  be a note in the servicer's customer relations
4  system.
5    Q.    Got it.
6    A.    But then there would have to be
7  documents sign by the borrower as well.
8    Q.    So if there was a verbal confirmation
9  that would be shown in the notes, the computer notes,
10  whoever made that offer would enter that into the
11  system?
12        I'm just trying to fully understand.
13    A.    Yeah.  If you're a customer, you call up
14  and you had sent in documents, we had them reviewed
15  by underwriting, we were able to get you approved via
16  loan modification, there's what's called an MLO call,
17  which depending on what state a licensed individual
18  from the company has to call the borrower, go over
19  the terms so they are aware.  The borrower would have
20  to sign the document and send in the first payment to
21  officially start the modification trial plan.
22    Q.    Okay.  Any initial conversation and
23  follow-up would also be entered in image form.
24        So if a letter was sent as confirmation,
25  yes, we discussed that, that would be an image copied

Page 60

1  and entered into the file.  Is that correct?
2    A.    No.  There wouldn't be any, like, image
3  document.  There would be copies of the agreement,
4  but there wouldn't be -- for instance, if there -- if
5  I called you up and said you were approved for a loan
6  modification, in two or three days you're going to
7  see the Fed Ex envelope, with the copy of that
8  agreement imaged into the system.
9    Q.    How do they follow-up verbal
10  conversation?  How is that done?
11    A.    Then the person would create a note in
12  there saying "spoke to such and such, you know, read
13  the Miranda," went over the details and they would
14  take notes on the conversation.
15    Q.    If there was a follow-up letter sent by
16  me, how would that be recorded, just memorializing
17  the conversation, how is that recorded?
18    A.    So with Bayview, any document sent to us
19  associated with your loan gets uploaded to the
20  imaging site and is attached to your file.
21    Q.    Okay.  So that would be in the file
22  then.
23        How about, do you know, does Country
24  Wide or BAC or Bank of New York have the same
25  process?

Page 61

1    A.    I believe the servicer at that point was
2  Bank of America, which is Country Wide and BAC, they
3  are all associated.  Yeah, they would have to have
4  the signed loan modification.  They would have to
5  have, you know, the first payment received and so
6  forth.
7    Q.    Okay.  Any correspondence would also be
8  in their file?
9    A.    Yes.
10    Q.    And associated to the loan?
11    A.    Generally, yes.  They have a system that
12  would take notes for all their conversations.
13    Q.    Okay.  Based on your own personal
14  knowledge, do you understand the State of New Jersey
15  foreclosure requirements as a person most qualified?
16        MR. BRODOWSKI:  Objection to form.
17    A.    Are you asking me do I know all the
18  guidelines for New Jersey foreclosure requirements?
19    Q.    Know and understand it.
20    A.    I would say no.
21    Q.    Some laws?
22    A.    I work in every state, so every state
23  has something different, so...
24    Q.    How do you acquaint yourself with the
25  laws?

16 (Pages 58 - 61)

Page 62

1    A.    Well, again, that's not my
2  responsibility at Bayview to handle that type of
3  compliance, I guess.
4    Q.    Okay.  Do you know who does or what
5  department?
6    A.    We have a whole compliance department
7  that handles those types of state-to-state specific
8  laws.
9    Q.    Have you read the complaint filed
10 against the defendant's in this action?
11   A.    Yes, I reviewed it.
12   Q.    You understand the content?
13   A.    Yes.
14        MR. BRODOWSKI:  Objection.  Just to
15 clarify.  Can you please clarify which complaint
16 you're talking about?
17   Q.    The complaint Witty vs. Bank of New York
18 Mellon that was filed in federal court that we have
19 come here to discuss today.
20   A.    Yes, I have seen that document.
21   Q.    Okay.  There's two cases, I'm referring
22 to Witty vs. Bank of New York now.  You know what,
23 let's do this, let's be specific.
24        (Exhibit-G, Complaint Witty versus Bank
25 of New York Mellon, marked for identification.)

Page 63

1    Q.    So you can review Exhibit-G.  This is
2  Witty vs. Bank of New York Mellon as trustee, et al.,
3  complaint, filed with the U.S. District Court,
4  December 7, 2015.  So I will ask the same question
5  again with the document in front of you.
6        Have you read the operative complaint
7  filed against the defendant's in this action?
8    A.    Yes, I reviewed it.
9    Q.    You reviewed and do you understand it,
10 the content?
11   A.    Yes.
12   Q.    Do you agree that Bank of New York
13 Mellon has been sued for fraud and breach of
14 contract?
15   A.    That I don't know with any certainty.
16   Q.    But you reviewed it and you understand
17 it.  Okay.
18        If you can turn to Page 13, count five.
19 If you can just read count five, just the in bold.
20   A.    "Breach of contract, against all
21 defenses," or "defendants," excuse me.
22   Q.    Okay.  So do you agree that Bank of New
23 York Mellon has been sued for breach of contract?
24   A.    Yes.
25   Q.    Okay.  If you can turn to Page 15,

Page 64

1  county -- if you can read in bold, count eight?
2    A.    "Fraud and deceptive punitive damages."
3    Q.    Would you agree that Bank of New York
4  Mellon has been sued for fraud?
5    A.    Yes.
6    Q.    As a person most -- strike that.
7        Basing on your understanding on
8  foreclosure procedure and protocol, used by Bank of
9  New York Mellon, Bank of New York Mellon filed each
10 aspect of the foreclosure procedure and protocol in
11 handling this loan followed?
12        MR. BRODOWSKI:  Objection to form.
13   A.    Again, it would be the servicer's
14 responsibility to do so.
15   Q.    The servicer represents -- explain to me
16 the relationship between servicer and Bank of New
17 York Mellon.
18   A.    Sure.  So Bayview is the current
19 servicer for Bank of New York Mellon.  We have a
20 Power of Attorney to act on their behalf, and to
21 handle all aspects of the servicing of the loan.
22   Q.    Power of Attorney to act on their
23 behalf.
24        So with Power of Attorney, did Bank of
25 New York Mellon follow each aspect of the foreclosure

Page 65

1  protocol in the handling of this loan in question
2  today?
3        MR. BRODOWSKI:  Objection to form.
4    A.    As far as I know, yes.
5    Q.    How do you know that?
6    A.    There was nothing otherwise that would
7  say that nothing was followed, the protocol.
8    Q.    Do you have evidence to that?
9    A.    There was no evidence of the contrary.
10   Q.    There's no evidence disproving that, but
11 you have evidence proving that?
12   A.    There's no evidence proving that
13 something was not done correctly.
14   Q.    Okay.  Is there any evidence that proves
15 that it was done correctly?
16        MR. BRODOWSKI:  Objection to form.
17   A.    That, I do not know.
18   Q.    Do you have any documents?
19        MR. BRODOWSKI:  Objection to form.
20   A.    I wouldn't know what document to look at
21 to prove that this was done correctly.  It's a legal
22 document.
23   Q.    So you don't know?
24   A.    Correct.
25   Q.    Did you personally observe the notice of

17 (Pages 62 - 65)

1 default being prepared?
2     A.    No.
3     Q.    Or being mailed?
4     A.    No.
5     Q.    Recorded?
6     A.    No.
7     Q.    Do you know who it was mailed to that it
8 was in default?
9     A.    Bayview's procedure is to supply the
10 notice to the borrower on record and all addresses
11 that we have on file.
12     Q.    Did the servicing bank or Bank of New
13 York Mellon follow that procedure, do you know who it
14 was mailed to in my case, the notice of default, if
15 it was mailed to me or who it was mailed to?
16     A.    I don't know when the exact date of the
17 default was sent, so I can't.
18     Q.    Do you know who at Bank of New York
19 Mellon prepared the notice of default?
20     A.    Again, my understanding is the servicer
21 prepares that on behalf of Bank of New York Mellon.
22     Q.    Do you know which servicer?
23     A.    Again, without knowing the date of the
24 default letter I don't know offhand.
25     Q.    Okay.  Do you know any facts concerning

1 the loan modification offered plaintiffs by Bank of
2 New York on or about December 15, 2009?
3         MR. BRODOWSKI:  Objection to form.
4 Objection, assumes facts not in evidence.
5     A.    I'm not aware of any loan modification
6 based on the records.
7     Q.    Do you know if all the documents
8 contained in the loan file was provided at the Rule
9 26 disclosure by Bank of New York Mellon to the
10 plaintiffs?
11     A.    My understanding is that everything that
12 we have was provided.
13     Q.    You understand or you know that
14 everything was provided?
15     A.    That's my understanding.  I didn't again
16 provide the production.  So if there's something that
17 you asked for and we have it, we are obligated to
18 provide it and would provide it.
19     Q.    Okay.  Who would know if you don't know
20 today?
21     A.    Whoever answered the production requests
22 on Bayview's side, we generally just provide
23 everything to the attorney.
24     Q.    Just to summarize, this was asked and
25 answered, but just summarize, you didn't speak to

1 that person?
2     A.    No, I did not.
3     Q.    Do you know if any of the loan filed
4 documents were withheld from the plaintiffs until
5 after the court signed a protective order?
6     A.    That, I do not know.
7     Q.    So you went over what a modification of
8 a promissory note made by Bank of New York Mellon or
9 their servicing bank is agreed, you already reviewed
10 the documents you would expect to see in the loan
11 file that support that modification?
12     A.    Correct.  I didn't see any documents to
13 support a loan modification.
14     Q.    So there's no documents, and do you know
15 why not?
16     A.    There wasn't a loan modification or else
17 there would be proof of those documents.
18     Q.    How do you know that for sure?
19     A.    I reviewed the business records and
20 there's no copies of any type of agreements that were
21 signed.
22     Q.    There's no images or copies of
23 correspondence as well in regards to any loan
24 modification?
25     A.    No, not that I'm aware of.

1     Q.    Nothing in the file, nothing in the
2 computer records?
3     A.    Correct.  As far as loan modification
4 being offered, correct.
5     Q.    If Bank of New York did agree to modify
6 a loan term or condition of a promissory note, who
7 would be authorized to do so?
8         MR. BRODOWSKI:  Objection to form.
9 Objection.  Beyond the scope of permitted testimony.
10         MR. WITTY:  I can rephrase or you can
11 answer.
12     A.    There's a whole process of loan
13 modification.  You have to get approved, so it goes
14 through underwriting.  Then it gets reviewed by
15 management.  Then they would sign off on the
16 approval.  Then the asset manager would provide the
17 copy of the documents to the borrower.
18     Q.    Is there anyone specific in this case by
19 name or contact information that you know of?
20     A.    No, I do not.
21     Q.    If there was a modification, how would
22 it be noted in the loan file?
23         Was there a specific way to notate that?
24         MR. BRODOWSKI:  Objection.  Asked and
25 answered.

18 (Pages 66 - 69)

Page 70

1    Q.   An image?
2    A.   The payment history would show
3  modification.  It would show the new terms of the
4  loan, new interest rate, the system would show it.
5  There would be copies of the signed notarized copies
6  of the actual conversion documents.
7    Q.   Okay.  You're saying the loan records do
8  not show modification was entered between plaintiff
9  and Bank of New York Mellon or Bank of New York in
10 this case?
11   A.   Correct.
12   Q.   Does Bank of New York Mellon or their
13 servicing bank at the time, do you know if there was
14 procedures in place to assure that nothing was lost
15 or misplaced?
16   A.   Yes.  I mean, that's the business we're
17 in of record keeping.  So, again, anything that comes
18 in from outside is automatically imaged and loaded
19 into the system, as well as any documents that are
20 sent out.
21   Q.   Okay.  Has anything ever got lost, to
22 your recollection?
23        MR. BRODOWSKI:  Objection to form.
24   Q.   It's relevant.
25   A.   Yeah, mail that has been sent to us has

Page 71

1  been lost and we never received it, so mistakes do
2  happen.  But documents for a loan modification would
3  be something that wouldn't be lost because there's a
4  process, there's a notary that has to take place,
5  certain states have even filed it with the local
6  county.  So I didn't see anything like that to
7  believe there was ever any type of official loan
8  modification in place.
9    Q.   Okay.  But at times, in your experience,
10 letter correspondence has been lost?
11   A.   Would have never made it to us.  Could
12 have been lost in the mail, yes.  That does happen
13 from time to time.
14   Q.   What's the typical procedure when that
15 happens from time to time?
16   A.   I guess it depends on the document.  If
17 we sent you out a loan modification and you said you
18 signed it and sent back with a check, we would be
19 constantly in contact with you.  We would say we
20 didn't receive it, can you please send us another
21 copy?
22   Q.   How about a verification of a verbal
23 conversation of a loan modification, how would that
24 be handled if it was never received and lost by the
25 servicing bank?

Page 72

1    A.   I'm not as far as I know, are you
2  talking about a verbal conversation coming from the
3  borrower to the bank or the bank to the borrower?
4    Q.   The servicing bank in conversation with
5  the borrower, then a follow-up letter memorializing
6  that conversation sent to the bank or servicing bank
7  as Power of Attorney for the bank.
8    A.   That's hard to say if we never received
9  it or the servicer never received it.
10   Q.   What happens if -- what procedures are
11 in place to alleviate that, what would happen in that
12 case, a lost letter, lost document?
13   A.   If we didn't receive it, then we didn't
14 receive it, so there's no recourse.  If you sent a
15 letter and it didn't make it to us, I don't know what
16 we could do.
17   Q.   But it's possible that could happen in
18 your experience and you have seen that happen in your
19 experience?
20   A.   I have seen, like, for instance, letters
21 come -- letters that borrowers said they sent in and
22 we never received them.
23   Q.   Do you know if the original promissory
24 note is signed with the original signature by one or
25 more of the plaintiffs?

Page 73

1    A.   Yes, I do.
2    Q.   Do you know if either plaintiff
3  personally signed an original promissory note or
4  mortgage?
5         MR. BRODOWSKI:  Objection to form.
6    A.   Do I have personal knowledge of that?
7    Q.   Yeah.
8    A.   No, I do not.  I was not there.
9    Q.   Okay.  Who has possession of the
10 original promissory note, if one exists?
11        MR. BRODOWSKI:  Objection.  Asked and
12 answered.
13   A.   Counsel.
14   Q.   Who was possession of the mortgage
15 relating to this note and real property?
16   A.   The mortgage, again, is going to be with
17 counsel as well.
18   Q.   Is there a practice and protocol at Bank
19 of New York Mellon to intentionally withheld
20 documents in litigated cases?
21        MR. BRODOWSKI:  Objection to form.
22        MR. WITTY:  In formal discovery.
23   A.   Not that I'm aware of.
24   Q.   Is someone designated to verify any
25 discovery response for Bank of New York Mellon join

19 (Pages 70 - 73)

Page 74

1 discovery in litigated cases where Bank of New York
2 Mellon is an adverse party?
3     A.    For Bank of New York Mellon that I do
4 not know.
5     Q.    Do you know who would know?
6     A.    Maybe Bank of New York Mellon would know
7 if they reviewed those documents.
8     Q.    Do you know the requirements and New
9 Jersey statutes as they relate to duties on a trustee
10 under mortgages?
11     MR. BRODOWSKI: Objection to form.
12     A.    No, I do not.
13     Q.    So Bank of New York Mellon chose you as
14 the witness to testify here today, correct?
15     MR. BRODOWSKI: Objection to form.
16     A.    I don't believe so. I think my company
17 designated me to testify.
18     Q.    On behalf of Bank of New York Mellon?
19     A.    We're the servicer, yes, for the
20 plaintiff.
21     Q.    Aside from the items we already
22 discussed, what else did you do to ensure you would
23 be accurately prepared today to discuss this case?
24     MR. BRODOWSKI: Objection to form.
25 Objection. Privilege.

Page 75

1     Q.    Besides talking to your attorney.
2     A.    I reviewed the business records.
3     Q.    Can you identify all parties that
4 transfer the promissory note, including the allonge?
5     MR. BRODOWSKI: Objection to form.
6     A.    Can I identify all parties who
7 transferred the promissory note?
8     Q.    I can rephrase, if you want.
9     A.    Sure.
10     Q.    The promissory note has a chain of
11 transference.
12         Can you identify all the parties,
13 alleged parties that were included in that chain of
14 transference?
15     A.    Not offhand.
16     Q.    Can you identify or name the documents
17 that show the identity of any person given the
18 authority to declare a loan to be in default or the
19 note to be in default?
20     A.    Again, not offhand without that document
21 in front of me.
22     Q.    Can you provide me with the facts that
23 show what you believe to be the past due scheduled
24 principal payments?
25     A.    Not without anything in front of me.

Page 76

1     Q.    Where would you find that information?
2     A.    As far as past due payments, that would
3 be in the payment history.
4     Q.    Did you review the payment history?
5     A.    Yes, I have looked at the payment
6 history.
7     Q.    So you're saying that's where all the
8 facts that would prove past due scheduled principal,
9 interest, taxes, insurance?
10     A.    Correct, that would show the
11 disbursements made. There's what we would call the
12 payoff screen, which would show all the amounts due
13 and owing that pulls from the payment history.
14     Q.    Is there a ledger that shows date and
15 entry and the exchange of all funds from any party in
16 connection with this mortgage loan or record of that?
17     A.    Not that I'm aware of.
18     Q.    Can you describe who provided the
19 funding for the loan in question?
20     MR. BRODOWSKI: Objection. Asked and
21 answered. Objection. Beyond the scope of testimony.
22 Objection to form.
23     A.    That, I don't know.
24     Q.    Who authorized MERS transfer the
25 mortgage related to this loan from the original

Page 77

1 trustee to the subsequent trustee or holder of the
2 rights under this instrument?
3     MR. BRODOWSKI: Objection to form.
4 Objection. Assumes facts not in evidence.
5     A.    Offhand, I don't know the answer to
6 that.
7     Q.    Can you just give me a little bit on
8 this?
9         Just describe the methods used to
10 prepare documents that have become part of the loan
11 file. You touched on it with images.
12         Is there anything else that you left out
13 or just to be a little bit more complete? I'm just
14 trying to understand how they are prepared.
15     A.    Sure.
16     MR. BRODOWSKI: Objection to form.
17     A.    If there's specific document I would be
18 happy to go into those details. Anything that we
19 generate, when it's generated, a copy is
20 automatically sent to imaging where it's stored.
21 Loan modification documents are generated, a copy
22 would be in imaging and then there's a review by
23 someone in senior management, as well as in MVD
24 (sic). All the different stages of loan mod. They
25 would review it, sign off on it.

20 (Pages 74 - 77)

1        Same with default notice, there's a
2   process that goes through where they are reviewed,
3   signed off on by upper management and then provided
4   mailed to the customer based on the policy and
5   procedures in place.
6        MR. WITTY: Off the record.
7        (Discussion held off the record.)
8        (Exhibit-H, RCS Notice of Default and
9   Intention to Foreclosure, marked for identification.)
10   Q.    So if you would, that's Exhibit-H. Read
11   the in bold for me.
12   A.    "Notice of default and intention to
13   foreclose."
14   Q.    That's by RCS on July 22, 2013.
15        As in your profession, explain to me the
16   verbiage or -- within the context of the note of
17   default, "you have the right to cure this default by
18   payment in the summary of $462,199.76, plus other
19   charges due and payable for 8/24/2013."
20        Do you see that?
21   A.    Yes.
22   Q.    Okay. Is that referred to as an
23   acceleration?
24        MR. BRODOWSKI: Objection to form.
25   Q.    What's the proper --

1   A.    That's the default amount.
2   Q.    Default amount. Does that say -- what
3   does that mean?
4   A.    That if that amount is not paid on or
5   before 8/24/2013 then they are going to move forward
6   with the foreclosure.
7   Q.    Okay. So notice of default, what is RCS
8   trying to communicate?
9        MR. BRODOWSKI: Objection form.
10   A.    That the borrower is behind on their
11   payments and there's an amount that needs to be
12   cured.
13   Q.    That's the stated amount?
14   A.    Correct.
15   Q.    Was there ever a notice that accelerated
16   the payment and demanded the mortgage -- and the note
17   be paid in full?
18        MR. BRODOWSKI: Objection to form.
19   A.    Not that I'm aware of.
20   Q.    If there was, what does that mean
21   exactly?
22        MR. BRODOWSKI: Objection to form.
23   A.    I'm not sure what you mean. There was
24   --
25   Q.    What's a "notice of acceleration"?

1   A.    Notice of acceleration usually means you
2   owe us this full amount, please pay us this or we're
3   going to foreclose.
4   Q.    There's a deadline on that usually?
5   A.    Yeah, just like the default letter.
6   Q.    Was that ever submitted by Bank of New
7   York Mellon to Andrew Witty?
8   A.    The notice of default?
9   Q.    No, an acceleration?
10   A.    Not that I'm aware of. I didn't see
11   anything in the files. But this would -- this is
12   what the actual demand or default letter is, this
13   would constitute demand or default letter.
14   Q.    Okay. Few more questions.
15        Do you understand every step in the
16   banking and loan business that is required to fund a
17   loan?
18        MR. BRODOWSKI: Objection. Form.
19   Objection. Beyond the scope of permitted testimony.
20   He's not going to answer that.
21   Q.    From what source of the funds originate
22   that were used to fund the loan in question in this
23   lawsuit?
24        MR. BRODOWSKI: Objection. Asked and
25   answered. Objection, form. Objection, beyond the

1   scope of permitted testimony.
2        MR. WITTY: It was never asked and
3   answered.
4        MR. BRODOWSKI: Asked and answered and
5   objected to. He doesn't have to answer. That's
6   beyond the scope.
7        MR. WITTY: You mentioned a court order
8   before, on beyond scope.
9        Do you understand every step of the
10   banking loan business required to fund a loan?
11        MR. BRODOWSKI: Are you asking me?
12        MR. WITTY: Yes. You're saying "beyond
13   the scope." This is --
14        MR. BRODOWSKI: Earlier I referenced
15   Judge Hammer's order limiting scope of discovery. I
16   think I suggested that you review it, if you wanted
17   to ask those questions.
18        MR. WITTY: Is it the same for the
19   source of the funds originating, that question as
20   well, was that in the court order as well?
21        MR. BRODOWSKI: I don't know if those
22   exact words were, but I believe those are within the
23   scope of testimony that was not allowed for various
24   reasons set forth in the order.
25        MR. WITTY: Okay. Let's go off record.

Page 82

1          (Discussion held off the record.)
2          MR. BRODOWSKI:  Back on the record.
3     Q.    Let me ask the question.  Back on
4  record.
5          Do you understand every step in the
6  banking loan business that is required to fund a
7  loan?
8          MR. BRODOWSKI:  Objection for the
9  reasons stated before; however, he can answer if he
10  knows.
11    A.    No, I do not know every step.
12    Q.    From what source of the funds originate
13  that were used to fund this loan, the loan in
14  question in this lawsuit?
15         MR. BRODOWSKI:  Objection for the same
16  reason before.  He can answer.
17    A.    I do not know.
18         MR. WITTY:  Okay.  I believe that
19  concludes our deposition.
20         (Concluded at 1:00 p.m.)
21
22
23
24
25

Page 83

1          CERTIFICATE
2
3     I, PATRICIA SMITH, a Certified Shorthand
4  Reporter of the State of New Jersey, License No.
5  30X100103000, do hereby certify that prior to the
6  commencement of the examination JAMES D'ORLANDO was
7  duly sworn by me to testify the truth, the whole
8  truth and nothing but the truth.
9     I DO FURTHER CERTIFY that the foregoing is a
10  true and accurate transcript of the testimony as
11  taken stenographically by and before me at the time,
12  place and on the date hereinbefore set forth.
13    I DO FURTHER CERTIFY that I am neither a
14  relative nor employee nor attorney nor counsel of any
15  of the parties to this action, and that I am neither
16  a relative nor employee of such attorney or counsel,
17  and that I am not financially interested in the
18  action.
19
20
21
22  Patricia Smith, CCR.
23  Dated:  July 11, 2019
24
25

[003640 - anybody]

**0**

**003640**  55:3
**07078**  2:5

**1**

**10:50**  1:19
**11**  83:23
**13**  63:18
**130**  2:9
**15**  63:25 67:2
**15-00500**  1:3
**16**  15:15
**18th**  2:9
**19067**  12:11
**19103**  2:9
**1999**  12:18,23
**1:00**  82:20
**1st**  2:4

**2**

**2003**  12:23
**2008**  13:19
**2009**  13:19 67:2
**2013**  78:14
**2015**  63:4
**2019**  1:19 83:23
**215-317-0605**
   12:12
**22**  78:14
**26**  3:11 36:18 67:9
**27**  1:19 3:12
**27th**  10:4
**290**  1:17

**3**

**30**  44:21
**30x100103000**
   83:5
**35**  7:21

**4**

**4**  3:3

**45**  44:21
**462,199.76**  78:18
**48**  3:13

**5**

**51**  2:4
**53**  3:14

**6**

**6**  12:11
**62**  3:15

**7**

**7**  63:4
**78**  3:17

**8**

**8/24/2013**  78:19
   79:5

**9**

**9**  3:9,10
**9276**  83:21

**a**

**a.m.**  1:19
**able**  59:15
**absolutely**  55:2
**accelerated**  79:15
**acceleration**  78:23
   79:25 80:1,9
**acceptance**  38:5
   57:8,13,17
**accomplish**  55:8
**accomplished**
   37:18 38:25
**account**  21:16
**accurate**  47:15
   83:10
**accurately**  74:23
**acknowledgement**
   14:25
**acquaint**  61:24
**acquired**  41:13

**acquiring**  50:25
   51:3
**acquisition**  31:5
**act**  64:20,22
**acting**  10:9 23:15
   23:23 33:4 39:9
   40:4
**action**  1:2,3 4:5
   28:25 62:10 63:7
   83:15,18
**actual**  70:6 80:12
**adding**  55:15
**address**  12:7,10
   19:6 31:1
**addressed**  43:18
**addresses**  66:10
**admission**  4:9
   17:17
**admissions**  18:2
**adverse**  74:2
**advised**  11:25
**affixed**  48:1
**agent**  7:25 10:9,12
   16:15 23:15,23
   39:9 40:4
**agree**  31:16 39:20
   63:12,22 64:3
   69:5
**agreed**  68:9
**agreement**  40:21
   41:12 56:16 60:3
   60:8
**agreements**  68:20
**ahead**  20:14 42:6
**al**  1:8 63:2
**alcohol**  6:7
**alleged**  33:6 40:14
   50:2 75:13
**allegedly**  22:25
   32:21

**alleviate**  72:11
**allonge**  3:13 48:8
   48:10,14 49:4
   52:20 75:4
**allow**  4:14 20:14
**allowed**  21:1
   31:11 81:23
**allowing**  55:15
**allows**  52:16
**altering**  6:24
**amend**  6:17
**america**  37:10
   42:19 43:6,10
   61:2
**amount**  44:13
   79:1,2,4,11,13
   80:2
**amounts**  76:12
**andrew**  1:4 2:3
   4:4 17:3 80:7
**answer**  4:24 5:17
   6:13,16 10:15,15
   10:19 14:3 17:4
   20:4,6,15 21:13,19
   21:24 24:9,14
   25:5 31:9,20
   33:11 39:16 40:9
   40:10 41:16,18
   44:6 51:5 54:13
   69:11 77:5 80:20
   81:5 82:9,16
**answered**  19:19
   24:1,4 26:8 33:24
   46:19,20,22,24
   67:21,25 69:25
   73:12 76:21 80:25
   81:3,4
**answers**  18:10
   25:9,16,21
**anybody**  17:11

**apparently** 36:14
**applied** 56:10
**approval** 55:24
   57:9 69:16
**approved** 56:5
   59:15 60:5 69:13
**approximate**
   14:14
**approximately**
   7:19
**arising** 33:5
**arrived** 32:11,20
   35:14,21 36:2
**arrives** 32:17
**articulate** 7:3
**aside** 74:21
**asked** 4:19 5:23
   11:24 17:2,6 22:6
   24:1,4,4 26:7
   33:24 46:22,23
   67:17,24 69:24
   73:11 76:20 80:24
   81:2,4
**asking** 24:11
   31:14 33:5 42:25
   61:17 81:11
**aspect** 24:20 36:1
   36:25 64:10,25
**aspects** 64:21
**assessment** 15:4
**asset** 23:10 26:18
   27:2 31:15,18
   39:11 40:5 41:3,7
   69:16
**assets** 31:5 39:24
   40:16,22 41:13
**assign** 27:10
**assigned** 27:18
   29:7 39:25 53:1
   53:21

**assignee** 27:11
   31:24
**assignment** 27:14
   31:23 37:12,21
   38:12,14,16 39:6,7
**assignments** 37:15
   37:22 38:8,23
**associated** 22:12
   28:7,9,23 29:5
   56:25 60:19 61:3
   61:10
**assume** 43:6 56:18
**assumes** 50:5 67:4
   77:4
**assuming** 23:19
   24:1
**assumption** 43:14
**assure** 45:25 46:5
   70:14
**assures** 45:7,9
**attached** 60:20
**attend** 11:4 12:20
   13:23
**attended** 12:14,15
   12:20,22 13:21
   14:1 16:1
**attending** 9:25
**attorney** 4:6 6:23
   8:12 24:20 64:20
   64:22,24 67:23
   72:7 75:1 83:14
   83:16
**attorneys** 2:10
**authority** 75:18
**authorized** 28:19
   28:24 31:23 32:25
   35:6 38:5 39:9
   40:4 45:21 52:22
   69:7 76:24
**automatically**
   70:18 77:20

**avenue** 1:18
**aware** 5:12 19:14
   59:19 67:5 68:25
   73:23 76:17 79:19
   80:10

**b**

**b** 3:7,10 9:14 10:3
   38:13,17
**bac** 57:4 60:24
   61:2
**bachelor's** 13:8,11
**back** 11:17 21:3,5
   21:5 24:17 43:25
   44:11 46:24 47:25
   55:14 56:8 71:18
   82:2,3
**bailee** 3:14 53:6,7
   53:9,15,16 54:11
   54:17,22
**balance** 34:14
**balances** 45:1
**bank** 1:7 3:15 4:8
   7:9,11,11,11,13,13
   7:13 8:1,11,12,21
   9:2,9,17 10:9,12
   10:16,19 11:9
   16:15,23 17:3,8,23
   18:11 19:5,15
   21:22,25 25:18,21
   25:25 26:17 27:1
   27:7 29:10,10,17
   29:18,24 30:6
   31:4,22 32:9,16
   33:3,6,21,25 34:5
   35:8,14,19,25 36:9
   37:10 38:4 39:10
   39:20 40:4,15
   41:20 42:15,19,19
   43:6,10 44:2 45:6
   45:9,13,16,25 46:6
   46:10,12,13,18,25

47:2 49:10 50:1
50:16,24 51:8,25
52:24 53:2 54:5
55:7,10 56:19,23
57:5,22 60:24
61:2 62:17,22,24
63:2,12,22 64:3,8
64:9,16,19,24
66:12,12,18,21
67:1,9 68:8,9 69:5
70:9,9,12,13 71:25
72:3,3,4,6,6,7
73:18,25 74:1,3,6
74:13,18 80:6
**bank's** 11:21
**banking** 19:24
   20:8 80:16 81:10
   82:6
**based** 56:2 61:13
   67:6 78:4
**basing** 64:7
**bates** 54:25 55:2
**bath** 13:13
**bayview** 8:7,24
   11:4 14:8 15:20
   16:1,20 18:11
   19:23 22:10 23:2
   23:3 24:12 33:21
   37:11 41:23 43:5
   47:8 60:18 62:2
   64:18
**bayview's** 23:9
   44:25 66:9 67:22
**bearer** 48:22
   51:16
**behalf** 7:9 8:12,24
   9:2,17 10:19 11:5
   32:19 33:4 64:20
   64:23 66:21 74:18
**believe** 6:12 25:23
   33:9 37:14 39:13

| | | **c** | **checks** 45:1 |
|---|---|---|---|

42:18 61:1 71:7
74:16 75:23 81:22
82:18
**beneficiary** 28:3
51:18
**best** 4:22 5:20 6:8
**beyond** 20:2,11
31:7,10 33:9
39:13 40:7,18
41:15 46:16 50:4
69:9 76:21 80:19
80:25 81:6,8,12
**bit** 57:25 77:7,13
**blank** 2:7 9:11
10:3 29:15 48:3
48:17,21 49:12,13
49:20 51:14,15
53:3
**blankrome.com**
2:10
**bnymellon** 55:3
**bold** 63:19 64:1
78:11
**bond** 48:22 51:16
**bony** 29:17
**booklet** 6:23
**borrower** 55:5,6
55:16,24 56:5,16
58:17 59:7,18,19
66:10 69:17 72:3
72:3,5 79:10
**borrower's** 57:9
**borrowers** 72:21
**bottom** 52:19
54:25
**breach** 63:13,20
63:23
**break** 5:8,9 47:23
**brodowski** 2:8
8:14,16 10:3,11,14
11:3 12:3,3 14:2

15:14 16:16,25
17:5,25 18:12
19:17 20:1,5,10,19
20:24 21:9,12,18
21:23 22:20 23:1
23:18,25 24:7,22
25:2,10 26:7,20
27:4,13 28:11
29:2,13 30:2,8,13
31:6,10,19,25 32:6
32:15,22 33:8,23
34:7 35:11,16
36:4,21 37:19,23
38:6,10 39:1,12
40:1,6,10,17,24
41:9,14 42:17,24
44:4,24 45:19
46:3,8,15,21 49:1
50:3,10,14 51:4,10
51:19,24 52:10
54:3,12,18,21 55:4
55:9 56:4,22
57:11,19 61:16
62:14 64:12 65:3
65:16,19 67:3
69:8,24 70:23
73:5,11,21 74:11
74:15,24 75:5
76:20 77:3,16
78:24 79:9,18,22
80:18,24 81:4,11
81:14,21 82:2,8,15
**buchall** 23:13
**bunch** 50:19
**business** 12:8 13:1
15:16 19:24 20:9
36:6 68:19 70:16
75:2 80:16 81:10
82:6

**c** 2:1 3:11 26:22
48:7
**calculated** 35:14
35:18
**call** 34:22 57:2
59:13,16,18 76:11
**called** 59:16 60:5
**capacity** 8:3
**car** 5:22,24
**carefully** 4:13
**case** 12:1 18:25
20:22 23:22 24:24
25:14,16 26:4
31:14 35:5 39:21
45:12,22 47:4
48:20 56:19 66:14
69:18 70:10 72:12
74:23
**cases** 7:20,23
62:21 73:20 74:1
**cashier** 42:7
**caught** 5:5 12:1
**ccr** 83:22
**center** 42:6
**central** 12:11
**certain** 9:6,18
49:25 71:5
**certainty** 63:15
**certificate** 14:24
83:1
**certified** 1:15
44:15 47:13 83:3
**certify** 46:19
47:15 83:5,9,13
**chain** 75:10,13
**change** 18:10
**charges** 78:19
**check** 34:14 42:7
71:18

**checks** 45:1
**chester** 12:22
**chose** 74:13
**citibank** 53:24
54:1,2
**civil** 1:2,3 19:15
**claim** 33:3,14 34:1
**claimed** 36:3
**clarify** 54:21
62:15,15
**clearly** 7:4
**client** 20:15 40:9
**code** 6:22
**collateral** 3:14
53:5,7,11,20 54:6
54:10 58:13
**college** 12:19,20
12:25 13:7 16:20
**come** 21:5 24:17
30:11 42:1 43:25
50:8,9,11 62:19
72:21
**comes** 42:2 70:17
**coming** 72:2
**commencement**
83:6
**commencing** 1:19
**commercial** 23:6,9
**communicate** 79:8
**company** 8:24
11:6 14:6,8 15:15
15:17 53:12,12
59:18 74:16
**complaint** 3:15
62:9,15,17,24 63:3
63:6
**complete** 6:14
77:13
**completely** 56:15
**completion** 14:24

compliance  45:7
45:10,13 46:13
62:3,6
compliantly  46:1
computer  15:9
34:25 47:8 57:24
58:11,25 59:9
69:2
concerning  66:25
concluded  82:20
concludes  82:19
condition  6:7 46:2
69:6
conducted  14:21
confirmation  15:6
59:8,24
confirmed  56:14
confirming  56:20
connection  76:16
consequence
41:12
consider  34:21
considered  31:17
constantly  71:19
constitute  57:17
80:13
contact  16:9,12
69:19 71:19
contained  67:8
content  14:17
17:22 62:12 63:10
context  19:22
54:10 78:16
contract  63:14,20
63:23
contrary  65:9
controls  42:12
conversation  19:2
58:22 59:22 60:10
60:14,17 71:23
72:2,4,6

conversations
61:12
conversion  56:12
58:5 70:6
convey  27:10
conveyance  33:1
conveyed  30:6
convicted  19:8,11
convictions  19:15
coordinator  18:16
18:20,24 19:3
26:11
copied  59:25
copies  47:15 56:25
58:4,13,16 60:3
68:20,22 70:5,5
copy  11:18 26:25
28:1,14 56:6 58:7
58:24 60:7 69:17
71:21 77:19,21
corporate  16:14
corpus  39:11
40:23 41:8
correct  10:6 11:1
11:15 18:21 19:4
30:21 32:11 35:1
47:17,18 54:19
60:1 65:24 68:12
69:3,4 70:11
74:14 76:10 79:14
correctly  65:13,15
65:21
correspondence
56:20 58:22,23
61:7 68:23 71:10
counsel  4:10 7:1
11:25 12:2 16:1,3
30:24 73:13,17
83:14,16
count  63:18,19
64:1

counter  33:11
country  37:9
49:10,11,12,13
52:22,23,23,24,24
53:2,2,3,13,25
54:9 57:5 60:23
61:2
county  64:1 71:6
course  13:25 15:3
27:17
courses  14:15,17
14:21,23,23
court  1:1 4:15
21:11 62:18 63:3
68:5 81:7,20
cover  9:10
craft  16:12
create  60:11
credibility  6:19
credit  21:16
credited  41:25
crime  19:12
criminal  19:14
cure  44:12 78:17
cured  79:12
current  12:7,8,10
15:19,21 16:23
30:4 55:16 64:18
customer  22:10
59:3,13 78:4
cutoff  40:21 41:4

**d**

d  3:1,12 27:23
38:17,20,20
d'orlando  1:7 3:2
4:1 12:10 83:6
damages  64:2
dame  12:15
date  3:10 9:11,14
10:4 13:4,17
22:15,18,23 24:15

24:16,17,18 37:2
47:5 58:16 66:16
66:23 76:14 83:12
dated  43:12 83:23
dates  12:20 14:15
32:2
days  44:21 60:6
deadline  40:21
41:1,4,8 80:4
deal  54:5
december  63:4
67:2
deceptive  64:2
decide  34:6
declaration  35:6
declare  75:18
declared  12:24
35:10
default  3:17 21:21
22:16,24 23:16,20
24:5,12 33:6 34:6
34:15,21,23 35:6
35:10 36:15,20
43:18,24 44:3,8,15
44:23 45:3,10,18
45:22 46:1 47:9
66:1,8,14,17,19,24
75:18,19 78:1,8,12
78:17,17 79:1,2,7
80:5,8,12,13
defendant  1:9
2:10 4:7 7:9,11
10:9 23:22
defendant's  42:23
44:1 62:10 63:7
defendants  63:21
defenses  63:21
deficiency  35:13
35:17,20,21 36:3
define  44:8 55:13
55:18,19,22

**[definition - example]**

Page 5

definition 4:19
degree 13:6,8,11
13:14
degrees 13:9,12
demand 44:10
80:12,13
demanded 79:16
department 26:13
34:2 45:4 62:5,6
depending 59:17
depends 71:16
deposed 7:17
deposited 40:22
41:7
deposition 1:6 3:9
3:10 6:18,21,23
9:7,12,13,14,19,20
9:25 10:23 11:2
11:12 20:3,11
22:4,6 25:1 82:19
depositions 11:5
16:1
describe 15:24
41:23 49:18 76:18
77:9
described 42:22
43:3 57:6
description 3:8
design 13:13
designated 8:11
8:21,23 73:24
74:17
details 21:1 60:13
77:18
determine 34:10
34:15 36:14,17
44:2,23 45:17
determined 21:21
36:9
dialogue 20:24

different 11:6
27:18 34:16 42:12
57:10 61:23 77:24
direct 2:3 4:3
director 16:14
disagree 31:17
disbursements
76:11
disciplined 16:21
disclose 8:16
disclosure 67:9
discover 31:13
discovery 17:2,7
17:12 18:10 25:19
25:25 46:19 47:13
47:14,19 73:22,25
74:1 81:15
discuss 62:19
74:23
discussed 24:20
25:14 59:25 74:22
discussion 47:24
78:7 82:1
disproving 65:10
district 1:1,1 63:3
ditec 37:11
division 23:6,7,8,9
23:10
document 9:21,22
11:14 26:24 27:5
27:25 36:19,19
38:1 55:1 59:20
60:3,18 62:20
63:5 65:20,22
71:16 72:12 75:20
77:17
documentation
16:3
documents 9:16
17:20 18:5,6 22:2
22:5,9,12 28:12

29:10 30:17,18
36:13 46:10 51:12
51:13 56:25 58:5
58:12,17 59:7,14
65:18 67:7 68:4
68:10,12,14,17
69:17 70:6,19
71:2 73:20 74:7
75:16 77:10,21
doing 6:18
dormant 48:17
52:22
drive 12:11
due 44:11 55:14
75:23 76:2,8,12
78:19
duly 4:1 83:7
duplicate 4:9
duties 15:24 47:2
74:9
duty 5:2

**e**

e 2:1,1 3:1,7,13
15:6 48:10,12
52:8 58:23
earlier 22:6 81:14
easy 52:16
eight 64:1
either 23:5,8 53:25
73:2
elected 52:11
employed 22:15
22:18,23 23:2
24:11
employee 8:5 46:6
83:14,16
employees 52:20
employer 15:19,22
16:18,22,23 23:3
endorsed 29:15
48:5,17,21 51:14

52:20 53:3
endorsement 48:1
48:3,4,16
endorsements
52:18
enforce 32:5
ensure 74:22
entailed 14:7
enter 59:10
entered 42:10
59:23 60:1 70:8
entities 27:18 52:1
52:19
entitled 1:14 6:12
entity 7:14 33:22
entry 35:2 76:15
envelope 43:18
60:7
es 1:2,3
escrow 42:13
esq 2:8
establish 45:17
estate 31:5,15,18
estimate 5:20,20
5:23 6:4 33:20
et 1:8 63:2
evidence 23:19
24:2 30:15 31:14
50:1,5 51:8 65:8,9
65:10,11,12,14
67:4 77:4
ex 60:7
exact 14:14 24:16
35:23 44:18 66:16
81:22
exactly 23:7 79:21
examination 3:3
4:3 83:6
examined 44:1
example 5:21
34:17

**exchange**  76:15
**excuse**  28:17
  63:21
**exhibit**  3:9,10,11
  3:12,13,14,15,17
  9:13,14 10:3
  11:12 26:22 27:23
  38:13,17,17,20,20
  48:7,10,12 53:6,7
  53:9 54:23 62:24
  63:1 78:8,10
**exists**  73:10
**expect**  68:10
**expected**  24:21
**experience**  11:7
  34:9,18 57:12,20
  57:21 71:9 72:18
  72:19
**experienced**  16:5
**expertise**  20:23
**explain**  32:13
  64:15 78:15

**f**

**f**  3:14 53:6,7,9
  54:23
**facts**  5:21 23:19
  24:2 45:17 50:5
  66:25 67:4 75:22
  76:8 77:4
**familiar**  9:21
  11:14 15:16 17:7
  54:16
**far**  43:4 47:9 58:2
  65:4 69:3 72:1
  76:2
**fed**  60:7
**federal**  62:18
**felony**  19:9
**file**  22:9 47:7
  57:19 58:10,11
  60:1,20,21 61:8

66:11 67:8 68:11
  69:1,22 77:11
**filed**  62:9,18 63:3
  63:7 64:9 68:3
  71:5
**files**  49:25 80:11
**final**  56:15 58:4
**finance**  27:22 28:5
  29:3 51:22
**financially**  83:17
**find**  76:1
**finish**  4:14
**first**  3:14 24:13
  34:5 43:7 53:5,7
  53:11,20 54:6,10
  57:13,15,16 59:20
  61:5
**five**  16:19 47:23
  63:18,19
**fixed**  48:16
**floor**  2:4
**follow**  57:6 58:23
  59:23 60:9,15
  64:25 66:13 72:5
**followed**  27:9
  42:23 64:11 65:7
**following**  43:1
**follows**  4:2 46:6
**foreclose**  78:13
  80:3
**foreclosure**  3:17
  7:24 8:4 18:16,19
  18:24 19:3 22:11
  32:5 45:3 46:14
  61:15,18 64:8,10
  64:25 78:9 79:6
**foregoing**  83:9
**form**  8:14,15
  10:11,14 11:3
  14:2 15:14 16:16
  16:25 17:5,25

18:12 19:17 20:1
  21:18,23 22:20
  23:1,18,25 24:5,22
  25:2,10 26:20
  27:4,13 28:11
  29:2,13 30:2,8,13
  31:6,19,25 32:6,15
  32:22 33:8,23
  34:7 35:11,16
  36:4,21 37:19,23
  38:6,10 39:1,12
  40:1,6,17,24 41:9
  41:14 42:17,24
  44:4,24 45:19
  46:3,8,15,21 49:1
  50:3 51:4,10,19,24
  52:10 54:3,12,18
  55:9 56:4,22
  57:11,19 59:23
  61:16 64:12 65:3
  65:16,19 67:3
  69:8 70:23 73:5
  73:21 74:11,15,24
  75:5 76:22 77:3
  77:16 78:24 79:9
  79:18,22 80:18,25
**formal**  73:22
**forth**  57:3 61:6
  81:24 83:12
**forward**  34:16
  44:14 45:5 55:16
  79:5
**fraud**  63:13 64:2,4
**front**  39:8 63:5
  75:21,25
**full**  12:6 79:17
  80:2
**fully**  4:24 5:16
  46:20 59:12
**fund**  19:25 20:9
  21:7 80:16,22

81:10 82:6,13
**funded**  50:2,7
**funding**  76:19
**funds**  21:6,16 50:8
  50:9,11,12 54:1
  76:15 80:21 81:19
  82:12
**further**  83:9,13

**g**

**g**  3:15 62:24 63:1
**general**  4:11 37:5
**generally**  44:20
  47:21 61:11 67:22
**generate**  77:19
**generated**  77:19
  77:21
**give**  4:22 6:4 11:17
  11:18 12:8 15:2
  25:13 34:17 77:7
**given**  55:24 75:17
**gives**  44:12 48:4
**giving**  6:8
**go**  6:22 20:14 21:3
  21:5 42:6 47:23
  58:13 59:18 77:18
  81:25
**goes**  42:5,6 69:13
  78:2
**going**  20:14 21:4
  60:6 73:16 79:5
  80:3,20
**good**  4:4 12:1
**governs**  41:12
**graduate**  12:16
  13:2,4
**ground**  4:11
**guess**  22:11 52:5
  62:3 71:16
**guidelines**  44:22
  61:18

**h**

**h** 3:7,17 78:8,10
**hammer's** 20:12
  81:15
**hand** 20:22 27:6
  36:18
**handle** 26:14
  35:25 62:2 64:21
**handled** 29:1
  36:24 71:24
**handles** 26:13
  62:7
**handling** 6:22
  64:11 65:1
**happen** 33:18 41:6
  56:1 71:2,12
  72:11,17,18
**happened** 30:5
  32:14 56:19
**happens** 41:3
  71:15 72:10
**happy** 38:2 77:18
**hard** 72:8
**header** 53:10
**hear** 7:4
**hearing** 6:19
**heartland** 27:21
  28:4 29:3 51:22
  53:12,25
**held** 1:17 47:24
  78:7 82:1
**help** 16:2 44:14
**hereinbefore**
  83:12
**high** 12:13,15,16
**highest** 13:6,9
**hills** 2:5
**hire** 50:20
**history** 22:8 34:19
  58:18 70:2 76:3,4
  76:6,13

**holder** 29:15 30:4
  51:11,14 77:1
**holding** 48:22
**holds** 22:8
**home** 27:21 28:5
  29:3 49:11,13
  51:22 52:24 53:2
  53:3,13
**honest** 5:3
**honestly** 39:19
**hood** 5:22
**huh** 47:10

**i**

**idea** 43:22
**identification** 9:15
  26:23 27:24 48:11
  53:8 62:25 78:9
**identify** 6:17
  12:13 13:20,25
  14:20 16:8,18
  22:2 24:19 36:19
  75:3,6,12,16
**identity** 75:17
**image** 58:7,14,24
  59:23,25 60:2
  70:1
**imaged** 58:4,13
  60:8 70:18
**images** 68:22
  77:11
**imaging** 22:8 57:1
  60:20 77:20,22
**imaxdirect.com**
  2:5
**immediate** 16:8,11
  23:11
**impeach** 6:18
**imposed** 46:2
**impression** 25:7
  25:14

**included** 75:13
**including** 16:22
  19:6 75:4
**incorporation**
  19:6
**individual** 1:4
  59:17
**influence** 6:6
**information** 5:15
  5:19 6:3 10:25
  16:9,12 25:8,15
  42:3 44:14 58:2
  69:19 76:1
**initial** 59:22
**inspection** 30:23
**instance** 59:1 60:4
  72:20
**institution** 13:10
**instructing** 20:5
  40:8
**instrument** 77:2
**insurance** 33:3,14
  42:13 76:9
**intent** 22:7
**intention** 3:17
  78:9,12
**intentionally** 25:8
  25:15 73:19
**interest** 70:4 76:9
**interested** 83:17
**interior** 14:19
**interrogatories**
  17:23 25:20 26:3
  26:14
**interrogatory**
  11:21 17:14 25:21
**investor** 53:13
**involved** 18:14
  33:22 50:17 52:8
  54:9

**involvement** 54:14
**involving** 19:12
**items** 74:21

**j**

**j** 1:4
**james** 1:7 3:2 4:1
  12:10 83:6
**jennifer** 16:11
**jersey** 1:1,17,18
  2:5 8:17 35:9
  44:19 46:2,14
  61:14,18 74:9
  83:4
**jfk** 2:4
**job** 8:8 15:21,24
  26:2,9,13 47:2
**join** 73:25
**judge** 20:12 81:15
**july** 78:14 83:23
**june** 1:19 10:4

**k**

**keep** 11:18
**keeping** 70:17
**kept** 30:23 57:23
  58:11
**kind** 16:2
**kitchen** 13:13
**know** 4:10 5:16,16
  5:22 10:15 13:5
  16:12 18:15,17
  19:1,7,19 21:13,14
  21:19,20,24,25
  23:7 24:15,16
  26:15,21 27:1,16
  28:20 29:9,21,22
  29:24 30:5 31:20
  32:1,2,4,16,20,25
  33:14,17,17 34:1,2
  34:4,8 35:5,8,12
  35:13,21,22 36:2,8

36:11,13,16,23
37:1,2,4,17,18,21
38:4 39:5,17 40:3
40:19,25 41:1,5,10
41:17,18,18,21
43:4,9,14,21,23,23
44:7,18,20 45:8,11
45:12,15,20,21,24
46:9,12,17 47:1,4
47:6 49:22 50:6,7
50:8,9,11,12,23
51:5 52:2 53:23
54:4,8,14 55:21
56:13 58:18 60:12
60:23 61:5,17,19
62:4,22 63:15
65:4,5,17,20,23
66:7,13,16,18,22
66:24,25 67:7,13
67:19,19 68:3,6,14
68:18 69:19 70:13
72:1,15,23 73:2
74:4,5,5,6,8 76:23
77:5 81:21 82:11
82:17

**knowing** 37:2 47:5
66:23

**knowledge** 4:12
5:21 20:22 25:24
30:20 39:4 56:3
61:14 73:6

**knows** 40:11 41:16
82:10

**l**

**late** 41:13
**lauren** 53:1
**laurie** 49:16
**law** 35:9 46:2
**laws** 14:19 46:14
61:21,25 62:8

**lawsuit** 15:13 21:8
80:23 82:14

**ledger** 76:14
**left** 77:12
**legal** 15:18 19:6
27:17 31:21 44:14
49:2 65:21

**lehigh** 13:16
**lender** 28:4 51:21
**length** 5:22,24
**letter** 3:14 9:10
10:2 44:10,11
47:9 53:6,8,9,15
53:16,17,25 54:11
54:17,22 58:6,23
59:24 60:15 66:24
71:10 72:5,12,15
80:5,12,13

**letters** 44:15 56:20
72:20,21

**liaison** 15:25
**license** 83:4
**licensed** 59:17
**lie** 4:24
**limiting** 81:15
**list** 20:12
**listed** 39:21
**listen** 4:13
**litigated** 73:20
74:1

**litigation** 8:9
15:23 16:4,5
19:21,23 22:11
25:19,25 26:10,13

**little** 7:12 15:2
57:25 77:7,13

**livingston** 1:18
**llc** 15:20
**llp** 2:7
**loaded** 70:18

**loan** 8:7,24 11:8
15:20 19:24,25
20:8,9 21:7,15
22:12 23:7,9
27:11,19 28:2
34:6,14,15,23
36:14 39:3 44:23
45:2,18 47:7 50:2
50:19,21 53:18
54:1 55:6,7,15,22
55:25 56:6,7,25
57:23 58:10 59:16
60:5,19 61:4,10
64:11,21 65:1
67:1,5,8 68:3,10
68:13,16,23 69:3,6
69:12,22 70:4,7
71:2,7,17,23 75:18
76:16,19,25 77:10
77:21,24 80:16,17
80:22 81:10,10
82:6,7,13,13

**loans** 11:6 27:17
42:20 49:11,13
52:6,7,24 53:2,3
53:13,25

**local** 15:25 16:2
29:11 30:24 71:5

**log** 35:2
**logan** 2:8
**logged** 43:12
**long** 14:11
**look** 11:11 34:21
42:7 46:24 65:20

**looked** 76:5
**looking** 28:12
**looks** 49:19 52:11
**lost** 70:14,21 71:1
71:3,10,12,24
72:12,12

**lower** 55:17 58:18
**lunch** 5:9
**lying** 5:5

**m**

**m** 2:8 52:8
**mah** 1:2,3
**mail** 15:6 42:5
44:16 58:23 70:25
71:12

**mailed** 43:18 66:3
66:7,14,15,15 78:4

**major** 12:24
**management**
69:15 77:23 78:3

**manager** 8:9
15:23 19:21,23
23:10 69:16

**managing** 16:15
**manner** 57:10
**marked** 9:15
26:22 27:23 48:10
53:8 62:25 78:9

**marketing** 13:1
**matter** 1:14 6:4
26:19

**matters** 9:6,18
16:6

**max** 2:3
**mean** 28:20 30:9
46:24 70:16 79:3
79:20,23

**meaning** 4:23
**means** 55:21 80:1
**mechanism** 30:6,9
**mediations** 16:2
**medication** 6:7
**meete** 49:16 53:1
**meetings** 11:5
**mellon** 1:7 3:16
4:8 7:10,11,13,14
8:1,11,13,21 9:2

10:13,17,20 11:9
16:15,23 17:4,8,24
18:11 19:16 21:22
21:25 25:18 29:11
29:17,18,25 30:7
31:4,22 32:10,16
33:4,7,21,25 34:5
35:8,15,20,25 36:9
38:5 39:10,21
40:5,15 41:20
42:16,20 44:2
45:6,14,16,25 46:6
46:11,12,18,25
47:3 50:2,16,25
51:9 54:5 55:8,10
56:23 62:18,25
63:2,13,23 64:4,9
64:9,17,19,25
66:13,19,21 67:9
68:8 70:9,12
73:19,25 74:2,3,6
74:13,18 80:7
**mellon's** 19:5
**memorializing**
60:16 72:5
**memory** 38:3
**mentioned** 11:12
44:17 81:7
**mers** 52:8,11,14
54:9 76:24
**mers's** 54:14
**met** 18:24
**methodology**
42:16
**methods** 77:9
**michelle** 49:14
**mind** 47:22 54:24
**minutes** 47:23
**miranda** 60:13
**misplaced** 70:15

**mistakes** 71:1
**mlo** 59:16
**mod** 77:24
**modification** 55:8
55:13,14,22,25
56:6,7,21 57:1,14
57:17 58:15 59:2
59:16,21 60:6
61:4 67:1,5 68:7
68:11,13,16,24
69:3,13,21 70:3,8
71:2,8,17,23 77:21
**modifications**
55:11
**modified** 56:15
**modify** 6:16 55:5,6
57:9 69:5
**modules** 14:12
**moment** 56:18
**months** 56:9
**moral** 19:12
**morning** 4:4
**mortgage** 3:12
22:7 26:18 27:23
28:1,3,7,9,14,15
28:17,23 29:4,7
31:17 32:9,21
34:22 38:12,15,16
38:21,24 41:7,24
42:11 52:9 53:12
53:12,19,22 54:1,7
73:4,14,16 76:16
76:25 79:16
**mortgages** 32:17
50:20 74:10
**mouth** 35:3
**move** 24:18 34:16
45:5 55:16 79:5
**moved** 45:3
**moving** 44:14

**msb** 57:2
**msp** 58:2,15
**mt** 1:18
**mvd** 77:23

**n**

**n** 2:1 3:1
**name** 4:4 12:6
15:18 18:17 31:1
37:8 69:19 75:16
**nature** 7:23
**need** 4:10 5:8 8:16
16:3 17:9 24:17
45:5
**needed** 5:9
**needs** 79:11
**neither** 83:13,15
**never** 19:2 24:4
71:1,11,24 72:8,9
72:22 81:2
**new** 1:1,7,17,18
2:5 3:16 4:8 7:9
7:11,13,13 8:1,11
8:13,17,21 9:2,9
9:17 10:12,16,19
11:9 16:15,23
17:3,8,23 18:11
19:5,15 21:22,25
25:18,21,25 26:17
27:2,7 29:10,17,18
29:25 30:7 31:4
31:22 32:10,16
33:4,6,21,25 34:5
35:8,9,14,19,25
36:9 38:4 39:10
39:20 40:4,15
41:20 42:15,19
44:2,18 45:6,9,13
45:16,25 46:2,6,11
46:12,14,18,25
47:3 50:2,16,24
51:9,25 54:5 55:7

55:10 56:19,23
57:3 60:24 61:14
61:18 62:17,22,25
63:2,12,22 64:3,9
64:9,16,19,25
66:12,18,21 67:2,9
68:8 69:5 70:3,4,9
70:9,12 73:19,25
74:1,3,6,8,13,18
80:6 83:4
**no.15-8486** 1:2
**nominee** 52:12,13
52:15
**normal** 14:5
**north** 2:9
**notarized** 58:4
70:5
**notary** 1:16 71:4
**notate** 69:23
**note** 3:11 21:17,21
26:18,22,25 27:3
27:11,12,20 28:8
28:10,14,16,17,23
29:5,12 30:1,4,6
30:12,23 31:16,23
32:8,21 33:6
35:10 37:13 40:15
41:6,24 42:4,8,9
42:23 44:1 48:2,5
48:6,14,16,19,22
48:25 49:3 50:17
50:19,25 51:1,3,9
51:11,15,15,17,20
52:6,8,17,20,22
53:19,21 59:3
60:11 68:8 69:6
72:24 73:3,10,15
75:4,7,10,19 78:16
79:16
**noted** 58:15,15
69:22

**notes**  1:13 22:10 29:15 32:17 39:11 39:24 59:9,9 60:14 61:12
**notice**  3:9,10,17 9:7,11,13,14,19,20 11:11 22:7,16,24 23:16,20 24:5,12 43:17,24 44:8 45:10,22,25 65:25 66:10,14,19 78:1,8 78:12 79:7,15,25 80:1,8
**notified**  56:17
**notre**  12:15
**novation**  55:18,20 55:20,21,25 57:17
**number**  4:13 12:8 12:9 54:25

**o**

**oath**  25:19 26:1
**object**  10:14 14:2 16:16,25 17:5,25 19:17 21:18,23 22:20 23:1,25
**objected**  81:5
**objecting**  20:21 24:5
**objection**  8:14 10:11 11:3 15:14 18:12 20:1,2,10 21:9 23:18,19 24:1,1,22 25:2,10 26:7,20 27:4,13 28:11 29:2,13 30:2,8,13 31:6,7 31:19,25 32:6,15 34:7 35:11,16 36:4,21 37:19,23 38:6,10 39:1,12,13

40:1,6,17,18,24 41:9,14,15 42:17 42:24 44:4,24 45:19 46:3,8,15,16 46:21,22 49:1 50:3,4,5 51:4,10 51:19,24 52:10 54:3,12,18 55:9 56:4,22 57:11,19 61:16 62:14 64:12 65:3,16,19 67:3,4 69:8,9,24 70:23 73:5,11,21 74:11 74:15,24,25 75:5 76:20,21,22 77:3,4 77:16 78:24 79:9 79:18,22 80:18,19 80:24,25,25 82:8 82:15
**objections**  8:18 50:10,14
**obligated**  67:17
**obligation**  10:18
**observe**  65:25
**obtain**  16:3 26:17 29:18 30:11
**obtained**  27:2 29:20,25
**obviously**  30:3
**occurred**  36:20
**offer**  14:24 56:21 57:9,18 59:10
**offered**  67:1 69:4
**offhand**  13:5 14:22 16:13 19:1 19:18 24:15 26:16 29:9,23 33:19 34:8 35:7 36:10 36:12 37:3,17,24 43:23 44:20 45:23 47:6 50:6,23 52:3

53:23 66:24 75:15 75:20 77:5
**office**  1:17
**officer**  16:14 45:13
**official**  18:22 71:7
**officially**  59:21
**okay**  4:12,17,21 5:1,10,14,18 6:5 6:15,20 7:6,16,25 8:5,19 11:7,17 12:5 15:10,18 20:7 21:3 23:3,11 25:13,18 27:9,19 28:6 29:4,8 31:22 32:8 34:24 36:8 36:18 37:16 38:4 38:25 39:20 40:3 40:12 41:21 42:15 44:22 48:24 50:1 51:2 53:4 54:20 57:8,15,21 59:22 60:21 61:7,13 62:4,21 63:17,22 63:25 65:14 66:25 67:19 70:7,21 71:9 73:9 78:22 79:7 80:14 81:25 82:18
**omit**  25:8,15
**once**  52:16
**online**  14:22 15:3
**operates**  15:17
**operative**  63:6
**opposing**  7:1,1
**order**  20:12,17,25 21:4,11 28:24 48:24 49:5,9,10,13 49:20 59:2 68:5 81:7,15,20,24

**ordinarily**  25:19
**ordinary**  49:23
**original**  28:3 51:18,21,23 58:12 72:23,24 73:3,10 76:25
**originally**  37:9
**originate**  21:6 80:21 82:12
**originating**  81:19
**origination**  32:8
**originator**  27:11 27:19,21 28:2
**outside**  14:5 70:18
**owe**  80:2
**owed**  44:12,13
**owing**  76:13
**owned**  23:21
**owner**  29:15,16 30:4 51:1 52:5
**ownership**  27:10 48:19,20,23
**owns**  29:11 51:9 51:16

**p**

**p**  2:1,1
**p.m.**  82:20
**page**  3:2,8 63:18 63:25
**paid**  48:24 49:5,9 49:10,12,19 50:13 79:4,17
**paper**  57:23 58:11
**papers**  56:20
**parkway**  2:4
**part**  24:13 55:1 58:14 77:10
**particularly**  24:23
**parties**  52:16 75:3 75:6,12,13 83:15

party 31:24 48:5 52:15 74:2 76:15
pass 15:5
passed 15:7
patricia 1:15 83:3 83:22
pay 80:2
payable 78:19
payment 22:7 33:5 34:19 35:13,17,20 36:3 41:24 42:1,4 42:4,6,8 55:17 57:13,15,16 58:18 58:19 59:22 61:5 70:2 76:3,4,5,13 78:18 79:16
payments 34:20 36:7 42:12,14,21 42:23,25 43:5,8,12 44:11 45:2 55:15 56:10,10 75:24 76:2 79:11
payoff 76:12
penalties 19:15
penalty 4:23
pennsylvania 2:9 12:11
perfected 38:9
perform 47:2
performed 39:4
period 44:12,17,18 56:8 58:19
perjury 4:23 5:6
permanently 43:17
permissible 20:13
permission 45:22
permitted 20:2,11 20:16 31:7,11 33:10 39:14 40:7 40:18 41:15 46:16

50:4 69:9 80:19 81:1
person 4:7 7:8 11:1,8 14:21,23 21:15 23:16,23 32:4 49:2 60:11 61:15 64:6 68:1 75:17
personal 61:13 73:6
personally 65:25 73:3
persons 24:19
philadelphia 2:9
phone 12:8,8 42:2 42:3
place 12:1 45:24 53:18 55:8 70:14 71:4,8 72:11 78:5 83:12
placed 58:10,25
plaintiff 1:5 2:6 4:5 8:25 43:19 70:8 73:2 74:20
plaintiff's 30:1
plaintiffs 67:1,10 68:4 72:25
plan 59:21
platform 34:22,24 42:12
play 50:25 51:2 52:13
pleasant 1:18
please 7:3 11:11 12:6,13 13:20,25 15:11,24 16:8,18 19:5 23:22 28:12 41:23 49:15 54:25 55:18 62:15 71:20 80:2

plus 78:18
point 23:8 32:10 61:1
policy 78:4
pool 39:11,23,24 40:5 52:6
pooling 40:20 41:11
position 23:4 29:14
possess 10:25
possessing 32:21
possession 30:24 32:11 73:9,14
possible 72:17
power 64:20,22,24 72:7
practice 73:18
preparation 22:3
prepare 77:10
prepared 10:22 66:1,19 74:23 77:14
prepares 66:21
presently 30:22
pretty 22:14
prevent 6:8
previously 7:17 9:23 52:21
principal 56:11 75:24 76:8
printed 55:3
prior 6:16 36:16 36:24 37:4,6 39:2 40:14 83:5
privilege 25:3 74:25
pro 2:6
probably 13:18
problem 21:4

procedure 27:9 34:18 35:22,23 43:1,2,11 45:7 57:6 58:8,24 64:8 64:10 66:9,13 71:14
procedures 14:19 34:16 45:24 70:14 72:10 78:5
proceed 16:3
proceeding 7:15
proceedings 1:14 8:4
proceeds 33:5
process 6:25 32:14 42:3,22 43:8 56:3 56:13 60:25 69:12 71:4 78:2
processed 41:24
produced 18:6
production 17:19 18:5 67:16,21
profession 78:15
professional 14:1 32:13
proffered 54:22
program 34:25 46:13
programs 14:1
promissory 3:11 26:18,22 27:3 30:1,12,22 37:13 48:2,5,16,25 68:8 69:6 72:23 73:3 73:10 75:4,7,10
proof 68:17
proper 4:25 78:25
property 22:16,24 23:21 73:15
prosecuted 5:6

**protective**  68:5
**protocol**  55:7 58:7
 64:8,10 65:1,7
 73:18
**prove**  29:11 65:21
 76:8
**proves**  65:14
**provide**  6:13
 56:24 67:16,18,18
 67:22 69:16 75:22
**provided**  47:14
 53:17 67:8,12,14
 76:18 78:3
**provides**  44:14
**proving**  65:11,12
**provision**  41:11
**public**  1:16
**pull**  20:17
**pulls**  76:13
**punitive**  64:2
**purchase**  50:22
 54:1
**purchased**  30:14
 50:18 52:17
**purchases**  32:17
**put**  28:24 35:2

**q**

**qualified**  4:7
 15:12 61:15
**qualifies**  11:1
**question**  4:14,14
 4:18,19,25 6:11,12
 21:7 24:8 25:12
 31:21 39:18 46:25
 53:22 54:7 55:23
 63:4 65:1 76:19
 80:22 81:19 82:3
 82:14
**questioning**  4:6
 7:8

**questions**  20:15
 31:12 41:19 80:14
 81:17
**quicker**  7:12
**quotes**  49:5

**r**

**r**  2:1 52:8
**rate**  58:3 70:4
**rcs**  3:17 37:10
 78:8,14 79:7
**reach**  12:7
**read**  4:8 11:21
 22:3 48:12 49:7
 52:18,21 53:10
 54:25 60:12 62:9
 63:6,19 64:1
 78:10
**reading**  6:22
**real**  31:5,14,17
 73:15
**really**  49:24
**reason**  82:16
**reasons**  81:24 82:9
**recall**  7:19 14:20
**receive**  14:6 56:6
 71:20 72:13,14
**received**  13:6,10
 21:16 37:22 39:6
 41:3,7 42:4,8
 43:13 61:5 71:1
 71:24 72:8,9,22
**recognize**  8:17
 26:24 27:25
**recollection**  70:22
**record**  4:16 5:11
 6:17,25 29:16
 31:2 47:12,23,24
 47:25 49:8 55:1
 66:10 70:17 76:16
 78:6,7 81:25 82:1
 82:2,4

**recordation**  28:19
**recorded**  5:13
 22:19,21,25 23:17
 23:20 24:12 28:16
 28:18 29:6 46:1
 60:16,17 66:5
**recording**  28:23
**records**  15:16 36:6
 47:8 57:2 67:6
 68:19 69:2 70:7
 75:2
**recourse**  49:11
 72:14
**refer**  7:10 20:12
 20:25 21:4 48:6
**reference**  28:22
 54:6,16
**referenced**  9:17
 81:14
**referred**  44:10
 78:22
**referring**  14:8
 21:10 62:21
**reflect**  57:3
**refuse**  4:24
**regarding**  20:15
 25:16 42:23 46:14
**regards**  68:23
**regular**  42:14
 44:16
**regulations**  14:19
**relate**  74:9
**related**  76:25
**relating**  73:15
**relations**  59:3
**relationship**  64:16
**relative**  83:14,16
**relevant**  70:24
**relied**  36:14 46:10
**rely**  55:12

**remember**  23:11
**remind**  19:19
**rephrase**  20:7
 22:22 25:4 31:8
 39:15 44:5 54:13
 69:10 75:8
**reporter**  1:16 4:15
 7:4 11:18 83:4
**represent**  48:25
**representative**
 42:2
**represented**  26:18
 27:2
**represents**  64:15
**reprimanded**
 16:22
**request**  4:19 17:16
 18:2
**requests**  67:21
**required**  4:22
 19:25 20:9 21:16
 46:5 80:16 81:10
 82:6
**requirements**  35:9
 46:7 61:15,18
 74:8
**respond**  4:24 5:20
 6:11
**responding**  4:15
**response**  73:25
**responses**  11:22
 25:20 26:1
**responsibility**
 62:2 64:14
**restroom**  5:8
**retract**  18:10
**review**  6:22 18:3,6
 20:13 26:11 34:19
 36:5 38:2 45:1
 63:1 76:4 77:22
 77:25 81:16

**reviewed** 9:23 11:13,23 18:1 22:7,10 59:14 62:11 63:8,9,16 68:9,19 69:14 74:7 75:2 78:2

**reviewing** 28:15 29:5

**revising** 3:10 9:11 9:14 10:4

**right** 7:7 11:8,20 28:13,16 32:5 38:21 51:16 78:17

**rights** 27:10,15 29:11,19,20,25 30:11,14 48:4,23 49:2 77:2

**role** 4:6 7:8 11:4 18:13,15 50:24 51:2 52:13 56:24

**rome** 2:7 9:11 10:3

**rule** 36:18 67:8

**rules** 4:11

**run** 56:13

**s**

**s** 2:1 3:7 52:8

**safe** 54:15

**saying** 25:24 27:1 29:24 35:20 60:12 70:7 76:7 81:12

**says** 52:25

**scheduled** 58:20 75:23 76:8

**school** 12:13,15,17 13:21,23

**scope** 20:2,11 31:7 31:10 33:9 39:13 40:7,18 41:15 46:16 50:4 69:9 76:21 80:19 81:1 81:6,8,13,15,23

**screen** 76:12

**se** 2:6

**securitization** 51:7 52:7

**securitized** 50:19

**see** 22:5 23:5 34:20 36:6 42:7 49:4 58:18 60:7 68:10,12 71:6 78:20 80:10

**seen** 5:24 9:22 30:19 43:21 49:24 62:20 72:18,20

**seminar** 13:25

**send** 42:7 54:1 56:8,20 59:20 71:20

**senior** 77:23

**sense** 6:1 24:8,9

**sent** 17:3,8,23 43:24 44:15 56:16 59:14,24 60:15,18 66:17 70:20,25 71:17,18 72:6,14 72:21 77:20

**served** 42:19

**service** 11:6 22:10 50:21

**serviced** 42:20

**servicer** 10:16 34:13 35:24 36:2 36:16,24 37:4 43:7 55:12 61:1 64:15,16,19 66:20 66:22 72:9 74:19

**servicer's** 26:2 47:2 56:24 59:3 64:13

**servicers** 34:9,11 37:7 43:5 50:20

**services** 53:5,11 53:21 54:6,10

**servicing** 8:7,24 11:8 15:20 23:7,9 34:13,22 39:3 40:21 41:12 42:11 57:4,5,22 64:21 66:12 68:9 70:13 71:25 72:4,6

**set** 81:24 83:12

**short** 2:5 47:22

**shorthand** 1:16 83:3

**show** 9:16 34:23 48:7,20 51:12,14 70:2,3,4,8 75:17 75:23 76:10,12

**showing** 9:19 10:2

**shown** 59:9

**shows** 36:19 48:19 76:14

**sic** 23:14 49:14,16 77:24

**side** 67:22

**sign** 17:11,14,16 17:19 56:7 59:7 59:20 69:15 77:25

**signature** 49:7,15 72:24 83:21

**signed** 28:16,18 29:6 49:14 56:17 58:4,17 61:4 68:5 68:21 70:5 71:18 72:24 73:3 78:3

**simply** 5:8

**site** 60:20

**six** 7:21 56:9

**slowly** 7:3

**smith** 1:15 83:3,22

**sollinger** 49:14

**somebody** 47:16

**sorry** 12:4 17:6 25:11 28:20 35:17 38:14,17,21 48:9

**sort** 58:3

**sounds** 31:20

**source** 21:6 80:21 81:19 82:12

**speak** 7:3 24:23 32:18 44:25 67:25

**speaking** 8:17 20:22

**special** 13:20

**specific** 17:8 36:13 62:7,23 69:18,23 77:17

**specifically** 6:25 21:1 25:20 41:21

**specified** 32:4

**spoke** 60:12

**square** 2:8

**stack** 11:20

**stacy** 23:13

**stages** 77:24

**stamp** 49:7,17

**stamps** 49:4 52:19

**standard** 42:15

**start** 59:21

**started** 39:3

**state** 1:16 12:6 19:5,6 23:22 46:13 59:17 61:14 61:22,22 62:7,7 83:4

**stated** 6:25 9:6,18 13:21 32:9 79:13 82:9

**states** 1:1 71:5

**stating** 44:11

**statutes** 74:9

**statutory** 46:7
**stenographic** 1:13
**stenographically**
  83:11
**step** 19:24 56:2
  80:15 81:9 82:5
  82:11
**steps** 45:4,16
**stipulations** 6:24
  6:24
**stored** 77:20
**street** 2:9
**strike** 46:11 64:6
**study** 12:25
**subject** 9:6,18
  22:16,24 23:21
  27:11
**submitted** 80:6
**subsequent** 77:1
**sued** 63:13,23 64:4
**sufficient** 45:17
**suggest** 20:19
**suggested** 81:16
**summarize** 67:24
  67:25
**summary** 78:18
**supervises** 31:5
**supervisor** 16:9,11
  23:12
**supply** 66:9
**support** 68:11,13
**sure** 30:18 34:13
  42:1 49:9,19 56:5
  64:18 68:18 75:9
  77:15 79:23
**sworn** 4:1 83:7
**system** 22:8 32:19
  34:14 42:8 45:1
  58:14,14 59:4,11
  60:8 61:11 70:4
  70:19

**systems** 34:22
  43:11

**t**

**t** 3:7
**taillights** 5:23
**take** 5:9 14:13
  15:3,4 33:20 42:3
  42:21 45:4,17
  60:14 61:12 71:4
**taken** 1:15 83:11
**takes** 53:18
**talking** 62:16 72:2
  75:1
**taxes** 42:13 76:9
**tbrodowski** 2:10
**tell** 5:23 10:25
  15:11 57:25
**ten** 47:23
**term** 44:9 55:20
  69:6
**terminated** 16:22
**terms** 21:17 46:1
  55:5,7 57:3 58:3
  59:19 70:3
**testifies** 4:1
**testify** 4:7 7:25 8:3
  8:12,21,25 9:3,5
  11:1,9 15:12 25:1
  74:14,17 83:7
**testifying** 7:9 9:17
  10:8,9
**testimony** 4:23
  5:12 6:9,17 20:3
  20:11 24:21 31:7
  31:11 33:10 39:14
  40:7,18 41:16
  46:16 50:4 69:9
  76:21 80:19 81:1
  81:23 83:10
**thank** 8:10 15:10
  28:6 37:12 54:20

  55:4 56:18
**things** 58:3
**think** 22:14 23:5
  24:3 42:20 46:23
  74:16 81:16
**third** 31:23 49:17
  52:15
**thomas** 2:8 10:3
  12:3
**three** 37:6 56:9
  60:6
**thursday** 1:19
**time** 8:6,8 23:4,12
  23:16,23 35:10
  43:12,19 44:12,17
  44:18 58:19 70:13
  71:13,13,15,15
  83:11
**times** 7:5,10 71:9
**title** 8:8 15:21
  18:19,22 19:20
  56:13
**today** 4:23 6:9
  8:12,22,25 9:1,25
  10:4,10 11:2,8
  16:10 22:4 24:21
  62:19 65:2 67:20
  74:14,23
**today's** 10:22
**told** 24:25
**top** 24:6 48:12
  53:10
**topics** 20:13,15
  21:1
**touched** 77:11
**trade** 13:23
**trail** 57:23
**trained** 43:10
**training** 13:20
  14:5,7,11,12,18,23
  15:11 46:5,13

**transactions** 54:16
**transcript** 1:13
  83:10
**transfer** 27:10
  40:14 52:16 53:18
  53:19 75:4 76:24
**transference**
  75:11,14
**transferred** 40:22
  52:17 75:7
**transfers** 27:15
**transitioning** 23:6
**traveled** 32:9
**trial** 6:19 56:8,10
  57:13 59:21
**trials** 11:5 16:2
**true** 47:15 83:10
**trust** 39:10,11,24
  40:5,16,16,20,23
  41:8 51:7,25 52:7
**trustee** 1:8 4:8
  7:10,14 8:1,13 9:2
  9:18 32:5,10,23
  39:10,21,25 40:15
  51:2,6,9,23 52:4,6
  63:2 74:9 77:1,1
**truth** 83:7,8,8
**truthful** 5:3 6:13
  46:20 47:13
**truthfully** 10:19
**trying** 31:13 35:2
  35:3 59:12 77:14
  79:8
**turn** 63:18,25
**turpitude** 19:12
**two** 9:16 34:18
  60:6 62:21
**type** 43:11 62:2
  68:20 71:7
**types** 16:6 62:7

**typical** 58:7,7
71:14
**typically** 34:12
39:23

**u**

**u.s.** 63:3
**uh** 47:10
**understand** 4:18
5:2 7:4 8:10 9:1,5
10:18 17:22 18:3
18:6 19:23 20:8
25:11 35:3 39:18
44:9 47:19 59:12
61:14,19 62:12
63:9,16 67:13
77:14 80:15 81:9
82:5
**understanding**
8:20,23 42:18
50:18 52:14 58:8
64:7 66:20 67:11
67:15
**understood** 4:12
4:20 6:12 35:9
**underwriting**
59:15 69:14
**united** 1:1
**university** 12:19
12:21,22
**updated** 57:3 58:2
**uploaded** 57:1
60:19
**upper** 78:3
**use** 7:12 36:17
42:16
**usual** 6:24 57:23
**usually** 53:17
55:16 56:8 57:12
58:12 80:1,4

**v**

**value** 40:16
**variety** 14:18
**various** 81:23
**vehicle** 30:10
**verbal** 58:22 59:8
60:9 71:22 72:2
**verbally** 59:2
**verbiage** 78:16
**verification** 47:20
71:22
**verify** 17:2,11
25:19,21,25 26:3
73:24
**verifying** 27:5
**veritext** 1:17
**versus** 3:15 62:24
**vocational** 13:12
**voided** 49:20,21
**vs** 1:6 62:17,22
63:2

**w**

**w** 1:17
**want** 6:16 11:18
25:4 31:9 39:15
44:5 75:8
**wanted** 55:5,6
81:16
**way** 69:23
**went** 37:10,11,11
60:13 68:7
**west** 2:4 12:22
**wide** 14:18 37:9
49:10,11,12,13
52:22,23,23,24,24
53:2,2,3,13,25
54:10 57:5 60:24
61:2
**willfully** 5:5

**withheld** 68:4
73:19
**withhold** 5:17
**witness** 43:17
74:14
**witty** 1:4 2:3,5 3:3
3:15 4:3,4 8:15,19
9:10 17:3 20:4,7
20:17,21 21:3,10
21:13 23:21 24:3
30:22 31:8,13
39:15 40:8,12
43:19 46:23 47:22
53:5 54:24 55:2
62:17,22,24 63:2
69:10 73:22 78:6
80:7 81:2,7,12,18
81:25 82:18
**word** 53:14
**words** 4:20 7:4,12
35:3 81:22
**work** 15:25 16:2
27:7 32:18 57:9
61:22
**worked** 16:19
**works** 32:19
**writings** 22:3

**x**

**x** 3:1,7

**y**

**yardley** 12:11
**yeah** 15:8 35:19
47:14 48:14 58:1
58:12 59:13 61:3
70:25 73:7 80:5
**year** 14:12
**years** 7:22 15:15
16:19
**york** 1:7 3:16 4:8
7:9,11,13,13 8:1

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been.
served upon the following counsel and the State or Federal District Court of Record via
[Personal Delivery] or [facsimile] or by U.S. Mail or/and by email or ECF, in accordance with
the State or USDC Rules of Civil Procedure
on the date of 10/16/2023

Current Attorneys or Parties served:

J. Eric Kishbaugh, Esq.
MCCRINK KEHLER & MCCRINK
475 ROUTE 73 NORTH
WEST BERLIN, NJ 08091
Attorneys for Plaintiff

_____

Andrew J Witty, Affiant