# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Chambers of
### Michael A. Hammer
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street, Room 2042
Newark, NJ 07102
(973) 776-7858

January 25, 2024

### <u>LETTER OPINION & ORDER</u>

Andrew J. Witty
500 White Oak Ridge Road
Short Hills, NJ 07078

J. Eric Kishbaugh
KML Law Group
701 Market Street, Suite 5000
Philadelphia, PA 19106

Re:     ***Bank of New York Mellon v. Witty*, 15-500 (MCA) (MAH)**

Dear Litigants:

    This matter comes before the Court on pro se Defendant's, Andrew Witty ("Defendant")

motion to stay proceedings.  *See generally* Mot. to Stay, D.E. 104.  On October 26, 2023, Plaintiff,

Bank of New York Mellon ("BONYM"), opposed Defendant's motion.  *See generally* Opp'n, D.E.

115.  Defendant replied on November 17, 2023.  *See generally* Request to Continue Instant Mot.

for Stay, D.E. 119.[1]   The Undersigned has considered the briefs submitted in support of, and in

---

[1]   The Court notes that Defendant Witty has filed several supplemental submissions without permission from this Court.  *See* Supplemental Br. in Supp. of Def's Mot. to Stay, D.E. 113; Objections of Def., D.E. 121.  However, considering the age of this case, Defendant's pro se status, and the Court's interest in rendering a decision on the merits, this Court has considered all submissions as they relate to Defendant's request for a stay of proceedings.

opposition, to Defendant's motion without oral argument.  Fed. R. Civ. P. 78; Local Civ. Rule 78.1(b).  For the reasons set forth below, Defendant's motion is **denied.**

## I.   BACKGROUND[2]

This matter arises from a state foreclosure action.  On November 29, 2006, Defendant and his wife executed a promissory note in the amount of $1,200,000 by Heartland Finance Inc.  Letter Order, August 14, 2020, D.E. 73, at 2; Ex. D., Mortgage, D.E.104-1.  This note was secured by a non-purchase money mortgage against Defendant's property, located at 496 Oak Ridge Road, Short Hills, New Jersey ("the Property").  Letter Order, August 14, 2020, D.E. 73, at 2.  On December 1, 2009, Defendant failed to make the required monthly payment, and therefore defaulted on the promissory note.  *Id.*  Initially, the mortgage was assigned to the Bank of New York Mellon as Trustee for the Benefit of Alternative Loan Trust 2007-7T2 Mortgage Pass-Through Certificates ("Prior Bank of New York Entity").  *Id.*  Following a notice of default and intent to foreclose, Defendant was given until August 24, 2013, to cure the default.  *Id.*  However, Defendant failed to do so.  *Id.*  On September 27, 2013, the Prior Bank of New York Entity assigned the mortgage to BONYM.

On June 18, 2014, BONYM initiated foreclosure proceedings against the Property in the Superior Court of New Jersey, Essex County, Chancery Division.  *Id.*  Although Defendant answered in state court, on January 23, 2015, he removed this matter to federal court.[3]  *Id.* at 3.

---

[2] This Court draws upon the facts from the Court's August 14, 2020 Letter Order determining summary judgment.  *See* Letter Order, August 14, 2020, D.E. 73.

[3] Following removal, on December 7, 2015, Defendant filed another action in federal court. *See Witty v. Bank of New York Mellon*, No. 15-8486.  That Complaint alleged approximately ten claims against BONYM.  *See generally Witty v. Bank of New York Mellon*, 15-8486, Compl., D.E. 1.  The two matters were informally consolidated for purposes of discovery and dipositive motions.  *See* Letter Order, August 14, 2020, D.E. 73, at 1 n.1.  Any references to docketed items throughout this Letter Opinion and Order is to the 15-500 matter unless explicitly stated.

Although Defendant's removal was untimely, BONYM failed to file a motion to remand within thirty days and therefore waived any objection to removal. *See* Order, Mar. 21, 2016, D.E. 15, at 2 (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

On September 27, 2019, BONYM moved for summary judgment. *See generally* Mot. for Summary Judgment, D.E. 64. Defendant filed a cross-motion for summary judgment. *See generally* Cross-Mot. for Summary Judgment, D.E. 65. On August 14, 2020, the Court issued a Letter Order granting BONYM's motion and denying Defendant's cross-motion. *See generally* Letter Order, August 14, 2020, D.E. 73. In that Order, the Court determined that BONYM established a prima facie right to foreclose on the Property. *Id.* at 5. The Court further rejected Defendant's defenses, any affirmative claims asserted in the 15-8486 action, and dismissed Defendant's Complaint in the 15-8486 matter. *Id.* at 10. On October 6, 2020, Defendant filed a motion for reconsideration of the Court's August 14, 2020 Letter Order. *See generally* Mot. for Reconsideration, D.E. 78. On May 28, 2021, the Court denied Defendant's request for reconsideration. *See* Order, May 28, 2021, D.E. 81.

On November 21, 2021, the Court ordered a status update on the matter. *See* Order, Nov. 21, 2021, D.E. 83. BONYM responded, and requested the matter remain open because the pandemic's foreclosure moratorium impeded BONYM's foreclosure. *See* Status Report, Nov. 23, 2021, D.E. 86. Numerous subsequent status reports from BONYM reiterated the same. *See* Status Report, Jan. 14, 2022, D.E. 88; Status Report, Jan. 25, 2022, D.E. 90; Status Report, Apr. 27, 2022, D.E. 93. On April 28, 2022, the Court ordered BONYM provide an update on May 27, 2022 and warned that if BONYM could not offer a future date for the foreclosure sale in the May update the matter would be administratively terminated without prejudice. *See* Order, Apr. 28, 2022, D.E. 94-95. BONYM failed to provide a status report in accordance with the April 28, 2022 Order, and

therefore the Court administratively terminated the matter.  *See* Order, May 31, 2022, D.E. 97.  On February 23, 2023, BONYM moved to reopen, which Defendant opposed.  *See generally* Mot. to Reopen, D.E. 98; Def.'s Opp'n to Reopen, D.E. 101.  After considering the parties' submissions, on July 14, 2023, the Court reopened the matter and ordered that within forty-five days BONYM provide the Court with a proof of sale of the property.  *See* Order, July 14, 2023, D.E. 103.

Prior to the close of the Court's forty-five-day deadline, Defendant filed the instant motion to stay proceedings on August 24, 2023.  *See* Mot. to Stay, D.E. 104.  Due to a case management error by BONYM's counsel, BONYM failed to file opposition to the motion to stay.  *See* Letter to Ct., Sept. 19, 2023, D.E. 107.  Accordingly, the Court set forth a briefing schedule for BONYM's opposition to Defendant's motion to stay, as well as deadlines for BONYM's motion for entry of final judgment.  *See* Order, Sept. 25, 2023, D.E. 109.  On October 10, 2023, BONYM filed its motion for final judgment.  *See* Mot. for Final Judgment, D.E. 110.  However, again, BONYM failed to file its opposition to Defendant's motion to stay.  Without permission from the Court, on October 13, 2023, Defendant filed a supplemental brief in further support of his motion to stay.[4]  *See generally* Supplemental Br. in Supp. of Def's Mot. to Stay, D.E. 113.  On October 26, 2023, BONYM opposed Defendant's motion to stay.  *See* BONYM's Opp'n, D.E. 115.

### A.  Parties' Arguments

Defendant asserts that any proceedings in this matter should be stayed pursuant to 12 C.F.R. § 1024.41(g) due to an alleged pending loss mitigation application he claims to have submitted to

---

[4]  As set forth in the Court's prescribed briefing schedule, Defendant also filed opposition to BONYM's motion for final judgment on October 16, 2023.  *See* Def.'s Opp'n to Final Judgment, D.E. 111.  However, within that motion, Defendant additionally requests discovery be reopened to depose several individuals as well as sanctions against BONYM for "hiding witnesses" as related to its submissions for its motion for final judgment.  *Id.* at 3-6.  As Defendant's requests relate to BONYM's motion for final judgment, this Court solely addresses his request for a stay.

Shellpoint Mortgage Services ("Shellpoint").[5]  Mot. to Stay, D.E. 104, at 2-4.  He further argues that if the Court allows BONYM to proceed with its motion for final judgment, BONYM would be improperly participating in dual tracking in contradiction with the statute.[6]  *Id.*    According to Defendant's briefs and attached affidavits, Defendant submitted a loss mitigation application in "various parts" in August 2022 to Shellpoint, but the status of this application is unknown.  *See* Mot. to Stay, D.E. 104, at 3; *see also* Def.'s Affidavit, D.E. 104, at 25; Def.'s Supplemental Affidavit, D.E. 113, at 9.  Defendant also contends that in September 2022, a representative of Shellpoint assured him that the mortgage service company received his application, but that the COVID-19 pandemic affected the timeline regarding loss mitigation application determinations.  Def.'s Affidavit, D.E. 104, at 25-26.  According to Defendant, because "he has not received any response from . . . Shellpoint" the Court is statutorily mandated to stay any proceedings until the "loss mitigation issue is concluded."  Def.'s Supplemental Affidavit, D.E. 113, at 9; *see also* Mot. to Stay, D.E. 104, at 19.  Defendant further argues that he was not required to submit his application in conjunction with his request for a stay because it contained personal, confidential, and financial information.  *See* Request to Continue Instant Mot. for Stay, D.E. 119, at 3.  According to

---

[5]  Defendant also raises arguments regarding standing within his request for a stay.  *See* Mot. to Stay, D.E. 104, at 8.  However, the merits of Defendant's arguments were previously considered and decided both at the summary judgment phase and following a request for reconsideration.  *See* Letter Order, August 14, 2020, D.E. 73, at 6 n.8; Order, May 28, 2021, at 3.  The Court therefore declines to address Defendant's arguments as they can only be characterized as a third motion for reconsideration, and an attempt to relitigate the merits of the case.  *See Banxcorp v. Bankrate, Inc.*, No. 07-3398, 2020 WL 2786925, at *2 (D.N.J. May 29, 2020) ("The Court finds [the] [p]laintiff's contentions unavailing and notes that several of the arguments are improper attempts to relitigate issues already considered by this Court.").

[6]  Dual tracking refers to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.  *See Ogbebor v. J.P. Morgan Chase, N.A.,* No. 16-3400, 2017 WL 449596, at *5 n.8 (D.N.J. Feb. 2, 2017)

Defendant, submittance of his application cannot be questioned because "Shellpoint . . . has not proffered any evidence to show he was untruthful." *Id.*

BONYM argues that Defendant fails to provide any proof he actually has submitted a loss mitigation application. Opp'n, D.E. 115, at 7. Further, BONYM contends that Defendant has not even adequately represented he submitted a complete application, but rather has only asserted he submitted piecemeal portions of the application. *Id.* at 8. According to BONYM, Defendant's motion to stay is simply an attempt to postpone foreclosure to allow him to continue living in a home without payment. *Id.* at 1.

## II.   ANALYSIS

This Court finds that Defendant has not established that a stay of proceedings is warranted. Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, which includes RESPA's Regulation X, 12 C.F.R. § 1024.41. This regulation governs loss mitigation procedures. *See Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 2364196, at *9 (D.N.J. May 31, 2017). Regulation X's dual tracking provision, 12 C.F.R. § 1024.41(g), prohibits "mov[ing] for foreclosure judgment or order of sale" while a complete and timely loss mitigation application is pending. *See Joussett v. Bank of Am., N.A.,* No. 15-6318, 2016 WL 5848845, at *6 (E.D. Pa. Oct. 6, 2016) (quoting 12 C.F.R. § 1024.41(g)).

Here, Defendant fails to demonstrate or establish that he has submitted any loss mitigation application at all, or even a complete application. *See Joussett*, 2016 WL 5848845, at *6 (stating any "protections of § 1024.41 do not apply unless a servicer receives a loss mitigation application"). At times, Defendant asserts that required documents for the application were submitted in various parts. *See* Supplemental Br. in Supp. of Def's Mot. to Stay, D.E., 113, at 5. He also avers that although there was confirmation of the application's receipt—Shellpoint has

provided no communication regarding the application since 2022.  Def.'s Supplemental Affidavit, D.E. 113, at 9.  However, Defendant provides no evidence, other than his affidavits that the application was submitted.  Therefore, without substantiating evidence, the Court cannot conclude that Defendant actually filed the loss mitigation application, and that a stay should be granted.  Indeed, Defendant's attachments throughout his submissions include either previous opinions and orders of this Court or documents, such as the mortgage, already contained in the record.  To the extent Defendant is concerned that filing his application could reveal confidential and financial information, he could have filed it under seal or in redacted format.  Neither of the aforementioned actions is beyond the capacity of a pro se litigant.  *See Huertas v. U.S. Dep't of Educ.*, No. 08-3959, 2010 WL 2771767, at *5 (D.N.J. 2010) ("[C]ourts are unwilling to allow pro se litigants to . . . perpetually delay . . . proceedings").  Even if Defendant did not file the application itself, he could have any number of other items to substantiate the pending loss mitigation application.  For example, Defendant could have provided email or mail confirmation of the application's receipt by Shellpoint, or even copies of communications sent by Defendant regarding the status of his application.  Because it is Defendant's obligation as the movant to establish good cause for the stay, and because Defendant provides no evidence to support a completed loss mitigation application was submitted or completed, the Court cannot conclude that this matter should be stayed.  *See Turner v. Chiesa*, No. 12-5224, 2013 WL 2650506, at *3 (D.N.J. June 11, 2023) (refusing to grant a stay where the petitioner claimed witness affidavits would illustrate innocence but petitioner failed to provide the court with the purported affidavits); *see also Herbert v. Newton Mem'l Hosp.*, 933 F. Supp. 1222, 1229 (D.N.J. 1996) (stating "a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record").

Nor does this Court find it should stay the proceedings based on its own inherent power to do so. *See Depomed Inc. v. Purdue Pharma L.P.*, No. 13-0571, 2014 WL 3729349, at *2 (D.N.J. July 25, 2014) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.")  When evaluating a motion to stay proceedings, courts generally weigh a number of factors including, "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party[ ]; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party [ ]; (3) whether a stay would simplify the issues and the trial of the case [ ]; and (4) whether discovery is complete and/or a trial date has been set." *See Gentry v. Chubb*, No. 21-13744, 2021 WL 11959607, at *1 (D.N.J. Dec. 22, 2021) (internal citations and quotation marks omitted).

Here, the standard for a motion to stay proceedings has not been met.  First, a stay would most certainly present a tactical disadvantage to BONYM, and also unduly prejudice it.  The Court granted BONYM summary judgment approximately three years ago.  Accordingly, BONYM has a right to proceed for final judgment, and a stay would inhibit BONYM from doing so.  Further, if this Court were to grant Defendant's request for a stay, it would effectively be granting an indefinite one, as Defendant provides no indication of when that stay would abate.  Indeed, Defendant alleges he has received no communications from Shellpoint since 2022.  In addition, based on the Court's determination that there is no evidence of a pending application, the Court cannot find that a stay would simplify any issues in the present matter.  Finally, discovery is complete in this matter, and summary judgment has already been determined.  Therefore, a stay would only impede BONYM

from seeking final judgment.  At bottom, Defendant has failed to demonstrate that a stay is warranted in this matter.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's motion to stay, D.E. 104, is **denied**.

*/s Michael A. Hammer*
Hon. Michael A. Hammer,
United States Magistrate Judge